U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY WHITE, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | Case No. 3:11-cv-01817-B |
| | § | |
| REGIONAL ADJUSTMENT | § | |
| BUREAU, INC. D/B/A RAB, INC. | § | |
| | § | |
| DEFENDANTS. | § | |

## DEFENDANT REGIONAL ADJUSTMENT BUREAU, INC.'S MOTION AND BRIEF TO COMPEL DISCOVERY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Regional Adjustment Bureau, Inc. (hereinafter "RAB"), through counsel of record, and files its Motion to Compel as follows:

## I.

## BACKGROUND

1.     Plaintiff filed a Complaint in this Court, the United States District Court for the Northern District of Texas, on July 28, 2011, alleging that RAB violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, the Texas Finance Code, § 392, Texas Debt Collection Act ("TDCA"), the Texas Deceptive Trade Practices Act ("DTPA"), Texas Business & Commerce Code § 17; and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See* Docket Entry ("Doc.") 1.

2.     On December 15, 2011, Plaintiff's deposition was taken.   During the deposition Plaintiff's counsel prevented RAB's counsel from developing any testimony regarding Plaintiff's

allegations of mental anguish, preexisting conditions, and diagnoses from his doctors. This resulted in the termination of the deposition.

3.      On February 22, 2012, this Court issued an order on RAB's motion to compel stating instructing counsel to meet face to face to resolve all matters in dispute and that "[u]nless plaintiff is seeking damages for mental or physical harm caused by defendant, he is not required to provided contact information for his doctors. However, if plaintiff intends to seek such damages, the information must be provided." *See* Doc. 20 at 2; Defendant's Appendix ("Def. App.") at 2. After the joint-meeting between Plaintiff and RAB's counsel, the Court issued another order based on the parties joint status report ordering Plaintiff to "either answer Interrogatory No. 24 or withdraw his claim for mental and physical harm." *See* Doc 22; Def. App. at 5.  Plaintiff then produced the names and contact information of the doctors he has seen over the last five (5) years and therefore choosing to continue pursuing his mental anguish claims.  Because of Plaintiff's strategic decision, issues regarding Plaintiff's deposition and his counsel's interference with questions regarding his mental anguish claims are once again alive. RAB now seeks to re-depose Plaintiff due to the obstruction Plaintiff's counsel created and do so at Plaintiff's expense.

## II.

## ARGUMENT AND AUTHORITIES

4.      A unique situation is posed in the case at hand.  Plaintiff is a licensed counselor and psychologist and due to those qualifications, he is unable to diagnose himself has having a mental condition at the risk of losing his licenses.  RAB's counsel understands this situation and concern reflected throughout the deposition. Despite this unique situation, Plaintiff is still able to give testimony regarding his alleged mental anguish and damages without diagnosing himself.

Plaintiff may also state what any doctors have told him related to his mental anguish and pre-existing conditions.

5.    While attempting to obtain testimony on these issues, the following exchange occurred in Plaintiff's deposition:

> Q: And obviously that's – so you want your rheumatologist to be the primary person you're speaking to; is that fair?
> **A: Yes.**
> Q: Have you talked with your doctor at all about any of this related to the debts or the telephone calls?
> **A: No.**
>
> MR. RADBIL: Objection, form.
> Q: So –
> MR. RADBIL: I'm going to instruct the witness that if the question calls for anything that you discussed personally with your doctor, that's protected by your privilege – the patient-doctor privilege and you can refuse to answer that question if you choose.
>
> MS. MALONE: You may – I'm going to advise counsel that that is incorrect. If you've made a claim for mental anguish, and he's telling us that his rheumatologist is who he's talked with when – about panic attacks, if that's that, I'm entitled to explore it. And he also has a preexisting medical condition, which we have named – we have named that he has preexisting conditions in our petition, I'm entitled to explore it. I'm going to advise counsel that if you do instruct him not to answer those questions, we will be filing a motion to compel.
>
> MR. RADBIL: I'll advise you not to answer those questions.

*See* Def. App. at 8 (Depo. 103:4-104:5).   Despite Plaintiff's counsel preventing RAB from asking any questions regarding Plaintiff's doctors and medical condition, Plaintiff's counsel proceeded to elicit testimony in attempts of establishing both the legal and medical requirements of mental anguish:

> Q: [By Mr. Radbil] Did the calls to your cell phone and your work phone make you feel helpless?
> MS. MALONE: Objection, form.
> **A: Yes.**
> Q: did they cause you to have any exacerbated medical conditions?
> MS. MALONE: Objection, form.

> **A: Yes.**
> Your rheumatologist is treating you for what? What is your rheumatologist treating you for?
> **A: Ankylosing spondylitis, symptoms of anxiety and – and that's it.**
> Q: So you have sought – have you sought medical treatment for your anxiety?
> MS. MALONE: Objection, form.
> **A: Yes.**
> Q: And have you received any prescription medication –
> **A: Yes.**
> Q: -- as a result. Has the defendant's conduct substantially disrupted your daily routine?
> MS. MALONE: Objection, form.
> **A: My anxiety as a result of their calls has disrupted. I'm not certain how to answer that, but the symptoms that I have caused by the – the harassment have disrupted my daily routine, yes….**

*See* Def. App. at 9 (Depo. 135:10-136:14).

6.  After Plaintiff's counsel developed the testimony he wanted regarding Plaintiff's mental anguish claims, RAB's counsel examined the witness again where the following took place as RAB's counsel was confirming Plaintiff did not diagnose himself through his counsel's questions:

> Q: [By Ms. Malone] All right. And you – you've told me that you have not – you would not put this in a category of a depressive disorder; is that correct?
> MR. RADBIL: Objection, form.
> **A: I can't say. They're symptoms. I –**
> Q: Okay.
> **A: I wouldn't say a disorder at this point, no.**
> Q: Okay. And just –
> **A: But I – I can't – I can't say.**
> Q: You can't diagnose yourself.
> **A: Right.**
> Q: I know. But you would agree with me that with regard to any particular disorder, there are certain number of symptoms that have to be met before it meets –
> **A: Yes.**
> Q: -- the definition of disorder.
> **A: Yes.**
> Q: Is that fair?
> **A: Yes.**
> Q: And at this point, you're not – you're not saying that you –

MR. RADBIL: Don't answer that question.

MS. MALONE:  You – I haven't even asked the question yet, Counsel.

MR. RADBIL: Don't answer any question that causes you to have to even close to diagnosing yourself with anything or analyzing your symptoms in connection with a diagnosis. I would advise strongly against that.

Q:  As you sit here today, are you not saying that you meet the definition of those; is that fair, sir?

MR. RADBIL: Do not answer that question. It requires a question about diagnosing yourself. It's a negative so…

MS. MALONE:  You know what, we're going to come back to the Judge, so I'm going to stop the deposition based on the fact that you're interfering. You're wanting him to testify about medical conditions and you don't want me to ask him questions about it.

MR. RADBIL:  Ask him about his medical conditions.

MS. MALONE: No, you are the --

MR. RADBIL:  Don't ask him to diagnose himself.

MS. MALONE:  You are asking. You asked him --

MR. RADBIL:  You're asking whether he has a certain diagnosis or whether he does not. If you ask him whether he does not have a diagnosis, you're asking him to make a diagnosis.

MS. MALONE:  You know what, Counsel --

MR. RADBIL:  You're asking him to draw a negative inference.

MS. MALONE: I'm going to stop the deposition at this point. We're going to file a Motion to Compel. That's our certificate of conference. Mr. White, I'll see you again. We're going to be done for today. At this time I am canceling the deposition because Counsel is interfering with questions. You want to testi – have him testify about medical conditions. I get to ask him what he knows.

*See* Def. App. at 10-11 (Depo. 144:21-147:5).

7.      Throughout the deposition, Plaintiff's counsel attempted to keep the testimony entirely one sided on the issue of mental anguish.  In doing so, he obstructed with discovery, interfered with the conduct of the deposition, and prohibited RAB's counsel from eliciting any testimony from Plaintiff regarding his mental anguish claims, his symptoms, and what his doctor has said about his conditions while actively preventing Plaintiff from diagnosing himself.  Due to Plaintiff's counsel's interference, RAB must now be allowed to continue deposing Plaintiff on the his allegations of mental anguish and his symptoms.  Further, in RAB's Original Answer, RAB pled the affirmative defenses that Plaintiff's damages, if any, are the result of a pre-existing

condition and that Plaintiff failed to mitigate his damages, if any. *See* Doc. 6 at 3. RAB should be allowed to explore these affirmative defenses without the hindrance of Plaintiff's counsel's attempts at portraying a one-sided coin in this case.

## III.

## CONCLUSION

8.     Due to Plaintiff's counsel's interference with the deposition conducted on December 15, 2011, and his insistence on pursuing damages under a mental anguish theory, RAB must be allowed to re-depose Plaintiff in order to obtain testimony regarding his mental condition, symptoms, pre-existing conditions, and alleged damages. This testimony is necessary to properly defend against Plaintiff's allegations and theories of recovery as well as establishing affirmative defenses.

WHEREFORE, PREMISES CONSIDERED, Defendant Regional Adjustment Bureau, Inc., respectfully requests that the Court compel Plaintiff to once again have his deposition taken at the cost of Plaintiff due to his counsel's interference and for such other and further relief as it may show itself justly entitled.

Respectfully submitted,

**ROBBIE MALONE, PLLC**

/s/ Robbie Malone
ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@rmalonelaw.com
CHRIS MEIER
State Bar No. 24061279
Email: cmeier@rmalonelaw.com
XERXES MARTIN
State Bar No. 24078928
Email: xmartin@rmalonelaw.com
ROBBIE MALONE, P.L.L.C.

Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas  75231
TEL: (214) 346-2630
FAX: (214) 346-2631

**COUNSEL FOR DEFENDANT**

## CERTIFICATE OF CONFERENCE

Counsel refused to allow Defendant ask questions to Plaintiff regarding his claims for mental anguish and damages during the deposition on December 15, 2011.  At the deposition Defendant stated it would be filing this motion to compel and that conversation would serve as its certificate of conference.

/s/ Robbie Malone
ROBBIE MALONE

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded via facsimile requested on this 2nd day of April, 2012 to:

**Via Facsimile: 866-842-3303**
Dennis R. Kurz
Noah D. Radbil
Weisberg & Meyers, L.L.C.
9330 LBJ Freeway, Ste. 900
Dallas, Texas 75243

/s/Robbie Malone
ROBBIE MALONE

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY WHITE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-11-CV-1817-B |
| | § | |
| REGIONAL ADJUSTMENT | § | |
| BUREAU, INC. d/b/a RAB, INC. | § | |
| | § | |
| Defendant. | § | |

## ORDER

Defendant Regional Adjustment Bureau, Inc. d/b/a RAB Inc. has filed a motion to compel discovery in this civil action brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and various Texas consumer protection laws.   At issue are interrogatories and document requests served on plaintiff in November 2011.[1]   According to defendant, plaintiff has made boilerplate or general objections to the discovery requests, and refuses to identify documents, photographs, tapes, and reports that support his claims for relief.   Defendant also seeks contact information for all doctors who treated plaintiff within the last five years, and documents regarding attorney's fees.

The court initially observes that defendant is entitled to documents regarding attorney's fees, such as fee agreements, billing records, and invoices from counsel.   *See Coleman v. Credit Management, LP*, No. 3-10-CV-2312-M-BK (N.D. Tex. Jul. 13, 2011) (citing cases).   Plaintiff may redact any attorney-client communications and work product materials from these documents. Otherwise, the documents should be produced to defendant.   Plaintiff should also identify any

---

[1] The specific discovery requests at issue are Interrogatory Nos. 4, 5, 6, 7, 8, 9 & 24, and RFP Nos. 17 & 24.

documents in his possession that support his claims. Indeed, that information should have been provided to defendant in Rule 26(a)(1) initial disclosures. *See* FED. R. CIV. P. 26(a)(1)(A)(ii) (party must provide to the other parties "a copy -- or description by category and location -- of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses"). Unless plaintiff is seeking damages for mental or physical harm caused by defendant, he is not required to provide contact information for his doctors. However, if plaintiff intends to seek such damages, the information must be provided.

With these observations in mind, the attorneys shall confer once again in an attempt to resolve this discovery dispute without court intervention. Accordingly, the following orders are hereby entered to facilitate the prompt and efficient disposition of this motion:

1.     Counsel shall *meet face-to-face* in an attempt to resolve all matters in dispute. This meeting shall be held by **February 27, 2012**. The attorneys should focus their discussions on the *substantive* information and documents requested by defendant. In other words, plaintiff should fully answer each discovery request, subject to any objections, and affirmatively indicate whether any responsive information or documents have been withheld. A privilege log must be produced for any documents, communications, or other materials withheld from production on the grounds of attorney-client, work product, or other privilege or immunity. *See* FED. R. CIV. P. 26(b)(5)(A). Defendant should not persist in opposing any objections at this time if all responsive information and documents have been provided. Any attorney who fails to comply with these guidelines or negotiate in good faith will be subject to sanctions.

2.     The parties shall submit a joint status report by **February 29, 2012**. This report must contain the following information: (a) the names of the attorneys who participated in the discovery

conference; (b) the date the conference was held and the amount of time the parties conferred; (c) the matters that were resolved by agreement; (d) the specific matters that need to be heard and determined; and (e) a detailed explanation of the reasons why agreement could not be reached as to those matters. The joint status report must be signed by all participating attorneys. Any attorney who fails to sign the report will be subject to sanctions.

The purpose of a joint status report is to enable the court to determine the respective positions of each party regarding the subject matter of a discovery dispute in a single written submission. To this end, the parties should present all of their arguments and authorities in the body of the report. Supporting evidence and affidavits may be submitted in a separate appendix. The arguments, authorities, and evidence relied on by a party must be provided to opposing counsel before the attorneys finalize and sign the joint status report. If further briefing is desired before any unresolved matters are decided, the joint status report must indicate why the party requesting further briefing could not fully present its arguments and authorities in the report. The court, in its discretion, may allow further briefing upon request by any party.

The joint status report and appendix must be filed electronically in accordance with Miscellaneous Order 61, the CM/ECF Civil and Administrative Procedures Manual, and the CM/ECF User Guide. A copy of the joint status report and any supporting materials shall be *hand delivered* to the office of the district clerk, 1100 Commerce Street, 14th Floor, Dallas, Texas, Attn: Vila Fisher, the same day.

3.  The parties shall submit an agreed order in lieu of a joint status report if this discovery dispute is resolved. An agreed order, signed by all counsel of record, must be submitted electronically to Kaplan_Orders@txnd.uscourts.gov by **February 29, 2012**. A copy of the signed

agreed order must be *hand delivered* to the office of the district clerk, 1100 Commerce Street, 14th Floor, Dallas, Texas, Attn: Vila Fisher, the same day.

    4.    The court intends to rule on any unresolved issues based on the written submissions of the parties, including the joint status report. *See* N.D.Tex. LCivR 7.1(g) ("Unless otherwise directed by the presiding judge, oral argument on a motion will not be held."). However, the court, in its discretion or upon the request of any party, may schedule oral argument prior to ruling on the motion.

    SO ORDERED.

    DATED:  February 22, 2012.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY WHITE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-11-CV-1817-B |
| | § | |
| REGIONAL ADJUSTMENT | § | |
| BUREAU, INC. d/b/a RAB, INC. | § | |
| | § | |
| Defendant. | § | |

## ORDER

In a joint status report filed on February 29, 2012, plaintiff has agreed to: (1) produce documents regarding attorney's fees, such as fee agreements, billing records, and invoices from counsel, after redacting any attorney-client communications and work product materials from the documents; (2) supplement his answers to Interrogatory Nos. 4, 5, 6, 7, 8 & 9; and (3) either answer Interrogatory No. 24 or withdraw his claim for mental and physical harm. Plaintiff shall produce these documents to opposing counsel and supplement his discovery responses by **March 9, 2012**. In view of this agreement, defendant's motion to compel discovery [Doc. #18] is denied as moot.

SO ORDERED.

DATED: March 1, 2012.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

Def. App. 0005

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TIMOTHY WHITE,                                )
                                             )
    Plaintiff,                            )
                                             )
VS.                                          )   CA NO. 3:11-CV-01817-B
                                             )
REGIONAL ADJUSTMENT BUREAU                   )
INC. D/B/A RAB, INC.,                        )
                                             )
    Defendant.                            )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL VIDEOTAPED DEPOSITION OF

TIMOTHY WHITE

DECEMBER 15, 2011

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Def. App. 0006

]
TIMOTHY WHITE                          12/15/2011

## Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2             FOR THE NORTHERN DISTRICT OF TEXAS
                        DALLAS DIVISION
 3   TIMOTHY WHITE,            )
                               )
 4      Plaintiff,             )
                               )
 5   vs.                       ) CASE NO. 3:11-CV-01817-B
                               )
 6   REGIONAL ADJUSTMENT BUREAU,)
     INC. D/B/A RAB, INC.,     )
 7                             )
                               )
        Defendant.             )
 8
 9
10   ...........................................
11           ORAL VIDEOTAPED DEPOSITION OF
12                  TIMOTHY WHITE
13                DECEMBER 15, 2011
14   ...........................................
15
16      ORAL VIDEOTAPED DEPOSITION OF TIMOTHY WHITE,
17   produced as a witness at the instance of the Defendant,
18   and duly sworn, was taken in the above-styled and
19   numbered cause on the 15th day of December, 2011, from
20   8:50 a.m. to 11:32 a.m., before Diana D. Thrash, CSR in
21   and for the State of Texas, reported stenographically, at
22   the offices of Robbie Malone, 8750 North Central
23   Expressway, Suite 1850, Dallas, Texas 75231, pursuant to
24   the Federal Rules of Civil Procedure and the provisions
25   stated on the record or attached hereto.
```

## Page 2

```
 1              A P P E A R A N C E S
 2   FOR THE PLAINTIFF:
 3      Mr. Noah D. Radbil
        WEISBERG & MEYERS
 4      1200 Smith Street
        Sixteenth Floor
 5      Houston, Texas  77002
        Phone:   (888) 595-1111
 6      E-mail:  noah.radbil@attorneysforconsumers.com
 7   FOR THE DEFENDANT:
 8      Ms. Robbie Malone
        ATTORNEY AT LAW
 9      8750 North Central Expressway
        Suite 1850
10      Dallas, Texas  75231
        Phone:   (214) 346-2625
11      Fax:     (214) 346-2631
        E-mail:  rmalone@rmalonelaw.com
12
     ALSO PRESENT:
13
        Mr. Xerxes Martin
14      Mr. Thad Strobach, Videographer
15
16
17
18
19
20
21
22
23
24
25
```

## Page 3

```
 1                      I N D E X
 2   WITNESS                                    PAGE
 3   TIMOTHY WHITE
 4      Examination by Ms. Malone ..................4
        Examination by Mr. Radbil ................132
 5      Further Examination by Ms. Malone ........139
 6              EXHIBITS INDEX
 7   NUMBER        DESCRIPTION           IDENTIFIED
 8   1   Photocopy of cover of DSM-4 TR        130
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 4

```
 1              P R O C E E D I N G S
 2          THE VIDEOGRAPHER:  We are going on the
 3   record December the 15th, 2011, for the deposition of
 4   Timothy White.  The time is 8:50 a.m.
 5          If Counsel wants to state any agreements
 6   and appearances, now would be the time to do that.
 7          MR. RADBIL:  Noah Radbil for the plaintiff
 8   Tim White.
 9          Mr. White would like to read his
10   deposition transcript.
11          MS. MALONE:  Robbie Malone for the
12   defendant, and I think we made an agreement we didn't
13   have to do a formal reading of the notice or the style of
14   the case in this case; is that correct, Mr. Radbil?
15          MR. RADBIL:  Agreed.
16          MS. MALONE:  All right.
17              TIMOTHY WHITE,
18   having been first duly sworn, testified as follows:
19              EXAMINATION
20   BY MS. MALONE:
21      Q.  Mr. White, we met a moment before the
22   deposition, but let me just reintroduce myself.  My name
23   is Robbie Malone.  Do you understand that I represent
24   Regional Adjustment Bureau, who we may refer to as RAB in
25   this case?
```

Def. App. 0007

## Page 101

1  you know, if your anxiety gets worse, you could have a
2  flareup which causes, you know, eye swelling and -- and
3  inflammation. So it's -- it's very connected with the
4  physical symptoms.
5      Q.   Okay.
6      A.   And treating it, I would prefer to have it
7  treated by a rheumatologist because that's, you know, who
8  understands my condition the best, rather than just going
9  to a PCP psychiatrist. I feel more comfortable with a
10 rheumatologist at this stage. If it -- if they became so
11 debilitating that I couldn't get out of the house, yeah,
12 I would certainly --
13     Q.   Okay. And having --
14     A.   -- seek referral.
15     Q.   -- the chronic illness that you have related to
16 your ankles, is that something that is -- is stressful to
17 you?
18     A.   Yes.
19     Q.   Okay. Do you have mental anguish about your
20 health condition, not being -- I think -- not being in
21 remission at this point?
22     A.   Yes.
23     Q.   And I'm sorry. I think you may have told me,
24 but I've forgotten. When were you first diagnosed with
25 that?

## Page 102

1      A.   In 1998.
2      Q.   Okay.
3      A.   I had had it for a long time.
4      Q.   Sure.
5      A.   It just wasn't diagnosed.
6      Q.   Sure. I understood that. But since 1998,
7  you've known what the particular illness is and you're
8  working on trying to make it better.
9           MR. RADBIL: Objection, form.
10     Q.   Is that fair? Or manageable.
11     A.   Yes.
12     Q.   Is that the better word?
13     A.   Yes.
14     Q.   Is it one of those illnesses where manageable
15 is the best you can get?
16     A.   Yes. It's progressive.
17     Q.   If it's not managed, what is the end outcome?
18 What is the prognosis for that illness?
19     A.   Well, total inflammation it's -- I have a
20 artificial hip already because of it. My spine is fused.
21 The inflammation just continues. If it flares up, it
22 gets worse. It causes problems with my eye. I have a
23 rash that develops on one side of -- of my face. There
24 are several symptoms, and eventually it moves into your
25 heart and lungs.

## Page 103

1      Q.   Okay. So it's -- it's a very significant
2  illness; is that fair?
3      A.   Yes.
4      Q.   And obviously that's -- so you want your
5  rheumatologist to be the primary person you're speaking
6  to; is that fair?
7      A.   Yes.
8      Q.   Have you talked with your doctor at all about
9  any of this related to the debts or the telephone calls?
10     A.   No.
11          MR. RADBIL: Objection, form.
12     Q.   So --
13          MR. RADBIL: I'm going to instruct the
14 witness that if the question calls for anything that you
15 discussed personally with your doctor, that's protected
16 by your privilege -- the patient-doctor privilege and you
17 can refuse to answer that question if you choose.
18          MS. MALONE: You may -- I'm going to
19 advise counsel that that is incorrect. If you've made a
20 claim for mental anguish, and he's telling us that his
21 rheumatologist is who he's talked with when -- about
22 panic attacks, if that's that, I'm entitled to explore
23 it. And he also has a preexisting medical condition,
24 which we have named -- we have named that he has
25 preexisting conditions in our petition, I'm entitled to

## Page 104

1  explore it. I'm going to advise counsel that if you do
2  instruct him not to answer those questions, we will be
3  filing a Motion to Compel.
4           MR. RADBIL: I'll advise you not to answer
5  those questions.
6           MS. MALONE: You go right ahead.
7      Q.   All right. Now, Mr. White, so we're absolutely
8  clear, other than your rheumatologist, have you talked to
9  anyone about these panic attacks?
10     A.   Yes.
11     Q.   Who?
12     A.   My partner Terry.
13     Q.   Okay.
14     A.   Relatives, friends.
15     Q.   All right. Let me -- let me make my question a
16 little clearer.
17          As far as a healthcare provider, have you
18 spoken to anyone besides your rheumatologist about these
19 panic attacks?
20     A.   No.
21     Q.   Okay.
22     A.   I'm sorry. No, I haven't. I had to think
23 about it. No, I haven't.
24     Q.   Okay. That's fine. And -- and I'm going to
25 talk to you about who in your family you may have

TIMOTHY WHITE                          12/15/2011

---

**Page 133**

1          When you're asked a question such as is
2    this everything, are you answering that question in a
3    legal sense, or are you answering it in a layperson's
4    sense?
5          MS. MALONE: Objection, form.
6    A.   A layperson's sense.
7    Q.   Is it your job to understand the law which
8    underlies all of your claims?
9          MS. MALONE: Objection, form.
10   A.   No.
11   Q.   Do you rely on your lawyers for that
12   information?
13   A.   Yes.
14         MS. MALONE: Objection, form.
15   Q.   When a message comes to your cell phone, does
16   that make your cell phone ring?
17   A.   Yes.
18   Q.   So to be clear, you received calls on your cell
19   phone from the defendant in this case?
20         MS. MALONE: Objection, form. Leading.
21   Also mischaracterization --
22   A.   Yes.
23         MS. MALONE: -- of testimony.
24         We want to mark your phone as an exhibit,
25   Noah.

---

**Page 134**

1          MR. RADBIL: What?
2          MS. MALONE: It was a joke. Xerxes made a
3    joke.
4    Q.   Do you have a problem with the defendant in
5    this case calling your cell phone?
6          MS. MALONE: Objection, form.
7    A.   Yes.
8    Q.   Did they call your cell phone a lot?
9          MS. MALONE: Objection, form.
10   A.   Yes.
11   Q.   Was your personal or designated work number the
12   only number that they called at your work?
13         MS. MALONE: Objection, form.
14   A.   No.
15   Q.   Which other numbers did they call at your work?
16   A.   The main number for Simple Surrogacy.
17   Q.   And did they leave messages for that number?
18         MS. MALONE: Objection, form.
19   A.   I don't know.
20   Q.   Did you tell them to stop calling your work?
21   A.   Yes.
22   Q.   Did they stop calling your work?
23   A.   No.
24   Q.   Did you tell them to stop calling you on your
25   cell phone?

---

**Page 135**

1          MS. MALONE: Objection, form.
2    A.   Yes.
3    Q.   Did they stop placing calls to your cell phone?
4          MS. MALONE: Objection, form.
5    A.   No.
6    Q.   Did somebody who works for the defendant tell
7    you that they could take away your Ph.D?
8    A.   Yes.
9          MS. MALONE: Objection, form.
10   Q.   Did the calls to your cell phone and your work
11   phone make you feel helpless?
12         MS. MALONE: Objection, form.
13   A.   Yes.
14   Q.   Did they cause you to have any exacerbated
15   medical conditions?
16         MS. MALONE: Objection, form.
17   A.   Yes.
18   Q.   Your rheumatologist is treating you for what?
19   What is your rheumatologist treating you for?
20   A.   Ankylosing spondylitis, symptoms of anxiety
21   and -- and that's it.
22   Q.   So you have sought -- have you sought medical
23   treatment for your anxiety?
24         MS. MALONE: Objection, form.
25   A.   Yes.

---

**Page 136**

1    Q.   And have you received any prescription
2    medication --
3    A.   Yes.
4    Q.   -- as a result.
5          Has the defendant's conduct substantially
6    disrupted your daily routine?
7          MS. MALONE: Objection, form.
8    A.   Yes.
9    Q.   Can you describe, please, how the calls
10   disrupted your daily routine?
11   A.   My anxiety as a result of their calls has
12   disrupted. I'm not certain how to answer that, but the
13   symptoms that I have caused by the -- the harassment
14   have -- have disrupted my daily routine, yes.
15   Q.   Can you be more specific in terms of things
16   that you can or can't do as a result --
17         MS. MALONE: Objection --
18   Q.   -- or just be more specific about how your
19   daily routine was disrupted?
20         MS. MALONE: Objection, form.
21   A.   I've been late to teach class. I have had to
22   reschedule interviews. Doesn't happen on a regular basis
23   and I wouldn't say it was frequent, but it has happened.
24   Q.   What do you think the intent was in calling you
25   repeatedly on your -- at your place of employment?

---

TIMOTHY WHITE                              12/15/2011

## Page 141

1    yes.
2        Q.   All right.  Let's back this up then.  What
3    mental -- how do you define mental anguish in your case?
4        A.   Any phone calls.
5        Q.   Okay.  So without having to go through it all,
6    that was the panic attacks we talked about earlier?
7        A.   Yes.
8        Q.   Anything else?
9              MR. RADBIL:  Objection, form.
10       A.   General worry, the constant worrying --
11       Q.   Okay.
12       A.   -- but...
13       Q.   All right.  I just want to make sure that
14   you're not using those terms differently.  Some folks use
15   mental anguish differently than another term, but we've
16   cov -- I don't want to have to go back over the
17   testimony, sir.  So we covered basically what those
18   problems were, the feelings of helplessness and the
19   worrying about not being able to pay the debt and the
20   panic attacks, right?
21             MR. RADBIL:  Objection, form.
22       A.   Yes.
23       Q.   Okay.  And there's not anything else unique you
24   would add to that if we're defining it as mental anguish;
25   is that fair?

## Page 142

1              MR. RADBIL:  Objection, form.
2        A.   I can't say.
3        Q.   Is there anything else you consider to be
4    mental anguish as a symptom, sir?
5              MR. RADBIL:  Objection, form.
6        A.   In -- that I'm experiencing currently or could
7    it?
8        Q.   That you're experiencing currently, related to
9    this.  I know you may know about it in other areas.  I'm
10   talking about this.
11       A.   Certainly other symptoms, yes.
12       Q.   Okay.  What?
13       A.   Feelings of -- well, there are symptoms of
14   depression, not a disorder but -- I can't say.  There --
15   a lot of symptoms.
16       Q.   Okay.  What symptoms of depression do you
17   believe you're suffering?
18       A.   Helplessness, guilt, feeling powerless, feeling
19   hopeless about the future.
20             I'm sorry.  I didn't mean to just broaden
21   that answer to be every symptom that exists, but those
22   specifically are the ones I'm thinking of.
23       Q.   Okay.  Anything specifically symptomwise that
24   you'd given me -- you feel you are suffering under depression?
25   You've given me helplessness, guilt, powerless, feeling

## Page 143

1    hopeless about the future.
2              MR. RADBIL:  Objection, form.
3        A.   Yes, I'm definitely having those.
4        Q.   Okay.  Any -- any others?
5              MR. RADBIL:  Objection, form.
6        A.   Not that -- I can't say.
7        Q.   Okay.
8        A.   I -- I can't say.
9        Q.   Not that -- not that you can think of as you
10   sit here?
11       A.   Right.  They --
12       Q.   Okay.
13       A.   -- come and go so I...
14       Q.   All right.  And this feeling of helplessness,
15   we talked about earlier that you felt helpless about not
16   being able to resolve the issue with the debt.  Is that
17   the same feeling, or is there something different?
18             MR. RADBIL:  Objection, form.
19       A.   No, that's -- that's it.
20       Q.   Okay.
21       A.   Yes.
22       Q.   And the guilt, I'm assuming that's feeling
23   guilt because you haven't been able to resolve the issue
24   or you haven't been able to pay the money back?
25       A.   Yes.

## Page 144

1        Q.   Okay.
2        A.   And the effect it has on my family, yes.
3        Q.   And -- and the consequences and everything,
4    right?
5        A.   Right.
6        Q.   Okay.  And the feeling powerless, same thing,
7    feeling like that you can't do anything to help the
8    situation at this point?
9        A.   Yes.
10             MR. RADBIL:  Objection, form.
11       Q.   Is that correct?
12       A.   If I lose my job, I'll be letting my employer
13   down.  It's -- I mean, the effects are endless.
14       Q.   Okay.  And hopeless about the future is -- is
15   what's going to happen with you in terms of your license?
16             MR. RADBIL:  Objection, form.
17       Q.   Is that correct?
18       A.   No, general hopelessness as if it's not going
19   to get better until they take everything away from me
20   that I have.
21       Q.   All right.  And you -- you've told me that you
22   have not -- you would not put this in a category of a
23   depressive disorder; is that correct?
24             MR. RADBIL:  Objection, form.
25       A.   I can't say.  They're symptoms.  I --

37
**TIMOTHY WHITE**                          12/15/2011

---

## Page 145

1  Q.  Okay.
2  A.  **I wouldn't say a disorder at this point, no.**
3  Q.  Okay.  And just --
4  A.  **But I -- I can't -- I can't say.**
5  Q.  You can't diagnose yourself.
6  A.  **Right.**
7  Q.  I know.  But you would agree with me that with
8  regard to any particular disorder, there are certain
9  number of symptoms that have to be met before it meets --
10  A.  **Yes.**
11  Q.  -- the definition of disorder.
12  A.  **Yes.**
13  Q.  Is that fair?
14  A.  **Yes.**
15  Q.  And at this point, you're not -- you're not
16  saying that you --
17          MR. RADBIL:  Don't answer that question.
18          MS. MALONE:  You -- I haven't even asked
19  the question yet, Counsel.
20          MR. RADBIL:  Don't answer any question
21  that causes you to have to even close to diagnosing
22  yourself with anything or analyzing your symptoms in
23  connection with a diagnosis.  I would advise strongly
24  against that.
25  Q.  As you sit here today, you are not saying that

---

## Page 146

1  you meet the definition of those; is that fair, sir?
2          MR. RADBIL:  Do not answer that question.
3  It requires a question about diagnosing yourself.  It's a
4  negative so...
5          MS. MALONE:  You know what, we're going to
6  come back to the Judge, so I'm going to stop the
7  deposition based on the fact that you're interfering.
8  You're wanting him to testify about medical conditions
9  and you don't want me to ask him questions about it.
10          MR. RADBIL:  Ask him about his medical
11  conditions.
12          MS. MALONE:  No, you are the --
13          MR. RADBIL:  Don't ask him to diagnose
14  himself.
15          MS. MALONE:  You are asking.  You asked
16  him --
17          MR. RADBIL:  You're asking whether he has
18  a certain diagnosis or whether he does not.  If you ask
19  him whether he does not have a diagnosis, you're asking
20  him to make a diagnosis.
21          MS. MALONE:  You know what, Counsel --
22          MR. RADBIL:  You're asking him to draw a
23  negative inference.
24          MS. MALONE:  I'm going to stop the
25  deposition at this point.  We're going to file a Motion

---

## Page 147

1  to Compel.  That's our certificate of conference.
2          Mr. White, I'll see you again.  We're
3  going to be done for today.  At this time I am canceling
4  the deposition because Counsel is interfering with
5  questions.
6          You want to testi -- have him testify
7  about medical conditions.  I get to ask him what he
8  knows.
9          MR. RADBIL:  I don't want to have him --
10          MS. MALONE:  You did.
11          MR. RADBIL:  -- testify.
12          MS. MALONE:  You did.
13          MR. RADBIL:  I don't want to have him
14  testify --
15          MS. MALONE:  You did.
16          MR. RADBIL:  -- about making a diagnosis.
17          MS. MALONE:  You did.
18          MR. RADBIL:  I don't want the witness to
19  answer any question --
20          MS. MALONE:  Yes, well, you should have
21  thought about --
22          MR. RADBIL:  -- affirmatively --
23          MS. MALONE:  -- his license before you
24  started this, Counsel.
25          MR. RADBIL:  -- or negatively.

---

## Page 148

1  Affirmatively --
2          MS. MALONE:  You should have thought about
3  his license a long time ago.
4          MR. RADBIL:  -- or negatively.  That
5  requires him to make a self-diagnosis.
6          MS. MALONE:  You're doing it.  You had him
7  diagnose that he had mental anguish and these symptoms.
8  Now you want to deal with the consequences of it,
9  Counsel, we'll be back here.
10          MR. RADBIL:  I find your conduct
11  unethical.  I find your conduct in attempting to
12  purposely, what it seems like, put him in a position
13  where he's doing something that is unethical, as far as
14  his training, is beyond reproach.  You can ask him about
15  his mental anguish, his symptoms, but you specifically
16  asked the witness whether he thought he fell into a
17  category or whether or not his symptoms added up to an
18  official diagnosis, which you know he cannot do.
19          MS. MALONE:  That's not what I said.  I
20  said you're not suggesting, as you sit here today,
21  that -- about a diagnosis.  You're not testifying about a
22  diagnosis.
23          MR. RADBIL:  We are clear that he's not
24  testifying about a diagnosis.
25          MS. MALONE:  That's what I was asking him

---

39
**TIMOTHY WHITE**                    12/15/2011

---

**Page 153**

CHANGES AND SIGNATURE

1
2 WITNESS NAME: TIMOTHY WHITE   DEPOSITION DATE: 12/15/11
3 PAGE   LINE   CHANGE      REASON
4 -----------------------------------------
5 -----------------------------------------
6 -----------------------------------------
7 -----------------------------------------
8 -----------------------------------------
9 -----------------------------------------
10 -----------------------------------------
11 -----------------------------------------
12 -----------------------------------------
13 -----------------------------------------
14 -----------------------------------------
15 -----------------------------------------
16 -----------------------------------------
17 -----------------------------------------
18 -----------------------------------------
19 -----------------------------------------
20 -----------------------------------------
21 -----------------------------------------
22 -----------------------------------------
23 -----------------------------------------
24 -----------------------------------------
25

---

**Page 155**

1 STATE OF TEXAS          '
2 COUNTY OF DALLAS
3     This is to certify that I, Diana D. Thrash,
4 Certified Shorthand Reporter duly commissioned and
5 qualified in and for the State of Texas, do hereby
6 certify that there came before me on the 15th day of
7 December, 2011, at the offices of Robbie Malone, located
8 at 8750 North Central Expressway, Suite 1850, Dallas,
9 Texas 75231, the following named person, to-wit: TIMOTHY
10 WHITE, who was duly sworn to testify the truth, the whole
11 truth, and nothing but the truth of knowledge touching
12 and concerning the matters in controversy in this cause;
13 and that he was thereupon examined upon oath and his
14 examination reduced to typewriting under my supervision;
15 that the deposition is a true record of the testimony
16 given by the witness.
17     I further certify that pursuant to FRCP
18 Rule 30(e) that the signature of the deponent:
19     _X_ requested by the deponent or a party
20 before the completion of the deposition, and that
21 signature is to be before any notary public and returned
22 within 30 days from date of receipt of the transcript;
23     ___ was not requested by the deponent or a
24 party before the completion of the deposition.
25     I further certify that I am neither attorney or

---

**Page 154**

1     I, TIMOTHY WHITE, have read the foregoing deposition
2 and hereby affix my signature that same is true and
3 correct, except as noted above.
4
5         --------------------------------
            TIMOTHY WHITE
6
7 STATE OF --------------- )
8 COUNTY OF -------------- )
9     Before me, ---------------------, on this day
10 personally appeared TIMOTHY WHITE, known to me (or proved
11 to me under oath or through --------------------)
12 (description of identify card or other document) to be
13 the person whose name is subscribed to the foregoing
14 instrument and acknowledged to me that they executed the
15 same for the purposes and consideration therein
16 expressed.
17
18     Given under my hand and seal of office this -------
19 day of ----------------------, 2012.
20
21         --------------------------------
            NOTARY PUBLIC IN AND FOR
22         THE STATE OF --------------------
23 My Commission Expires: -----------------
24
25

---

**Page 156**

1 counsel for, nor related to or employed by any of the
2 parties to the action in which this deposition is taken,
3 and further that I am not a relative or employee of any
4 attorney or counsel employed by the parties hereto, or
5 financially interested in the action.
6     CERTIFIED TO BY ME on this 4th day of
7 January, 2012.
8
9
10         _Diana D. Thrash_
11 Diana D. Thrash, CSR
   Texas CSR 2781
   Expiration: 12/31/13
12 Firm Registration No. 105
13 JANIS ROGERS & ASSOCIATES
   1545 West Mockingbird Lane
14 Suite 1031
   Dallas, Texas  75235
15 Tel. No. 114/631-2655
16
17 Taxable cost of original charged to
   Defendant, Regional Adjustment Bureau, Inc.
18 Atty: Ms. Robbie Malone - Robbie Malone, a PLLC
   $
19
20
21
22
23
24
25

---

**JANIS ROGERS & ASSOCIATES**        214.631.2655         **DALLAS, TEXAS  75235**
                                      depos@jracsr.com           Def. App. 0012
                                   (Pages 153 to 156)

U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TIMOTHY WHITE,                          §
                                        §
        PLAINTIFF,                      §
                                        §
V.                                      §           Case No. 3:11-cv-01817-B
                                        §
REGIONAL ADJUSTMENT                     §
BUREAU, INC. D/B/A RAB, INC.            §
                                        §
DEFENDANTS.                             §

## ORDER

On this day the Court considered Defendant's Regional Adjustment Bureau, Inc.'s Motion to Compel.  After reviewing the motion, the Court hereby Orders that Plaintiff have his deposition taken again, and costs associated paid for by Plaintiff.

It is therefore ORDERED that Plaintiff be required to have his deposition taken again within thirty (30) days of this order at his own expense and any other sanctions deemed appropriate by the Court

Signed on _____ day of _____, 2012.


_____
PRESIDING JUDGE