U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY WHITE, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | Case No. 3:11-cv-01817-B |
| | § | |
| REGIONAL ADJUSTMENT BUREAU, INC. D/B/A RAB, INC. | § | |
| | § | |
| DEFENDANTS. | § | |

**DEFENDANT REGIONAL ADJUSTMENT BUREAU, INC.'S TRIAL BRIEF**

COMES NOW Regional Adjustment Bureau, Inc. (hereinafter "RAB"), through counsel of record, and files its Trial Brief as follows:

## I.
## BACKGROUND

1. Plaintiff filed a Complaint in this Court, the United States District Court for the Northern District of Texas, on July 28, 2011, alleging that RAB violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, ("FDCPA"), the Texas Finance Code, § 392, Texas Debt Collection Act ("TDCA"), the Texas Deceptive Trade Practices Act, Texas Business & Commerce Code § 17 ("DTPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Defendant's Appendix ("Def. App.") 1-10. At issue in this Trial Brief are the alleged violations of the FDCPA and the TDCA specifically.

2. When a plaintiff forwards calls from a land line to his cell phone, there is no violation of the TCPA. The calling party was not calling a cell phone in violation of the statute.

**DEFENDANT REGIONAL ADJUSTMENT BUREAU, INC.'S TRIAL BRIEF** 1
M:\9840000 CHUBB FILES\9840280 Timothy White v. Regional Adjustment Bureau, Inc. dba RAB, Inc\Pleading\Defendant Regional Adjustment Bureau, Inc.'s Trial Brief.docx

3. Plaintiff has the burden to prove that RAB's actions caused harm and that he is entitled to damages as a result of RAB's actions. Furthermore, the Court must determine what, if any, is the amount of attorneys' fees and costs that are to be awarded to Plaintiff. With regards to the FDCPA and TDCA allegations, Plaintiff has the burden to establish any "actual" damages that were incurred as a result of RAB's actions. However, only under the FDCPA, and not the TDCA, is Plaintiff allowed to recover statutory damages, not exceeding $1,000.

4. Regarding whether this Court should award Plaintiff attorney's fees, the FDCPA and the TDCA both provide that a debt collector found liable under those acts is responsible for the costs of the action together with reasonable attorney's fees as determined by the Court. However, many Courts have refused to award statutory damages, attorney's fees and costs when it is determined that Defendant's violations were "merely technical" in nature. In the present case, Plaintiff has produced no evidence supporting causation and damages. Furthermore, any violations of the FDCPA and the TDCA are merely technical violations, and do not constitute an award of attorneys' fees to Plaintiff.

## II.
## TCPA

5. Plaintiff has alleged that Defendant violated the TCPA by contacting a landline number at Simple Surrogacy. Apparently, this phone would send an alert to his cell phone telling him that he had a message. Defendant believes the case of *Harper* applies. *Harper v. Credit Control Services, Inc.*, 2012 U.S. Dist. Lexis 70680. In *Harper*, the Court found no violation of the TCPA where Plaintiff forwarded calls from her land line

to her cell. Defendant believes the evidence in this case will conclusively establish that same fact.

## III.
## CAUSATION AND DAMAGES

**A. Plaintiff Must Produce Evidence Supporting Causation and Damages.**

6.     Under the FDCPA a debt collector who violates the statute with respect to an individual is liable to that individual for 1) "any actual damage sustained by such persons as a result of such failure;" and 2) "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(b)(1). The TDCA only allows an individual to recover actual damages sustained as a result of a violation of the act. Tex. Fin. Code § 392.403(a)(2). Plaintiff claims he is entitled to recover actual damages, including emotional and/or mental anguish damages. *See* Def. App. at 6-9. However, he must produce evidence to support the claim.

    1.     Standard for Recovering Actual Damages Under the FDCPA.

7.     Generally, the FDCPA permits recovery of actual damages for emotional distress. *Davis v. Creditors Interchange Receivable Mgt.*, 585 F.Supp.2d 968, 971 (N.D. Ohio 2008). The FDCPA allows an award of "any actual damages sustained by such person as a result of such failure" to comply with the statute. *See id.* at 971. The Federal Trade Commission describes these "actual damages" to include "damages for personal humiliation, embarrassment, mental anguish, or emotional distress" as well as "out-of-pocket expenses." *Id.* (citing Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50109 (Dec. 3, 1988) (Section 813 – Civil Liability)). Because "debt collection…is an inherently stressful experience for the consumer" "an FDCPA

actual damages rule must only award emotional damages for actual, serious emotional distress traceable to proscribed debt collection practices."

8. A plaintiff must do more than "rel[y] solely on his own conclusory statements of emotional distress." *Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) (finding plaintiff's testimony" that he was "humiliated and embarrassed," it was "mentally and emotionally distressful when dealing with credit reporting agencies," and that it was "embarrassing to go somewhere and have them check your credit report and see all the stuff on there" was insufficient to prove actual damages). When the "plaintiff's own testimony is his only evidence of emotional damages, 'he must explain the circumstances of his injury in reasonable detail' and not rely on conclusory statements, unless the 'facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's actions." *Wantz,* 386 F.3d at 834; *see Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 609 (7th Cir. 2005) (noting that the Seventh Circuit "maintain[s] a strict standard for a finding of emotional damage because they are so easy to manufacture.").

9. In addition, "a plaintiff must link the violation of the statute to the alleged harm." *Konter v. CSC Credit Services, Inc.*, 606 F.Supp.2d 960, 967-70 (W.D. Wis. 2009). The plaintiff must "produce[] evidence that draws a direct or causal link between defendant's actions and the emotional injury plaintiff suffered." *Id*. at 969; *Cousin v. Trans Union Corp.*, 246 F.3d 359, 370-71 (5th Cir. 2001).

      2. Standard for Mental Anguish Damages Under Texas Law.

10. The Texas Debt Collection Act requires a plaintiff to prove that he has suffered "actual damages sustained as a result of a violation of this chapter." Tex. Fin. Code § 392.403(a)(2); *Elston v. Resolution Servs.*, 950 S.W.2d 180, 185 (Tex.App.–Austin 1997, no writ). In order for Plaintiff to succeed under the TDCA claims, he must prove that he suffered some *actual* injury and that the injury was caused or was "a result of" the specific violations.

11. The most common damage sought to be recovered by Plaintiffs is mental anguish. The Supreme Court defines it as "a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). "It is nevertheless clear that an award of mental anguish damages will survive a legal sufficiency challenge when the plaintiff has introduced direct evidence of the nature, duration, and severity of his mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine." *Id.* at 444. When plaintiff fails to produce this evidence, "we apply traditional 'no evidence' standards to determine whether the record reveals any evidence of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger' to support any award of damages." *Id.*

12. "Simply because a plaintiff says he or she suffered mental anguish does not constitute evidence of the nature, duration, and severity of any mental anguish that is sufficient to show a substantial disruption of one's daily routine." *Gonzalez v. Temple-*

*Inland Mortg. Corp.*, 28 S.W.3d 622, 626 (Tex. App – San Antonio 2000, no pet.). Testimony in support of mental anguish damages must provide specific details of the nature, duration and severity of the mental anguish. *Gonzalez,* 28 S.W.3d at 626. Conclusory statements are not sufficient. *Id.*

3. Plaintiff Must Establish a Causal Connection Between RAB's Actions and Plaintiff's Damages.

13. Plaintiff seeks recovery for alleged actual damages and mental anguish suffered from RAB's alleged conduct. "[A]n FDCPA actual damages rule must only award emotional damages for actual, serious emotional distress traceable to proscribed debt collection practices." *Davis*, 585 F.Supp.2d at 976. Plaintiff's testimony bases his emotional distress and mental anguish to two specific causes that are not RAB's debt collection practices: 1) his pre-existing financial obligation of student loans, and 2) his pre-existing medical condition, ankylosing spondylitis. He does not attribute his alleged emotional distress and mental anguish to RAB's telephone calls and voicemails.

4. Plaintiff's Medical Condition Requires Expert Testimony.

14. Due to Plaintiff's medical condition and his allegations, expert testimony is required for his recovery of actual damages, mental anguish, or emotional distress. Temporal proximity alone does not meet standards of scientific reliability and does not, by itself, support an inference of medical causation. *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005); *Rolen v. Hansen Beverage Co.*, 193 Fed. Appx. 468, 473 (6th Cir. 2006); *Porter v. Whitehall Labs.*, 9 F.3d 607, 611 (7th Cir. 1993); *Roche v. Lincoln Prop. Co.*, 278 F.Supp.2d 744, 764 (E.D. Va. 2003) ("An opinion based primarily, if not solely, on temporal proximity does not meet *Daubert* standards."). "Expert evidence is often required to establish the causal connection between the accident

and some item of physical or mental injury unless the connection is a kind that would be obvious to laymen, such as a broken leg from being struck by an automobile. *Moody v. Maine Cent. R. Co.*, 823 F.2d 693 (1st Cir. 1987) (quoting 4 F. Harper, F. James, O. Gray, *The Law of Torts* § 20.2 (2d ed. 1986); *see also Bushman v. Halm*, 798 F.2d 651, 658-59 (3d Cir. 1986)). Since the causal connection between RAB's actions and Plaintiff's harm is not a kind obvious to laymen, expert testimony is required.

15. Under Texas law, "[c]ompetent evidence is required to prove the existence and nature of a condition and a causal relationship to the event sued on." *Guevara v. Ferrer*, 247 S.W.3d 662, 667 (Tex. 2007). The general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors. *Id.* at 665. "[I]n limited circumstances, the existence and nature of certain *basic* conditions, proof of a logical sequence of events, and temporal proximity between an occurrence and the conditions can be sufficient to support a jury finding of causation without expert evidence." *Id*. at 667. [emphasis added]. This is because "[u]ndoubtedly, the causal connection between some events and conditions of a *basic nature* (and treatment for such conditions) are within a layperson's general experience and common sense. *Id*. at 668 [emphasis added].

16. Evidence "establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition" could suffice to support a causation finding without expert testimony. *Id.* at 667. Such a finding requires basic physical conditions which (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons. *Id.*

Causal connection always rests in reasonable probabilities. *Colonial Penn Franklin Ins. Co. v. Mayfield*, 508 S.W.2d 449, 452 (Tex. Civ. App.–Amarillo 1974, writ ref'd n.r.e.). In each case the ultimate test is the same, but the nature of the evidence required to submit the issue to the jury varies with the current state of common and medical knowledge concerning the disabling conditions of disease and with the probative effect of the sequence of events between injury and disability.

17. Under both federal and Texas law, it is easy to determine that the interaction of RAB's conduct and Plaintiff's medical conditions are not within a layperson's general experience and common knowledge. Whether RAB's phone calls caused any of Plaintiff's health issues or even aggravated those issues is beyond a layperson's basic knowledge and inevitably requires some expert testimony to avoid a misplaced finding. As discussed *infra*, in the absence of such testimony, Plaintiff cannot establish RAB's actions caused him any harm.

5. Plaintiff has Not Designated Expert Witnesses.

18. Plaintiff has failed to designate his expert witnesses by the date specified by this Court's Scheduling Order. *See* Doc. 14. The Scheduling Order specifies June 6, 2012 as the date for experts for parties seeking affirmative relief. *Id.* Plaintiff did not name experts prior to the deadline, and is prevented from using expert testimony at trial. Any testimony regarding whether RAB's actions caused any aggravation to or had any effect on Plaintiff's ankylosing spondylitis, pre-existing mental anguish or anxiety should be given by a knowledgeable expert in those fields according to *Daubert* and *Robinson*. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995). Unfortunately, Plaintiff is prohibited from

producing any expert testimony regarding the cause of his alleged damages due to missing the deadlines to designate experts.

6. Statutory Damages under FDCPA and TDCA

19. The FDCPA allows for up to $1,000.00 per lawsuit in statutory damages. *Wright v. Finance Services of Norwalk, Inc.* 22 F.3d 647, 648 (6th Cir. 1994); *Raul Martinez v. Scott*, 2011 U.S. Distr. Lexis 906 30 (S.D. Tex. Aug 12, 2011). Therefore a jury must decide whether the liability issue listed above or the liability issue determined by the court regarding the two calls on February 17th and March 11th violated 15 U.S.C. 1692d(a) warrant the granting of any statutory fees and as to what amount. The TDCA, on the other hand, only allows an individual to recover ***actual*** damages sustained as a result of a violation of the act. Tex. Fin. Code §392.403(a)(2). Thus, the plaintiff can only recover statutory damages under the FDCPA, not the TDCA.

7. RAB's Actions Should Only Give Rise to a "De Minimis" Technical Violation

20. A defense based on the "de minimis" doctrine has been adopted by some federal courts, which allow a debt collector to escape from a "technical" violation of the Act. *Pearce v. Rapid Check Collection, Inc.*, 738 F.Supp. 334, 337-338 (D.S.D. 1990). In the *Pearce* case, Plaintiff brought suit against Defendant for various violations of the FDCPA. *Id*. at 335. Among those alleged violations was a claim that the defendant knew that the plaintiff was represented by an attorney, yet sent a letter directly to the plaintiff, thus violating 15 U.S.C. § 1692c(a)(2). *Id*. at 336. The defendant argued that he lacked knowledge that plaintiff was represented by an attorney. *Id*. at 337-38. When evidence was produced of a voice message sent to defendant that plaintiff was obviously represented by counsel, the Court found that the letter sent by defendant to plaintiff and

her bank was an attorney contact, and hence a technical violation of the Act. *Id*. However, the Court held that although a technical violation existed, under the facts of the case, “such violation is characterized as de minimis.” *Id*. Because the violation was only a de minimis technical violation and “not the type of conduct which the intent and purpose of the [FDCPA],” there was not a substantive violation of the FDCPA. *Id*. As a result, the Defendant was not held liable for either actual or statutory damages. *Id*.

21. In the present case, this Court should find that Defendant’s violation of the FDCPA and TDCA were “de minimis” technical violations and not substantive violations. The alleged acts of RAB are “not the type of conduct which the intent and purpose of the FDCPA” was based on. Although in the two calls RAB did not explicitly state that they were a collection agency, Plaintiff was obviously aware of this fact. There had been ongoing discussions between RAB and Plaintiff, and any reasonable person would have been aware of RAB’s status. Similar to the *Pearce* case, there was no harm caused by RAB’s actions. If the Court does find that the debt collection practices employed by RAB does in fact constitute a violation of the FDCPA, the Court should find that this was not a substantive violation, but a de minimis technical violation. Because Defendant’s actions could only constitute a de minimis technical violation, this Court should follow the *Pearce* Court.

## III.
## ATTORNEY’S FEES

### A. Plaintiff fails to prove attorneys’ fees under the TDCA

22. Plaintiff hopes to prove matters involving attorneys’ fees at trial. However, Plaintiff has not properly designated their expert, and as such should be prevented from using this expert witness at trial.

23. According to the courts, "the party offering the expert's testimony bears the burden to prove that the witness is qualified." *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996). In fact, when a witness is clearly an 'expert' in a field but has not been formally designated as such, courts have found that witness may be inadmissible under Texas law because of the failure to designate. *Id*. at 153. Under FRCP 37, an expert witness on attorneys' fees must be designated as an expert even though a trial attorney is normally considered an expert in that field; fee statements alone are not sufficient proof. *Brown v. Taylor*, 210 S.W.3d 648, 657-58 (Tex.App.—Houston [1st Dist.] 2006, no pet.).

24. If an expert is qualified, the court must determine whether the expert's opinion is (1) reliable (i.e., whether the expert's opinion has a reliable basis in knowledge of an experience in the particular field) and (2) relevant (i.e., whether the expert's opinion has a valid connection to the specific inquiry and is helpful to the jury). *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590-91 (1993); FRE 104(a).

25. Plaintiff should be precluded from offering testimony from or about Plaintiff's experts until the Court determines their qualifications to testify under Federal Rules including designation of that witness as an expert. Plaintiff has failed to designate his expert, thus failing to carry his burden. Plaintiff and his expert witness have not met their burden of proof to support any claim under Texas statutory or common law and should be precluded from offering any testimony on attorneys' fees. Then, even if Plaintiff's expert witness is found to be qualified, the Court must make a determination on whether his opinion is reliable and relevant under *Daubert*.

26. "The requirement of expert testimony to establish reasonable and necessary attorney's fees is not new." *Barr v. AAA Texas, LLC*, 167 S.W.3d 32, 38 (Tex. App.—

Waco 2005, no pet.); (citing *E.F. Hutton & Co. v. Youngblood*, 741 S.W.2d 363, 364 (Tex. 1987)(per curiam); *Cantu v. Moore*, 90 S.W.3d 821, 826 (Tex. App.—San Antonio 2002, pet. denied). The "reasonable and necessary" requirements in a determination of attorney's fees are questions of fact to be determined by the fact finder, usually a jury. *See Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 161 (Tex. 2004). However, "the issue of reasonableness and necessity of attorneys' fees require expert testimony; an attorney testifies as to reasonableness, and the testifying attorney must be designated as an expert before he testifies." *Lesikar v. Rappeport*, 33 S.W.3d 282, 308 (Tex. App.—Texarkana 2000, pet. denied). Because it is a jury question, the Federal Rules of Civil Procedure requires that such material be disclosed in response to discovery or be excluded from being admitted into evidence.

27. Once the jury finds that a party should prevail on a claim upon which attorney's fees are mandated, the only question remaining for the jury is the reasonable value of the attorney's fees and not whether they should be awarded. *Satellite Earth Stations East v. Davis*, 756 S.W.2d 385, 387 (Tex. App.—Eastland 1988, writ denied). However, the award becomes mandatory only after the fees are proven reasonable. *Kimbrough v. Fox*, 631 S.W.2d 606, 609 (Tex. App.—Fort Worth 1982, no writ). The general rule under Texas law for the state court claims is that a party seeking attorneys' fees must put on evidence of attorneys' fees and must show diligence in attempting to produce the evidence of such fees in a timely fashion. *Estrello v. Elboar*, 965 S.W.2d 754, 759 (Tex. App.—Fort Worth 1998). When a lawsuit involves multiple claims or multiple parties, the proponent has a duty to segregate non-recoverable fees from recoverable fees, and to

segregate the fees owed by different parties. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991).

28. In the present case, Plaintiff has not designated an expert qualified to testify regarding the reasonableness and necessity of his attorney's fees in the State of Texas and has cause him to forfeit his right to fees under the state-law causes of action; namely the TDCA. As a result, Plaintiff cannot recover any attorneys' fees in this case against RAB. However, if the Court does find that Plaintiff's witness is qualified, it must then make a determination on whether his expert opinion meets the standards laid out in *Daubert*.

**B.     Plaintiff fails to prove attorneys' fees under the FDCPA**

29. The FDCPA provides that a debt collector found liable under the FDCPA is responsible for the costs of the action together with reasonable attorney's fee(s) as determined by the Court. *Jones v. Lockhart, Morris & Montgomery, Inc.*, 1:11-CV-373, 2012 WL 1580759 (E.D. Tex. Feb. 3, 2012) *report and recommendation adopted sub nob. Jones v. Lockhart, Morris & Montgomery, Inc.*, 1:11-CV-373, 2012 WL 1580636 (E.D. Tex. May 4, 2012) (citing 15 U.S.C. § 1692(k)(a)(3)).

30. The fees available under the fee-shifting statute are part of a plaintiff's recovery. *Young v. Asset Acceptance, LLC*, 3:09-CV-2477-BH, 2011 WL 618274 (N.D. Tex. Feb. 10, 2011). Under the FDCPA, attorney's fees and costs are payable to Plaintiff himself rather than to his counsel. *See Hester v. Graham, Bright & Smith, P.C.*, 289 Fed. Appx. 35, 44 (5th Cir. 2008) (per curiam).

31. Under the FDCPA, the judge, not the jury, makes the decision about attorney's fees. *Brooks v. Cook*, 938 F.2d 1048, 1051 (9th Cir. 1991) ("The award of attorneys' fees is a matter of law for the judge, not the jury.").

32. Similarly, as discussed supra, Plaintiff is also entitled to recover reasonable attorney's fees and expenses for violations under the TDCA, § 391.403(b). *See Bullock v. Abbott & Ross Credit Services, L.L.C.*, A-09-CV-413 LY, 2009 WL 4598330 (W.D. Tex. Dec. 3, 2009) (awarding attorneys' fees and costs under both the FDCPA and TDCA).

33. However, it is important to note, that Courts have refused to award attorney's fees and expenses for "merely technical" violations of the FDCPA and TDCA, in order to prevent the creation of a "cottage industry" for attorney's fees.

1. *Degree of Success*

34. Section 1692k of the FDCPA explains that "in the case of any successful action to enforce the foregoing liability" under the statute, the debt collector is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Thus, before awarding attorney's fees, the Court must first determine whether the plaintiff brought a "successful action" or can fairly be considered a "prevailing party." *See Farrar v. Hobby*, 506 U.S. 103, 109, 113 S.Ct. 566, 121 L. Ed. 2d 494 (1992).[1] The standard for determining whether a plaintiff can be considered a "prevailing party" for attorney's fees purposes is whether "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

[1] *Graziano v. Harrison*, 950 F.2d 107, 113-14 (3rd Cir. 1991) (Section 1692k allows a "prevailing plaintiff" to recover attorney's fees and "in a typical case under the [FDCPA], the court should determine what constitutes a reasonable fee in accordance with the substantial Supreme Court precedent pertaining to the calculation of reasonable attorney's fees.").

35. The Supreme Court had determined that while "a plaintiff who wins nominal damages is a prevailing party" entitled to a fee award, "the 'technical' nature of a nominal damages award…does bear on the propriety of fees awarded." *Farrar v. Hobby*, 506 U.S. 103, 112-114 (1992). "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Id.* at 114 (citing *Hensley*, 461 U.S. at 436). In fact, this factor is considered before conducting the usual lodestar analysis. *Farrar*, 506 U.S. at 118.

36. In her concurring opinion, Justice O'Connor explained that "an enforceable judgment alone is not always enough…a technical victory may be so insignificant…as to be insufficient to support an award of attorney's fees" and "a substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical. *Farrar*, 506 U.S. at 117 & 121 [quotations and citations omitted]. "This difference…is not the only consideration," Justice O'Connor continued, another consideration "is the significance of the legal issue on which the plaintiff claims to have prevailed." *Id.* at 121. Justice O'Connor's final consideration is whether the plaintiff's success "accomplished some public goal other than occupying the time and energy of counsel, court, and client," such as the deterrence of future lawless conduct. *Id.* at 121-22 (citing *Chicano Police Officer's Assn. v. Stover*, 624 F.2d 127, 131 (10th Cir. 1980) (nuisance settlement that does not promote any public purpose cannot support award of attorney's fees).

37. Converting Justice O'Connor's concurrence into a three-part analysis for determining whether a victory is technical, the Seventh Circuit Court of Appeals declared a three factor test to determine whether a victory is "merely technical:" (1) the difference

between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiffs prevailed; and (3) the public purpose served by the victory and whether the victory vindicates important rights and deters future violations. *Cartwright v. Stamper*, 7 F.3d 106 (7th Cir. 1993). The Court went on to find that the first factor, the difference between the judgment recovered and the recovery sought, was the most important of the three factors. *Id*. at 110.

a. *Because Plaintiff's Case Relies on a Technical Violation of the FDCPA, His "Victory" is, Accordingly, "Technical."*

38. The first factor was applied in *Johnson*. *Johnson v. Eaton*, 80 F.3d 148, 150-52 (5th Cir. 1996). In *Johnson*, the Fifth Circuit considered when a FDCPA plaintiff is required to be awarded attorney's fees. *Id*. In that case, the plaintiff demonstrated that one of the defendants, White, had violated the FDCPA but failed to enforce any liability for actual or additional damages against White. 80 F.3d at 151. The Court concluded that the plaintiff, therefore, had not brought a "successful action to enforce the foregoing liability" under 15 U.S.C. § 1692k(a)(3) in order to receive attorney's fees and costs. *See id.* The Court reasoned that its reading of the statute did not frustrate the FDCPA's objectives, believing that requiring attorney's fees to be paid when the plaintiff fails to prove damages "rewards lawyers for bringing suits to stop behavior that, by definition, has caused legal injury to no one." *See id.* Thus, the Court's "interpretation of the statute will require attorney's to look for more than a technical violation of the FDCPA before bringing suit and will deter suits brought only as a means of generating attorney's fees." *Id.*

39. As a result of the plaintiff failing to prove any damages despite winning a declaration that the Defendant violated the law, the Court determined that she had not

brought a successful action warranting attorney's fees. *See id.* at 151-52. But the Court went one step further under the *Farrar* decision to find that, "even if Johnson's reading of the FDCPA was correct and she was entitled to receive a reasonable attorney's fee for her technical victory, *Farrar* makes it clear that a reasonable fee would be $0.00." *Id.* at 152.

40.     Accordingly, if a plaintiff's failure to prove any damages, either actual or additional, mandates a reasonable fee of $0, then the failure to prove any actual damages, instead only establishing redress through additional or statutory damages, should, at the very least, warrant a reduction of the plaintiff's attorney fee request.

41.     Such a reduction not only squares with an influential *Carroll* decision, but it is also compatible with the two concerns addressed in *Johnson*. *Carroll v. Wolpoff & Abramson*, 53 F.3d 626 (4th Cir. 1995). In *Carroll*, the Fourth Circuit did not want to "over-encourage litigation…aimed principally at collecting attorney's fees." *Id*. Allowing an attorney to sue over a technical violation of the FDCPA where he only establishes statutory damages and then some multiple of that amount in attorney's fees most certainly encourages this type of litigation. As for *Johnson*, the Fifth Circuit Court first addressed the fact that requiring fees in cases where a plaintiff fails to prove damages "rewards lawyers for bringing suits to stop behavior that, by definition, has caused legal injury to no one." 80 F.3d at 151. In the present case, Plaintiff suffered no actual injury and is only able to recover statutory damages. As explained above, if an award of no damages demands zero fees, then an award of only statutory damages should demand a reduced fee.

        b.     *The "Significance of Legal Issue" Factor Weighs Against Plaintiff.*

42. The second factor – the significance of the legal issue on which the plaintiffs prevailed – "looks not at the relief obtained but to the extent the plaintiffs succeeded on their theory of liability" *Cartwright*, 7 F.3d at 110 (citing 506 U.S. at 121 (O'Connor, J., concurring)). This Court will have to look at all the evidence presented by Plaintiff and determine the extent that they succeeded on their theory of liability. The Court should not focus on the amount of relief that Plaintiff is granted (either actual damages, injunction, or statutory damages), but focus on whether Plaintiff succeeded in their goals with respect to the success of their legal theory. The Court should look at the two alleged incidents, the phone conversations between Plaintiff and Defendant, and determine the extent to which Plaintiff was successful in his FDCPA and TDCA claims.

   c.  *Only Plaintiff's Counsel is Served by Plaintiff's "Victory."*

43. The third factor – the public purpose served by the victory – principally relates to whether the victory vindicates important rights and deters future violations. *Cartwright*, 7 F.3d at 110. "The more important the right at stake and the more egregious the violation the more likely it is that the victory serves a public purpose." *Id.* Justice O'Connor noted that this goal must be something "other than occupying the time and energy of counsel, court, and client." *Farrar*, 506 U.S. at 121-22.

44. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

45. Just as Justice O'Connor feared in *Farrar*, a large award of attorney's fees in this case "cannot deter misconduct any more than a bolt of lightning can" – while its results

might be devastating, it teaches no valuable lesson because it carries no discernible meaning. There is no lesson to be learned here because there is no reason to believe Regional Adjustment Bureau violated the law. This final factor, like the other two, weighs against awarding Plaintiff his requested fees.

## IV.
## CONCLUSION

46. The Court needs to determine whether or not Plaintiff has enough evidence supporting causation and damages and whether or not Plaintiff is entitled to attorneys' fees and costs. In order to properly evaluate Plaintiff's causation and damages issues, the Court needs to determine whether Plaintiff suffered any actual damages, whether there was a violation on Defendant's behalf that necessitates an award of statutory damages, and whether Plaintiff carried his burden in proving that RAB's actions were responsible for his ailments. Furthermore, in order to determine whether Plaintiff can recover any costs associated with attorneys' fees, the Court must determine whether Defendant's actions violated the FDCPA and TDCA and also determine whether or not these violations were "merely technical" violations or "de minimis" technical violations. In the present case, Plaintiff has produced no evidence supporting causation and damages. Furthermore, any violations of the FDCPA and the TDCA are merely technical violations, and do not constitute an award of attorneys' fees to Plaintiff.

                Respectfully submitted,

                [SIGNATURE BLOCK ON NEXT PAGE]

**ROBBIE MALONE, PLLC**

/s/Robbie Malone
ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@rmalonelaw.com
XERXES MARTIN
State Bar No. 24078928
Email: xmartin@rmalonelaw.com
ROBBIE MALONE, P.L.L.C.
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
TEL: (214) 346-2630
FAX: (214) 346-2631

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been forwarded via electronic filing on this 8th day of February, 2013 to:

Noah D. Radbil
Weisberg & Meyers, LLC
Two Allen Center
1200 Smith Street, 16th Floor
Houston, TX 77002

/s/Robbie Malone