IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY WHITE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-cv-01817-B |
| | § | |
| REGIONAL ADJUSTMENT | § | |
| BUREAU, INC. d/b/a RAB, INC. | § | |
| | § | |
| Defendant. | § | |

## JOINT PRETRIAL ORDER

I.     SUMMARY OF THE CLAIMS AND DEFENSES OF EACH PARTY.

*Plaintiff Timothy White*

The unresolved claims to be submitted at trial are: (a) Plaintiff's cause of action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), (b) Plaintiff's cause of action under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692c(a)(3), and (c) the measure of Plaintiff's statutory and actual damages.

A.     **47 U.S.C. § 227(b)(1)(A)(iii).**

Section 227(b)(1)(A)(iii) "prohibits prohibits an entity from 'mak[ing] any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.'" Order on Dispositive Motions ("Order") at 19 (doc. 63) (quoting 47 U.S.C. § 227(b)(1)(A)).

Plaintiff alleges that Defendant violated the TCPA in two ways: (1) by using an automatic telephone dialing system to place calls to Plaintiff's cellular telephone, and (2) by using an artificial or prerecorded voice to place calls to Plaintiff's cellular telephone.

### 1. Automatic Telephone Dialing System Claim.

The genuine issues of fact to be tried on this claim are: (1) "whether Defendant's telephone system is an automatic telephone dialing system as defined by the TCPA[,]" Order at 22; and (2) the number of calls Defendant placed to Plaintiff's cell phone using an automatic telephone dialing system. *See* Order at 21-22.

### 2. Artificial or Prerecorded Voice Claim.

"[R]ecorded voicemails shows that an automated or precorded voice, and not a live person, left several messages on Plaintiff's cellular telephone." Order at 22. The genuine issues of fact to be tried on this claim are: (1) whether that prerecorded voice came from Defendant, or came from Plaintiff's employer's phone in the process of the transferring the call to Plaintiff's cell phone—as Defendant represented, *see* Order at 22; and (2) the number of times that Defendant placed calls to Plaintiff's cell phone using an artificial or prerecorded voice.

### B.     15 U.S.C. § 1692c(a)(3).

"Section 1692c(a)(3) prohibits a debt collector from making communications regarding debt collection to a consumer 'at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.'" Order on Dispositive Motions ("Order") at 6 (doc. 63). Plaintiff is a consumer. Defendant is a debt collector. Defendant made debt collection phone calls to Plaintiff at Plaintiff's place of employment  *See* Order at 8 ("The Court concludes that such evidence is sufficient to show that Defendant called Plaintiff's place of employment").

Concerning liability, the only genuine issue of fact to be tried on this claim is whether Plaintiff stated in plain English that he could not speak to Defendant at work. *See* Order at 7 (quoting *Horkey v. J.V.D.B. & Assocs.*, 333 F.3d 769, 773 (7th Cir. 2003) ("*See Horkey v. J.V.D.B. & Assocs.*, 333 F.3d 769, 773 (7th Cir. 2003) ("It is . . .enough to put debt collectors on notice under § 1692c(a)(3) when a consumer states in plain English that she cannot speak to the debt collector at work.").

**C.     Damages.**

**1.     TCPA.**

Engaging in conduct proscribed by Section 227(b)(1)(A)(iii) gives rise to statutory liability under Section 227(b)(3)(B) for either "actual monetary loss from such a violation, or ... $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). *Adamcik v. Credit Control Services, Inc.*, 832 F. Supp. 2d 744, 754 (W.D. Tex. 2011), appeal dismissed (Feb. 29, 2012). "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B)" (treble actual damages or $1500 per call, whichever is greater). 47 U.S.C.A. § 227(b)(3).

**2.     FDCPA.**

Defendant's liability for violating the FDCPA at Sections 1692d(6) and 1692e(11) has been established. This Court granted Plaintiff's motion for partial summary judgment on these two FDCPA claims. *See* Order at 24. "A debt collector who violates the FDCPA is liable for actual damages, additional damages of up to $1,000, and attorneys' fees." *Gonzalez v. Kay*, 577 F.3d 600, 604 (5th Cir. 2009, *cert. denied*, 130 S. Ct. 1505 (2010) (citing 15 U.S.C. § 1692k(a)(1)).

### a. Actual Damages.

Defendant's wrongful conduct caused Plaintiff to suffer legitimate actual damage. Plaintiff's actual damages not only include any out of pocket expenses, but also damages for personal humiliation, embarrassment, mental anguish, and emotional distress. Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50109 (Dec. 13, 1988) (Section 813- Civil Liability) (noting that "actual damages" for FDCPA violations include "damages for personal humiliation, embarrassment, mental anguish, or emotional distress" as well as "out-of-pocket expenses"). The jury must determine for themselves, upon the consideration of the facts of the case, what damages have been actually sustained by Plaintiff in consequence of the unauthorized and wrongful acts of Defendant. *Mayor, Aldermen & Commonalty of City of New York v. Ransom*, 64 U.S. 487, 490 (1859).

### b. Additional Statutory Damages.

The jury must also determine the measure of additional statutory damages, up to $1,000. *Adamcik v. Credit Control Services, Inc.*, 832 F. Supp. 2d at 744.

### c. Costs and Reasonable Attorneys' Fees.

The FDCPA provides that a debt collector found liable under the FDCPA is responsible for the costs of the action together with reasonable attorney's fee(s) as determined by the Court. *Jones v. Lockhart, Morris & Montgomery, Inc.*, 1:11-CV-373, 2012 WL 1580759 (E.D. Tex. Feb. 3, 2012) *report and recommendation adopted sub nom. Jones v. Lockhart, Morris, & Montgomery, Inc.*, 1:11-CV-373, 2012 WL 1580636 (E.D. Tex. May 4, 2012) (citing 15 U.S.C. § 1692k(a)(3)); *Johnson v. Eaton*, 80 F.3d 148 (5th Cir. 1996). (The FDCPA "mandate[es] that the debt collector . . . pay the debtor's attorney's fees in addition to his own attorney's fees.").

The fees available under a fee-shifting statute are part of a plaintiff's recovery. *Young v. Asset Acceptance, LLC*, 3:09-CV-2477-BH, 2011 WL 618274 (N.D. Tex. Feb. 10, 2011). Under the

FDCPA, attorney's fees and costs are payable to Plaintiff himself rather than to his counsel. *See Hester v. Graham, Bright & Smith, P.C.*, 289 Fed. Appx. 35, 44 (5th Cir.2008) (per curiam)

Under the FDCPA, the judge, not the jury, makes the decision about attorneys' fees. *Brooks v. Cook*, 938 F.2d 1048, 1051 (9th Cir. 1991) ("The award of attorneys' fees is a matter of law for the judge, not the jury."); *Adamcik v. Credit Control Services, Inc.*, A-10-CA-399-SS, 2011 WL 6793976 (W.D. Tex. Dec. 19, 2011) (Issue of attorneys' fees and costs submitted for Court's determination upon post-verdict briefs).

3.   **TDCA.**

Defendant's liability for violating the TDCA at Sections § 392.304(a)(4) and (a)(5)(B) has been established. This Court granted Plaintiff's motion for partial summary judgment on these two TDCA claims. *See* Order at 16. A plaintiff may recover actual damages including, without limitation, for mental anguish under the TDCA. Tex. Fin. Code Ann. § 392.403(a)(2). Plaintiff is also entitled to recover reasonable attorney's fees and expenses under the TDCA, § 392.403(b). *See Bullock v. Abbott & Ross Credit Services, L.L.C.*, A-09-CV-413 LY, 2009 WL 4598330 (W.D. Tex. Dec. 3, 2009) (awarding attorneys' fees and costs under both the FDCPA and TDCA).

*Defendant Regional Adjustment Bureau, Inc.*

**Defendant's Contentions:**

   A.   **The TCPA**

   In order to prevail under the TCPA Plaintiff must establish that Defendant used an automated telephone dialing system or artificial prerecorded voice message to make a call to Plaintiff's cell phone without their consent.

   Defendant contends that the vast majority of its calls were made manually. In fact, only three calls were made engaging the ATDS and only one of those was an outbound call.

Defendant further contends that Plaintiff's complaint is really about calls to a land line at Simple Surrogacy that sent a voicemail alert to his cell phone. In *Harper v. Credit Control Services, Inc.* 2012 US Dist. Lexis 70680, the court specifically found calls forwarded from a land line by the consumer to a cell phone did not violate the TCPA.

There are no damage issues to be determined. The TCPA does not provide for attorney fees or actual damages.

**B. The FDCPA**

    **a. Liability**

    Following the court's ruling, the only remaining liability issue under the FDCPA centers around 1692 (c)(a)(3) which prohibits a debt collector from making communications regarding debt collection to a consumer at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication. Defendant contends that Plaintiff was not an employee of Simple Surrogacy and did not advise the Defendant that his employer prohibited such communications.

    **b. Damages**

    The FDCPA allows for up to $1,000.00 per lawsuit in statutory damages. *Wright v. Finance Services of Norwalk, Inc.* 22 F.3d 647, 648 (6th Cir. 1994); *Peter v. GC Services, LP* 310 F.3d 344, 353 n.s (5th Cir. 2002); *Raul Martinez v. Scott*, 2011 U.S. Distr. Lexis 906 30 (S.D. Tex. Aug 12, 2011). Therefore a jury must decide whether the liability issue listed above or the liability issue determined by the court regarding the two calls on February 17 and March 11 violated 15 USC 1692d(a) warrant the granting of any statutory fees and as to what amount. The jury may find

a technical violation warrants no award for a de minimis award. Defendant contends Plaintiff maybe awarded $0.00.

Additionally, Plaintiff has sought to recover actual damages under the FDCPA. Again, the jury must determine what, if any, actual damages were proximately caused by Plaintiff's actions. Defendant contends that Plaintiff has no proof of actual damages caused by failing to identify a debt collector who is returning his call is in fact a debt collector.

Plaintiff also has pled to recover reasonable and necessary attorney fees under the FDCPA. However, Plaintiff has filed to identify any experts on the topics and Defendant has pending objections.

C. **The TDCA damages only**

While the court has determined the two phone calls violated Texas Finance Code, the Plaintiff must establish both proximate cause and actual damages. *Elston v. Resolution Services, Inc.* 950 SW2d 180, 185 (Tex. App-Austin 1997, no writ.); *Gonzalez v. Temple-Inland Mortg. Corp.)* 28 SW3d 622 (Tex. App-San Antonio no pet.).

Further, to recover mental anguish, Plaintiff must meet the *Parkway v. Woodruff* standard *Parkway W. v. Woodruff,* 901 SW2d 434, 444 (Tex. 1995). Plaintiff has attempted to list experts in this topic on his pretrial disclosures list, long after the designation of experts is due and after discovery cutoff.

Further, Texas law requires that reasonableness and necessity of attorney fees should be determined by a jury *Manon v.Tejas Toyota Inc.,* 162 SW3d 743 (Tex. App-Houston [14th], 2005). Again, Plaintiff has failed to name experts. Defendant contends Plaintiff will not be able to establish that the calls failing to identify the caller as a debt collector caused him any harm.

7

## II.  JOINT STATEMENT OF STIPULATED FACTS.

1. RAB is under contract with Texas Guaranteed ("TG") to provide debt-collection services in connection with TG's student loan portfolios.

2. In August 2010, TG placed Dr. White's student loan debt with RAB for collection.

3. RAB maintains business records in the form of account notes documenting RAB's communications and attempted communications with Dr. White.

4. "POE" stands for "place of employment or work phone number."

## III.  CONTESTED ISSUES OF FACT.

*Plaintiff Timothy White's Statement of Uncontested Facts*

1. Dr. White is a Dallas resident who works as an associate counselor for a Dallas-based surrogacy agency called Simple Surrogacy.

2. Since 2007, Simple Surrogacy has employed Dr. White to work with children and families, and to provide licensed interviews, assessments and counseling for parents, surrogates, and egg donors

3. Dr. White earned his Bachelor of Arts in psychology at The University of Texas-at Austin (1998), his Master of Arts in counseling psychology at Ball State University (2000), his Master of Science in clinical research psychology at Texas A&M University—Commerce (2011), where he also earned his Doctorate in educational psychology, also from Texas A&M University—Commerce (2011).

4. To finance his undergraduate and first master's degree, Dr. White applied for student loans. See App. 7, lines 13-20. Dr. White borrowed no money to pay the tuition required to earn his second master's degree and PhD.

5. In 2001, Dr. White consolidated his student loans through Sallie Mae, which later sold the loans to Texas Guaranteed Student Loan Corporation ("TG"). See App. 20, lines 13-20.

6. Dr. White has never been arrested or charged with any crime, has never before sued anyone, and has never filed for bankruptcy.

7. RAB is under contract with Texas Guaranteed ("TG") to provide debt-collection services in connection with TG's student loan portfolios.

8. In August 2010, TG placed Dr. White's student loan debt with RAB for collection.

9. RAB placed debt-collection calls to the main telephone number of his employer, Simple Surrogacy.

10. RAB maintains business records in the form of account notes documenting RAB's communications and attempted communications with Dr. White.

11. "RAB's account notes reflect that Plaintiff's place of employment at telephone number (866) 417-8776 was called 17 times in 59 days."

12. "POE" stands for "place of employment or work phone number."

13. RAB's Account Notes identify Simple Surrogacy as Dr. White's "POE" or place of employment.

14. RAB placed calls to Dr. White's place of employment on the following dates, among others: February 1, 2011, February 2, 2011, February 3, 2011, February 4, 2011, February 17, 2011, February 23, 2011, March 7, 2011, March 8, 2011, and March 14, 2011.

15. RAB's business records document a total of no less than 77 debt-collection telephone calls that RAB placed to Dr. White's cellular telephone, home telephone, and place of employment.

16. RAB uses the Ontario Systems Guaranteed Contacts dialer.

17. RAB publicly represents on its company website that its Guaranteed Contacts dialing system is a "predictive dialer":

> Persistence is an essential trait of successful collections. **Guaranteed Contacts, a "predictive dialer,"** provides persistence that collectors cannot manually duplicate. Using Guaranteed Contacts enables our collectors to efficiently and quickly contact account holders.
>
> Guaranteed Contacts dials thousands of numbers each day. Through dialer strategies selected by the computer, telephone numbers to be called are placed in a dialing pool. Right party communications are dramatically increased based upon best practices that are implemented and coordinated by the highly experienced RAB management team.

18. On April 27, 2006, RAB—by and through its vice president Robert Pugh—RAB submitted a formal letter in response to the Federal Communication Commission's request for public comment on whether debt-collection calls should be exempted from the Telephone Consumer Protection Act's prohibition against using an automatic telephone dialing system to place any call to a cellular telephone number absent the express prior consent of the called party.

19. The FCC denied the ACA's petition, determining that debt-collection calls were subject to the TCPA's prohibition against using an automatic telephone dialing system to place any call to a cellular telephone absent the called party's prior express

9

consent. In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C.R. 559, 565 (2008).

20. RAB captured Dr. White's cellular telephone number—(281) 435-1163—through RAB's caller ID.

21. Dr. White did not provide his cellular telephone number to RAB or TG, and did not provide his cellular telephone number in connection with his student loan applications.

22. RAB's knew at all times relevant that Dr. White's cellular telephone number was in fact a cellular telephone number, and that it had no permission or consent from Dr. White to call.

23. RAB holds a dialer permit in the State of Texas called an ADAD (Automatic Dial Announcing Device) permit.

24. On February 15, 2011, RAB updated its FACS database to include Dr. White's cellular telephone number.

25. On February 17, 2011, RAB changed the "responsible party" telephone number for Dr. White's account to his cellular telephone number. The " 'G' on RAB's account notes signifies that Dr. White's cellular telephone number was a "good number" which would be called first.

26. Dr. White's account, including his cellular telephone number (designated as the first number to call), was repeatedly moved back to the automatic dialer by RAB's employees.

27. RAB trains its employees on how to use RAB's dialing system to place calls using basic commands and windows.

28. On March 2, 2011, RAB's Account Notes show an RAB employee identified as "SMF" moved Dr. White's account back to the automatic dialer. See App. 121 ("SMF 03/02/11 2:06 3TRP INITIATING DISP CHG et 3trp index 22269103") (emphasis added).

29. Mr. Wyatt testified that "SMF" is "an individual in the IT department that handles tactics and dialing situations." App. 94, lines 12-13.

30. RAB's automatic dialing system places numerous telephone calls at once, and routes to RAB's employees the first call that is actually connected.

31. When the previous call routed to their station is terminated, RAB's employees are trained to initiate the automatic dialing system again by hitting the enter key on their computer. This signals to the dialer that the employee is ready to handle another connected call.

32. Once initiated RAB's dialer again automatically places calls to multiple numbers at once, and then transfers the first connected call back to the collector:

33. RAB placed calls to Dr. White's cellular telephone directly.

34. At least two such calls resulted in messages left directly to his cellular telephone voicemail service.

35. On March 14, 2011, RAB placed a telephone call to Dr. White's work telephone number (877-417-8776) and left the following artificial or prerecorded voice message at 5:03 P.M:

> To accept press one, to send to voice mail press two to hear the phone number press three. (six second pause) to accept press one, to send to voice mail press two to hear the phone number press three (six second pause)goodbye.

RAB's Account Notes corresponding to this call state:

```
CYD 03/14/11      5:00P manual dial 866-417-8776
CYD 03/14/11      5:03P TL POE . . . NA WENT TO VM
NLW
```

36. On March 16, 2011, RAB placed a telephone call to Dr. White's work telephone number (877-417-8776) and left the following artificial or prerecorded voice message at 2:26 P.M:

> Number press three. (six second pause) to accept press one, to send to voice mail press two to hear the phone number press three (six second pause) goodbye.

RAB's Account Notes corresponding to this call state:

```
CYD 03/16/11      2:24P manual dial 866-417-8776
CYD 03/16/11      2:24P NO ANS
```

37. On March 22, 2011, RAB placed a telephone call to Dr. White's cellular telephone number (281-435-1163) and left the following artificial or prerecorded voice message at 12:37 P.M:

> Press three. (six second pause) to accept press one, to send to voice mail press two to hear the phone number press three.(six second pause) to accept press one, to send to voice mail press two to hear the phone number press three (six second pause)goodbye.

RAB's Account Notes corresponding to this call state:

11

```
CYD 03/22/11        12:36P manual dial 281-435-1163
CYD 03/22/11        12:36P NO ANS
```

### *Plaintiff Timothy White's Statement of Contested Issues of Fact.*

(1)   Whether Defendant's telephone system is an automatic telephone dialing system as defined by the TCPA; *see* Section IA, *supra.*

(2)   The number of calls Defendant placed to Plaintiff's cell phone using an automatic telephone dialing system; *see* Section IA, *supra.*

(3)   Whether Defendant used an artificial or prerecorded voice to make any calls to Dr. White's cellular telephone number; *see* Section IA, *supra.*

(4)   The number of calls Defendant made to Dr. White's cellular telephone number using an artificial or prerecorded voice; *see* Section IA, *supra.*

(5)   Whether Plaintiff stated in plain English that he could not speak to Defendant at work. *see* Section IB, *supra.*

(6)   The measure of Dr. White's actual damages; *see* Section IA(c), *supra.*

(7)   The measure of Dr. White's statutory damages; *see* Section IA(c), *supra.*

(8)   The measure of Dr. White's reasonable attorneys' fees and costs; *see* Section IA(c), *supra.*

### *Defendant Regional Adjustment Bureau, Inc.'s Statement of Contested Issues of Fact.*

(1)   Whether or not Plaintiff was employed by Simple Surrogacy.

(2)   Whether or not Plaintiff advised Defendant that his employer prohibited calls to his land line at Simple Surrogacy.

(3)   Whether or not a collector's failure to identify herself as a debt collector in a return call to Plaintiff constitutes a technical violation warranting a de minimis recovery.

(4) Whether or not a collector's failure to identify herself as a debt collector in a return call to Plaintiff caused actual damage to Plaintiff.

(5) Whether or not RAB manually called Plaintiff's cellular phone.

(6) Whether or not Plaintiff suffered any actual damages.

(7) Whether or not Plaintiff can establish causation.

(8) Whether or not Plaintiff can Whether or not Plaintiff's damages are due to a pre-existing condition.

(9) Whether or not Plaintiff failed to mitigate damages.

(10) Whether or not Defendant's actions were a result of bona fide error.

## IV. DEFENDANT'S STATEMENT OF CONTESTED ISSUES OF LAW.

(1) Whether forwarding calls from a land line to a cell phone constitutes a violation of the TCPA.

(2) Whether actual damages under the FDCPA are subject to the same definition as the TDCA. Actual damages, i.e. *Parkway v. Woodruff*.

(3) Whether the Plaintiff's claims are a technical violation and subject to no or de minimis statutory award.

(4) Whether Plaintiff's claims proximately caused any recoverable actual damage.

(5) Whether Texas law requires a jury finding of reasonable and necessary attorney fees for an award under the TDCA.

(6) Whether the jury should be instructed according to the Allen case as to the fact attorney fees are being sought under the statute.

(7) Whether or not a contract employee constitutes an employee under the FDCPA for purposes of a prohibition of calls to a prohibited place of employment.

(8) Whether or not intentional and knowingly under the TCPA are defined as a knowing violation of the TCPA statute.

V. **AN ESTIMATE OF THE LENGTH OF TRIAL;**

This is a jury trial with an estimated length of two and one half days.

VI. **A LIST OF ADDITIONAL MATTERS WHICH MIGHT AID IN THE DISPOSITION IN THIS DISPOSITION OF THIS MATTER.**

*Defendant Regional Adjustment Bureau, Inc..*

1. Defendant's Motion to Exclude Plaintiff's Unnamed Experts or Expert Testimony;
2. Defendant's Objections to Plaintiff's First Supplemental Rule 26(a) Disclosure Statement;
3. Pretrial and First Supplemental Pretrial Disclosures;
4. Defendant's Motion in Limine;

*Plaintiff Timothy White*

1. The mediated settlement conference scheduled for Monday, February 11, 2013.

Agreed to and approved:

| | |
|---|---|
| /s/Robbie Malone | /s/ Noah D. Radbil |
| ROBBIE MALONE | Noah D. Radbil |
| State Bar No. 12876450 | Texas Bar No. 24071015 |
| Email: rmalone@rmalonelaw.com | noah.radbil@attorneysforconsumers.com |
| XERXES MARTIN | Weisberg & Meyers, LLC |
| State Bar No. 24078928 | Two Allen Center |
| Email: xmartin@rmalonelaw.com | 1200 Smith Street, Sixteenth Floor |
| ROBBIE MALONE, P.L.L.C. | Houston, Texas 77002 |
| Northpark Central, Suite 1850 | Telephone:  (888) 595-9111 |
| 8750 North Central Expressway | Facsimile:  (866) 317-2674 |
| Dallas, Texas  75231 | |
| TEL: (214) 346-2630 | *Counsel for Plaintiff* TIMOTHY WHITE |
| FAX: (214) 346-2631 | |

**SO ORDERED.**

**SIGNED** _Feb. 26_, 2013.

                                                                JANE J. BOYLE
                                                                UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

On February 8, 2012, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal rule of Civil Procedure 5 (b)(2).

By: /s/ Noah D. Radbil
Noah D. Radbil