IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY WHITE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-cv-01817-B |
| | § | |
| REGIONAL ADJUSTMENT | § | |
| BUREAU, INC. d/b/a RAB, INC. | § | |
| | § | |
| Defendant. | § | |

## AFFIDAVIT OF MARSHALL MEYERS

I am Marshall Meyers. I am over 18 years of age, of sound mind, and state the following under penalty of perjury, to the best of my personal knowledge, information, and belief.

I deeply apologize to the Court for inadequately conveying my feelings towards this matter in its entirety. Somehow, my deep concern about the allegations being made, along with my disgust over being alleged to be a firm I have strived never to be, has been interpreted by this Court as condoning the specific circumstances over which I have or had complete control. I hope through this Affidavit and upcoming testimony that I can adequately address each of the Court's comments and concerns.

This Honorable Court admonished me, *inter alia*, that "if I [the Court] had a lawyer in my firm that even began to do some of the things that have occurred on the record in this case with Mr. Radbil, he would be nowhere close to the law firm" (August 2, 2013 Hearing Transcript at 53:17-21); that it does not see from me an apology "except for a little bit more of a concession that his [Noah Radbil's] behavior was unacceptable," (*Id.* at 207:19-21); and that "[i]t's very

1

surprising to me [the Court] that a lawyer that is practicing as long as you have in your capacity did not take stock of what had happened by what was reflected in the record and come here with an attitude of making sure that this was never going to happen again," that I was "adopting this conduct as somehow appropriate." (August 7, 2013 Hearing Transcript at 11:23-12:6).

To begin and address where the Court's stated: "if I had a lawyer in my firm that even began to do some of the things that have occurred on the record in this case with Mr. Radbil, he would be nowhere close to the law firm" (August 2, 2013 Hearing Transcript at 53:17-21), I understand the Court's perspective: what kind of responsible managing partner would still allow an attorney to stay at his firm, when that attorney is alleged to have done what the Court thinks Noah did here? Perhaps none.  But another question deserves consideration as well: what kind of law firm would dismiss one of its own lawyers, who has worked diligently throughout the past several years, without due process?  I plead with the Court to understand that although Noah and I have since mutually agreed it is best he pursue other legal opportunities, he deserved—and deserves—my consideration in this regard.

Next, the Court commented that "[i]t's very surprising to me [the Court] that a lawyer that is practicing as long as you have in your capacity did not take stock of what had happened by what was reflected in the record and come here with an attitude of making sure that this was never going to happen again."  (August 7, 2013 Hearing Transcript at 11:23-12:6). This statement does not accurately reflect my feelings.

The only way I can "make sure" no errors ever occur is by staying completely static. But short of that, the best way I can make sure my firm is not again part of any conduct that the Court found/finds objectionable here is two-fold: (1) learn with absolute certainty what it is the Court

2

believes was untoward conduct, and (2) become admitted to every federal court in Texas and litigate the cases as lead counsel with the Court's admonishments at the forefront of my mind.

As to the first prong, while I certainly understand some of the conduct that concerns this Court, I am depending on the Court to help me understand with precision what type of conduct it does not want to see in the future. And as to the second prong, in my E-mail congratulating Ms. Malone on her victory here, I advised her that I was "in the process of requesting admission to the 4 federal courts in Texas and truly look forward to being able to work with you [her] on these future cases." See March 14, 2013 E-mail Correspondence, attached hereto as Exhibit A.

Prior to what occurred in this case, it was not my intent to handle all the foreseeable future Texas trials myself, or to personally handle all Ms. Malone's cases as lead counsel. In fact, it is a great personal hardship for me to do so as my wife was diagnosed with cystic fibrosis at the beginning of this year[1] (and her 6 month check up was on August 7, which I of course intended to be present for until the Court scheduled day two of these proceedings; my inability to be present I am sure caused, at least in part, what the Court termed "completely inappropriate" behavior, which is not an "excuse" but at least a "reason"). I apologize.

**How I Gauge Client Satisfaction.**

Weisberg & Meyers has an excellent history with its clients. Nonetheless, Ms. Malone has made many grossly pejorative and wholly speculative statements about how Weisberg and Meyers, LLC mistreats its clients, including but not limited to that W&M has "the audacity to call themselves attorneys for consumers are in fact manipulating consumers and taking advantage of them…" (August 2, 2013 Hearing Transcript at 15:5-7), that W&M takes "advantage of consumers who they purport to represent," (August 7, 2013 Hearing Transcript at

---

[1] Amongst other ongoing health concerns.

3

4:25-5:1), and how we are now "proffering affidavits that are substantively about how their operation operates and to support the idea that they are a much cleaner operation than has been evidenced in this case." (*Id.* at 7:25-8:3).

These statements exhibit how Ms. Malone's zeal may cloud her perception, as in my opinion if these things were true, they would be manifested in great volume through client lawsuits and bar complaints[2]—which they are not.

Prior to the second day of the continued sanction hearing, several affidavits were filed in this matter, including one by Tremain Davis that authenticates internet searches and internal searches on our servers that he performed, including a Better Business Bureau report showing overwhelmingly satisfied clients (save for one) and my firm's A+ rating (see original affidavit), screen shots of literally countless client satisfaction letters my State Bar of Arizona internet page showing no disciplinary history, my partner Alex Weisberg's 2012 Florida state bar summary, and every Bar disposition I could readily locate.

Mr. Davis since filed his supplemental affidavit, showing even more positive BBB reviews, all the firm's actual thank-you letters, and recommendations from the firm's Facebook page.

---

[2] The Court also inquired as to ethics complaints filed against members of the firm. Mr. Davis's original affidavit provides dispositions to most of the complaints filed. Even without complete information, I can readily name the following complainants: Veletta Coleman (Texas client); David Rosado (Florida client); Geoffrey Marsden (opposing party); Carlton Allen (Florida client); Robert and Barbara Daniels (Florida clients); Kristen Mullah (Florida client); Sheila Abrego (Florida client); Hector Zuniga (Texas client); Tyler Thomson (opposing party); Vanessa Stewart/Rose Hill (potential clients whose representation we declined); Robert and Patty Smith (Illinois clients of our prior law firm). And I can absolutely, positively tell this Court that no attorney at Weisberg and Meyers has *ever* been disciplined while at the firm. And as I said to the Court, Mr. Weisberg and I were both subject to bar complaints at our prior firm: he for how that firm maintained its website and in a complaint filed by an opposing counsel, and me for a bookkeeper's trust account error. These were things over which we had no control, but for which we were ultimately responsible.

The Court also asked about lawsuits by my firm against its clients, and by clients against the firm. I attach the two such instances. (See W&M Complaint against Richard Chalker, attached as Exhibit B; W&M Complaint against Debra Moore and her counter-claim against W&M, attached as Exhibit C). In one instance, a client kept our attorney fees—literally. The other is the *single* time we have sued a client who abandoned us. The *single* client lawsuit against us? That client's counterclaim.

**How I Gauge Weisberg and Meyers Does Things Well.**

Everyone likes to think their law firm does things well, and I am no different. And everyone has room to improve, and Weisberg and Meyers is no different. As for why I think I think W&M does things well, I rely in part on the four courts certifying W&M as adequate class counsel, including this Honorable Court.

In the matter of *Tammie Powell, et al. v. ProCollect, Inc., et al.*, No. 3:11-cv-00846-M (N.D. Tex. July 18, 2012), this Honorable Court appointed Noah Radbil and Weisberg & Meyers as class counsel for the settlement class, commending counsel's "demonstrated skill and quality of work," recognizing that work was "efficiently performed," and further noted that "[t]he quality of Settlement Class Counsels' work on this case was excellent and is reflected in the resulting Settlement obtained against a formidable opponent represented by counsel experienced in the defense of FDCPA class action litigation." (Doc. 30 at 3). A copy of this Court's opinion is attached for reference, as Exhibit D. This Court awarded attorneys' fees to Noah and W&M, stating:

> Notably, Settlement Class Counsel has to date incurred thirty six thousand forty seven dollars ($36,047) in fees, plus one thousand thirty four dollars and fifty four cents ($1,034.54) in costs. To facilitate the Settlement however, Settlement Class Counsel agreed to limit their request for compensation to slightly less than 81% of those fees and costs actually incurred; namely, thirty thousand dollars ($30,000). (*See* Docket Entry #20). Reimbursing Settlement Class Counsels' successful

5

representation of Plaintiff and the Settlement Class through payment of this sum will not whatsoever affect the remarkable result produced.

*Id.* at 4-5.

In the matter of *Garo v. Global Credit & Collection Corp.*, No. CV-09-2506-PHX-GMS (D. Ariz. Sept. 6, 2011), the District of Arizona certified myself and Aaron Radbil of Weisberg & Meyers as class counsel, and after successful prosecution of the action, the court awarded W&M $115,000.00 for their services as class counsel, stating:

> The Court was directly involved in the management of this action. The Court is satisfied that Class Counsel are able and experienced attorneys who are well-qualified and who obtained relief by way of settlement which would not have been available through continued litigation which relief provides a significant public benefit and promotes the public policies embodied in the FDCPA. Consequently, the Court finds that $115,000 fairly represents the value of the services provided by Class Counsel.

(Doc. 137).

In the matter of *Diane Little-King et al. v. Hayt, Hayt & Landau, LLC,* No. 2:11-cv-05621-MAH (D.N.J. Sept. 10, 2013), the District of New Jersey appointed Noah Radbil as class counsel, after he was admitted *pro hac vice*, and awarded attorneys' fees after Noah successfully prosecuted the matter, stating:

> The hourly rate varied from $335 for firm partners to $100 for staff, with the vast majority of the work being performed by Mr. Radbil at a rate of $230 per hour. The total amount of billings generated was $45,672. *Id.* at ¶ 9. The Court has reviewed the entries and it appears that the time spent is reasonable considering the type of case and the progression of the case before the parties reached a settlement. The class size here is substantial, involving consumers in two states, and class counsel has managed to negotiate a favorable settlement for the class. While the recovery is certainly not substantial per class member, it bears repeating that most, if not all, class members would otherwise be time-barred from seeking any recovery for the claims set forth in the Amended Complaint. Moreover, Defendants have ceased using an allegedly improper form letter in their debt-collection efforts.
>
> Also, as discussed earlier, it is evident that class counsel competently represented both the named Plaintiff and the class members. To measure the quality of

> counsel, courts examine the result achieved, the difficulties faced, and the speed and efficiency of the recovery, the experience and expertise of counsel, and the performance and quality of opposing counsel. *Million v. T–Mobile USA, Inc.,* 2009 WL 3345762, at *10 (D.N.J. Sept.10, 2009). In this case, class counsel negotiated a valuable settlement within a reasonable amount of time since the start of this litigation. Because of their timely efforts, the class will benefit more; had this case proceeded further, it would have done so with an uncertain result, and it would have necessitated a greater expenditure of fees and costs. The Court also notes that although the Class Counsel's fees equal the class recovery amount, the attorneys in this case have expended significant amounts of time and effort in pursuing a successful settlement. It appears that the hourly rates and the total hours exhausted by the attorneys constitute a fair and reasonable representation of the work required in this particular class action.

*Little-King v. Hayt Hayt & Landau*, No. CIV.A. 11-5621 MAH, 2013 WL 4874349, at *19 (D.N.J. Sept. 10, 2013).[3]

The Southern District of Florida has also recently approved a final class settlement with Alex Weisberg and Aaron Radbil of W&M as class counsel. *See Luis Rodriguez, et al. v. Hayt Hayt & Landau, P.L*, No. 1:12-cv-23848-JJO (S.D. Fla. June 21, 2013), Doc. 43 at 3 (Sep. 18, 2013).

Further, W&M has done much to aid consumers across the country in matters of significant interest. Examples of some of our appellate work, sorted by circuit and jurisdiction, are as follows:

- The United States Court of Appeals for the Fifth Circuit reversed the district court's ruling granting a debt collector's post-trial motions for judgment as a matter of law, to alter or amend the verdict, and for a new trial, and remanded the case to the district court to enter judgment in the consumer's favor. *Guajardo v. GC Services, LP*, No. 11-20269, 2012 WL 5419505 (5th Cir. Nov. 7, 2012).

---

[3] Judge Hammer's order of final approval in which Noah and W&M were appointed class counsel occurred after law professor Cary Flitter's motions to intervene and objections were denied after more than 3 hours of oral argument in New Jersey at the final fairness hearing, days before the Trial in this matter, and a Summary Judgment Hearing in the matter of *Robert Browne v. Portfolio Recovery Associates, Inc. et al.*, , No. 4:11-cv-02869 (S.D. Tex.).

7

- The United States Court of Appeals for the Seventh Circuit, *en banc*, affirmed the district court's holding that the United States' sovereign immunity does not protect it, or its agencies, from liability under the federal Fair Credit Reporting Act. *Talley v. U.S. Dept. of Agric.,* 595 F. 3d 754 (7th Cir. 2010), *reh'g en banc granted, opinion vacated* (June 10, 2010)*, on rehearing en banc (September 24, 2010), decision affirmed,* 09-2123, 2010 WL 5887796 (7th Cir. Oct. 1, 2010).

- The United States Court of Appeals for the Eleventh Circuit dismissed a debt collector's appeal for lack of subject matter jurisdiction, finding that settlement of all claims mooted the litigation, and that the debt collector did not adequately preserve its right to appeal an interlocutory order where it ultimately consented to the judgment into which the interlocutory order merged. *Yunker v. Allianceone Receivables Mgmt., Inc.*, 701 F.3d 369 (11th Cir. 2012).

- The United States Court of Appeals for the Eleventh Circuit affirmed the district court's findings that a debt collector violated several provisions of the Fair Debt Collection Practices Act, that the debt collector was unable to take advantage of the bona fide error defense to the consumer's claims, and that the consumer was entitled to the maximum statutory damage award available. *Ponce v. BCA Fin. Services, Inc.,* 467 F. App'x 806, 809 (11th Cir. 2012).

- The United States Court of Appeals for the Eleventh Circuit endorsed a broad interpretation of the Fair Debt Collection Practices Act, finding that a "debt," as statutorily defined, is created where an obligation to pay arises from a transaction, even absent an extension of credit. *Oppenheim v. I.C. System, Inc.,* 627 F. 3d 833 (11th Cir. 2010).

- The Texas Court of Appeals in and for Fort Worth reversed in part a trial court's directed verdict against the plaintiffs, and directed the trial court to enter judgment in excess of $50,000.00 in those plaintiffs' favor under the Telephone Consumer Protection Act while remanding the FDCPA claims. *Brown v. Enter. Recovery Sys., Inc.*, No. 02-11-00436-CV, 2013 WL 4506582 (Tex. App. Aug. 22, 2013)

**How I Gauge Noah's Competence.**

These proceedings have not only put a great strain on me personally, and on the firm, but have irreparably strained the relationship between Noah and I such that we have mutually agreed it is best he leave the firm. That he is leaving the firm, however, does not equate to me reaching

the conclusion he was not, and is not, a competent lawyer. To the contrary, I believe he is a competent attorney, and I base this conclusion on many facts.

First, I cannot recall ever personally receiving a complaint from an opposing counsel about Noah, other than those from Ms. Malone, which I cannot help but to discount.

Second, I have never received a complaint from a client about Noah. Not from Mr. White, Mr. Lopez (who Ms. Malone says W&M harmed), Ms. Whaley (who Ms. Malone says W&M harmed), or any other client. Rather, I have had multiple clients tell me how grateful they were to Noah for his representation.

Third, Noah's trial results have been on par or better than what I could determine to be national averages.  A 2005 report by the U.S. Department of Justice found that at a national level, viewing all types of cases as a whole, plaintiffs won approximately 53.2% of jury trials. *See* Civil Bench and Jury Trials in State Courts, 2005, by Lynn Langton, M.A. and Thomas H. Cohen, Ph.D, at p. 3, Table 2, available at  http://www.bjs.gov/content/pub/pdf/cbjtsc05.pdf.  In the category of cases labeled as "Other or unknown tort," under which I believe unfair debt collection cases would fall, plaintiffs won only 41.1% of such lawsuits. *Id.* at p. 4, Table 5.

In the matter of *Adamcik v. Credit Control Services, Inc.*, as lead counsel Noah prevailed at a trial in which the jury found the defendant violated the FDCPA and TCPA against Ms. Adamcik, and after post-trial motions, the Western District of Texas awarded Ms. Adamcik $19,800.00.  *Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744 (W.D. Tex. 2011), appeal dismissed (Feb. 29, 2012).  Noah prevailed at trial, as second chair, in the matter of *Whatley v. CreditWatch Services, Ltd.*, No. 4:11-cv-00493-RAS-DDB (E.D. Tex. May 28, 2013). Noah was also lead counsel in the matter of *Brown v. Enterprise Recovery Systems, Inc.*, where after the trial court ruled in favor of the defendant, the matter was appealed successfully before

the Court of Appeals of Texas at Fort Worth, with a direction to enter judgment in excess of $50,000.00 in those plaintiffs' favor on the Telephone Consumer Protection Act claim and remanded the FDCPA claims for further adjudication. *Brown v. Enter. Recovery Sys., Inc.*, No. 02-11-00436-CV, 2013 WL 4506582 (Tex. App. Aug. 22, 2013).

Noah lost in this matter, and in the matter of *Shannon Whaley v. Lockhart Morris & Montgomery, Inc. et al.*, No. DC-10-14604, in the 68th Judicial District of Dallas County, Texas. Though, in *Whaley*, the final judgment against Ms. Whaley came after a new trial was granted, and where a jury found in favor of Ms. Whaley on several of her claims during the first trial.

Fourth, Noah has been lead counsel or co-counsel on three of the firm's certified class actions, discussed *supra*.

**We Constantly Deal With Venomous Allegations.**

Sadly, unfounded allegations are par for the course in consumer work, where bad faith allegations and/or filings have become a matter of pattern and practice. In fact, this is what this defense industry, through its American Collectors Association Members' Attorney Program, preaches through publications like "Tapping Into Section 1927 and the Court's Inherent Powers" and "Leveraging Attorneys' Rules of Professional Conduct and Rules of Professional Responsibility to Address Frivolous Litigation." *See Know When to Hold them, Know When to Fold Them*, Messer & Stilp, LTD. July 13, 2009 presentation, attached as Exhibit E. It is also what its members preach informally. *See* Attorney Advertisement Letters, attached as Exhibit F.

Similarly, in the matter of *Global Credit and Collection Corp. v. Weisberg & Meyers, LLC*, No. 0:10-cv-62070-MGC (S.D. Fla. June 9, 2011), Global filed a lawsuit seeking one million dollars in damages from Weisberg and Meyers and Aaron Radbil for an alleged breach of

a confidentiality agreement. Eventually, Global dismissed its baseless lawsuit and repaid Weisberg and Meyers all its defense fees. See Stipulation of Dismissal, attached as Exhibit G.

In the matter of *Johnson v. Brock & Scott, PLLC et al.*, No. 5:11-cv-474-F (E.D.N.C. Sept. 27, 2012), the defendants brought a counterclaim alleging that the action had been brought in bad faith and for purposes of harassment, and further moved to disqualify the plaintiff's counsel, alleging that Holly Dowd, the managing attorney for W&M's North and South Carolina practice, was not actively participating in the case or supervising the work of the out-of-state W&M attorneys assisting her with the case. The court denied the defendants' motion, finding no evidence that Ms. Dowd was not acting properly in accordance with the rules of professional conduct. *Johnson v. Brock & Scott, PLLC*, No. 5:11-CV-474-F, 2012 WL 4483916 (E.D.N.C. Sept. 27, 2012). The Court also dismissed the counterclaim, finding it procedurally improper. The matter is currently pending a decision on the plaintiff's motion for summary judgment—the defendants did not move for summary judgment.

**Unfortunately, Weisberg and Meyers Has Been Sanctioned.**

As I stated earlier, W&M is not perfect, and courts have sanctioned W&M on three previous occasions.

The District of Colorado, in the matter of *Danielson-Holland v. Standley & Associates, LLC*, No. 1:09-cv-01474-RPM-MJW, determined that Craig Ehrlich, then an employee of Weisberg & Meyers, "elected to proceed to trial without plausible evidence to support the claim made" and awarded $9,350 in attorney's fees to the defendant pursuant to Section 1927. *See Danielson-Holland v. Standley & Associates, LLC*, 512 F. App'x 850, 854 (10th Cir. 2013). It did so, however, after (1) the magistrate judge specifically recommended that the claim survive summary judgment based upon his review of deposition testimony; (2); the district court judge

11

adopted the magistrate judge's report and recommendation; (3) the claim survived the defendant's motion for a directed verdict; (4) the claim survived the defendant's renewed motion for a directed verdict; (5) the district court judge pushed forward with the trial while reassuring the plaintiff that she would not be charged with "abusive litigation"; and (6) the district court judge complimented the attorneys on their "expeditious" submission of the case. *Id.* Because the district court continuously pushed the plaintiff's claim under the Fair Debt Collection Practices Act ("FDCPA") from one stage of litigation to the next, and ultimately to trial, despite multiple opportunities to dismiss it, Mr. Ehrlich reasonably believed at the conclusion of the trial that—although Ms. Holland had lost on her claim—he had proceeded within appropriate judicial boundaries and met the court's expectations throughout the case.

In the matter of *Carol Barchard v. Kass, Shuler, Solomon, Spector, Foyle & Singer, P.A.*, No. 10-5852, the County Court in and for Hillsborough County, Florida, awarded the defendant their attorneys' fees and costs against Ms. Barchard and W&M, finding that the plaintiff's claims were not supported by law. Specifically, the Court previously found that the defendant was not subject to the FDCPA because it was engaging in foreclosure activity. On appeal, the Thirteenth Circuit Court for Hillsborough County, Florida, Appellate Division, reversed the County Court, finding that Ms. Barchard and W&M were engaged in a good faith attempt to modify or extend existing law, and recognizing the split of authority on the issue of whether attorneys engaging in foreclosure are subject to the FDCPA. (See Circuit Court Order in *Barchard* attached as Exhibit H, at 2-3) (citing *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F. 2d 373 (4th Cir. 2006) (holding FDCPA applies to foreclosure law firms) and *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458 (11th Cir. 2009) (holding foreclosure is not debt collection activity under FDCPA)). After Kass Shuler appealed the Circuit Court's decision, the District Court of Appeal

12

for the Second District of Florida, Case No. 2D13-59, again reversed, holding the Circuit Court did not have an adequate record before it to overturn the County Court's finding. Ms. Barchard and W&M have moved for appeal of that decision to the Florida Supreme Court. It is worth noting that other circuit courts of appeals, including the Eleventh Circuit have since held that foreclosure activity is not exempted from FDCPA coverage. *See Birster v. Am. Home Mortg. Servicing, Inc.*, 11-13574, 2012 WL 2913786 (11th Cir. July 18, 2012); *Glazer v. Chase Home Fin. LLC*, 10-3416, 2013 WL 141699 (6th Cir. Jan. 14, 2013).

In the matter of *Stephen Stovall v. MRS BPO, LLC*, No. 6:11-cv-00941-JA-DAB (M.D. Fla. Sept. 26, 2013), Magistrate Judge David A. Baker recently recommended that the defendant's motion for sanctions be granted in part and denied in part, and recommended that Alex Weisberg be sanctioned $15,000 based on a failure to investigate certain claims, which the court found unnecessarily prolonged litigation. The court denied the defendant's request for its full fee bill of $64,100, finding that other claims would have, and did, properly proceed to the jury, even though the jury ultimately found for the defendant.

**I Want Less Future Litigation.**

It sickens me how much time and attorney fees go into certain litigations, including those with Ms. Malone. And as I wrote to Ms. Malone in an email dated October 1, 2013, (see October 1 and 2, 2013 Email Correspondence, attached as Exhibit I), it takes "two to tango," so by no means can I claim everything be any one side's fault. But I want to put an end to the waste, and prove once and for all to *everyone* who thinks I want to drive up fees that I don't.

Debt collectors often don't respond to pre-litigation communications. So I propose Ms. Malone and I establish pre-litigation processes for these cases, starting with cases between her client's insured and my firm. I would propose her or her client provide me a list of its insured,

and if a claim develops against an entity on the list, I will provide a minimum amount of time to analyze a case prior to filing suit. Assuming a case cannot settle pre-litigation, I suggest streamlined litigation processes that include predetermined automatic disclosures so as to minimize written discovery, depositions to occur within three months of an answer being filed, and trials to occur within six months of an answer being filed.[4] I would further propose Ms. Malone and I clarify certain regularly disputed issues between us and either get those issues certified for decision by the 5th Circuit, and/or agree to resolve those issues through declaratory actions. This would just be one small step, but hopefully it could be a starting point that could extend to all consumer litigation in all federal courts in Texas, and other courts where my firm practices, and maybe everywhere. I would value deeply this Honorable Court's input during this process.

(cont.)

---

[4] Judge David. G. Campbell of the District of Arizona, frequently cites studies which show that the longer a case is in litigation, the higher the fees go. *See*, e.g.,
http://www.fjc.gov/public/pdf.nsf/lookup/costciv3.pdf/$file/costciv3.pdf;
http://www.fjc.gov/public/pdf.nsf/lookup/costciv1.pdf/$file/costciv1.pdf.

**Conclusion.**

I am fiercely loyal. Loyalty matters to me as a person, and as such I don't haphazardly dismiss hard-working members of my law firm.  And just like colleges throughout the nation expect their students to adhere to an honor code, and Bars throughout the nation necessarily assume that its members are telling the truth unless presented with explicit evidence to the contrary, I also take my employees at their word.  I give just about everyone the benefit of the doubt (kind of like "construing the evidence most favorably to the non-movant"), even adversaries, until proven they deserve otherwise.

Executed on: October 2, 2013.            _____
                                          Marshall S. Meyers

SUBSCRIBED and SWORN TO before me, this 2nd day of October, 2013.

_____
Signature of Notary Public

TREMAIN L. DAVIS
Notary Public - Arizona
Maricopa County
My Comm. Expires Jan 8, 2017