```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
                      DALLAS DIVISION

TIMOTHY WHITE,              )
                            )
          Plaintiff,        )
                            )
vs.                         )  3:11-CV-1817-B
                            )
REGIONAL ADJUSTMENT         )
BUREAU, INC., d/b/a         )
RAB, INC.,                  )
                            )
          Defendant.        )

            PRETRIAL CONFERENCE - VOLUME 1
          BEFORE THE HONORABLE JANE J. BOYLE
              UNITED STATES DISTRICT JUDGE
                   FEBRUARY 25, 2013

               A P P E A R A N C E S
For the Plaintiff:

     WEISBERG & MEYERS, LLC
     9330 LBJ FREEWAY - SUITE 900
     Dallas, TX  75243
     (888)595-9111
     BY:  NOAH D. RADBIL

For the Defendant:

     ROBBIE L. MALONE
     8750 North Central Expressway - Suite 1850
     Dallas, TX  75231
     (214)346-2631

COURT REPORTER:  SHAWNIE ARCHULETA, TX CCR No. 7533
                 1100 Commerce Street
                 Dallas, Texas 75242

proceedings reported by mechanical stenography,
transcript produced by computer.
```

```
 1               (In open court at 2:11 p.m.)
 2               THE COURT:  Good afternoon.  For the
 3    record, this is Civil Action 3:11-CV-1817-B, White
 4    v. Regional Adjustment Bureau, Inc.
 5               We are here this afternoon for the
 6    pretrial conference in this case.  The case is
 7    scheduled for trial tomorrow.
 8               Let's begin this hearing by having both
 9    sides introduce themselves, and I will start with
10    counsel for the Plaintiff.
11               MR. RADBIL:  Noah Radbil for the
12    plaintiff, Your Honor, Timothy White.
13               THE COURT:  Thank you.
14               MS. MALONE:  Robbie Malone, Your Honor,
15    for the defendant.
16               THE COURT:  Thank you.  All right.
17    Counsel, go ahead and take a seat.
18               I guess my initial observation is some
19    concern over the number of disputes in what doesn't
20    seem to be a very large type case.  And it seems
21    like this case has been marked by that for some
22    time; not casting blame on either side, but it is
23    unusual, very unusual.
24               So with that, I've got numerous motions
25    that we need to resolve.  Because there were so many
```

1    and because that was a marked difference from what I

2    am used to in a pretrial, I entered a gavel order

3    with specific directions on Friday to make sure that

4    the parties had fully conferred on all of these

5    motions that were outstanding.

6            So Mr. Radbil, let me just start with you.

7    Are you comfortable that you all have thoroughly

8    addressed the issues and disputes in these motions?

9            MR. RADBIL:  Yes, Your Honor.  And let me

10   begin by saying I agree with Your Honor, that the

11   number of objections and disputes regarding the

12   pretrial materials in what remains to be fairly

13   straightforward and simple claims I think is

14   unusual.

15           I think the main issues were the repeated

16   objections to experts or potential expert testimony

17   of which we don't intend to present any.  We have

18   tried to make clear that we are not going to present

19   expert witnesses, which is why we haven't designated

20   expert witnesses.

21           There was some concern that because some

22   of our possible witnesses possessed Ph.D.s, because

23   Dr. White and his colleagues and people who know him

24   are in the same field and went to school with him,

25   that they would present somehow expert testimony.

1          I tried explaining that those witnesses,

2    although they may be qualified in another case under

3    different circumstances, could testify to facts.

4    Just because you qualify, possess certain

5    qualifications, obviously you don't have to present

6    expert testimony.

7          Notwithstanding, we made a significant

8    concession to move forward expeditiously in dropping

9    from our possible witness list most of those

10   witnesses, with the exception of Jaclynn Cureton --

11          THE COURT:  Okay.  I want to get into more

12   specifics in a few minutes.  I think you have

13   addressed my first question.

14          Ms. Malone.

15          MS. MALONE:  Your Honor, obviously I don't

16   think the Court wants to hear who thinks the other

17   side filed more objections.

18          THE COURT:  I want to know what happened,

19   Ms. Malone, because this is unusual and --

20          MS. MALONE:  All right.

21          THE COURT:  -- the Court has a certain

22   obligation to make sure that any -- the course of

23   any of civil litigation pending before it is

24   conducted expeditiously and as cost efficiently as

25   possible.  This has not.  So I am concerned, and

1    that's why I brought it up.  So anything --

2            MS. MALONE:  I would be happy to give you

3    a couple -- an explanation from my perspective, Your

4    Honor.  Clearly it's my perspective that, after the

5    order was entered on Friday, I made ten calls to

6    Mr. Radbil, sent him ten e-mails, didn't get a

7    response from him.  He didn't call me back until

8    Sunday afternoon.  So I tried to resolve the issues

9    with him.

10           For example, on the motion to quash, we

11   actually did speak to him.  Xerxes Martin from my

12   office called him.  Mr. Radbil disagreed with us

13   about that.  So we have tried to resolve things with

14   him, but Mr. Radbil and I have just disagreed about

15   the law on some issues.

16           And on the other issues, it's just simply

17   a matter of he thinks you can do certain things that

18   in my 27 years of practice I don't think you can do.

19   I don't think you can name witnesses five weeks

20   before trial and not draw an objection from the

21   other side, which is what has happened in this case.

22           Some of the motions that were filed,

23   Judge, frankly were because your order said to file

24   motions in limine, file objections to exhibits and

25   pretrial.  They were probably longer than you were

1    used to because we had some legitimate objections

2    related to experts.

3             And in this particular case, he didn't

4    name just colleagues of Dr. White, he named treaters

5    of Dr. White.  Dr. White has a rheumatoid illness

6    called ankylosis spondylosis.  He named him on his

7    witness list.

8             Well, I have done a lot of medical cases

9    in my career, both as a medical malpractice defense

10   attorney and just doing some straight PI work on all

11   kinds of cases.  And if you are going to put an

12   expert medical doctor on the stand and your

13   description of their testimony is you will offer

14   testimony --

15            THE COURT:  Slow down just a little bit.

16            MS. MALONE:  I wish I could say I had too

17   much coffee, Judge, but it's in the afternoon.  If

18   you were going to put a medical expert on the stand

19   and ask them about causation, that's expert

20   testimony, and I don't believe that's appropriate

21   in -- in a setting where you haven't named experts.

22            Mr. Radbil actually said to me that he

23   believes an expert -- a doctor can testify as to

24   facts, and that's not a requirement of expert

25   testimony.  We just disagree on that, Judge.

1          The other stuff, you will actually be

2     pleased to know, we did have a very long

3     conversation yesterday after church -- it was

4     probably a good thing for both of us -- and we

5     worked out quite a bit, Judge.  And I think you will

6     be pleased to hear we will move along fast.

7          I don't think the trial will take that

8     long.  Mr. Radbil and I have tried a number of cases

9     against each other.  We tend to get a little more

10    disruptive in the pleading practice and move trial

11    along pretty quickly.

12         So I think you will be happy to know that

13    will do.  If you would like for me -- the first

14    motion was mine, if you want me to start.

15         THE COURT:  Slow down.  Let me look

16    through and see what I want to look at first.

17         Why don't we talk first about this issue,

18    if you haven't resolved it, with regard to the

19    emergency motion to quash, and that would be your

20    motion, Ms. Malone.

21         MS. MALONE:  Yes, Your Honor.

22         THE COURT:  So let's go ahead and let me

23    pull it before you start, but come on up to the

24    lectern.

25         MS. MALONE:  I have a case, Judge.  Could

1    I give that to you now?

2           THE COURT:  Go ahead and hand it to

3    Ms. Woodward, if you would.

4           MS. MALONE:  I actually have two, if that

5    would be helpful to you.

6           THE COURT:  Thanks.  Okay.  This is -- and

7    I'm taking them not in chronological order, but I

8    want to take this one up first.

9           This is a motion that is document 99, and

10   it's the Emergency Motion to Quash Subpoenas.

11          I have read through the motion, the

12   response, and the accompanying brief.  Let me hear

13   from you, Ms. Malone.  Please do try to talk slower.

14          MS. MALONE:  Yes, ma'am.  I apologize.

15          Judge, for your notes, 99 and 100 were the

16   same document.  What happened was, when my assistant

17   filed 99, she forgot to click Emergency, and so she

18   refiled it and instead of correcting it -- so the

19   good news is it's actually only one motion.

20          THE COURT:  That's good news.  Okay.

21          MS. MALONE:  And I don't believe there's

22   any response on file to it as of yet.

23          THE COURT:  All right.  Let's hear your

24   argument on it.  So these witnesses are still in

25   issue, in play, as far as potential witnesses?

1          MS. MALONE:  It's my understanding

2   Mr. Radbil has not dropped his position on this.

3          THE COURT:  Okay.  Go ahead.

4          MS. MALONE:  The case I brought to you,

5   Judge, is from the 5th Circuit, Fifth Circuit Court

6   of Appeals, and it specifically addresses the issue

7   that we have here.  And I would ask the Court to

8   look on page 5 of 7 of the copy I gave you.

9          The Court talks in this section about what

10  you must do when you are subpoenaing a nonparty or a

11  person who is not an officer of a party under Rule

12  45.  And with all due respect, Your Honor, the rule

13  and the Fifth Court of Appeals says it has to be in

14  person.

15         THE COURT:  I know.  I understand all of

16  that.  Let me go ahead and tell you where I think we

17  are, at least on this, now that I am understanding

18  it's still fully at issue.

19         Normally, if you have witnesses who have

20  been identified in the course of litigation who are

21  employees for a company on one side or the other or

22  both, they have been sufficiently identified and

23  deposed during the course of litigation, that

24  there's no issue about whether or not the

25  corporation is going to provide them either because

1    they are going to call them themselves or because
2    the other side -- and the other side can then use
3    them or vice versa.
4           So it's usually not a question.  Given
5    the, what appears to be acrimony from the papers in
6    this case, it seemed to me this was perhaps another
7    dispute along those lines.  So with that in mind, I
8    understand what the case authority is.
9           Let me ask you this about these particular
10   witnesses.  I understand -- and I want to hear
11   Mr. Radbil's position on this -- that these are
12   employees, at best, but not parties and not such
13   that they can speak for the corporation.
14           MS. MALONE:  Yes, ma'am.
15           THE COURT:  Okay.  Have these people been
16   deposed or identified as witnesses in the case?
17           MS. MALONE:  They were identified in our
18   requests for disclosures in December of 2011.
19   Routinely we identify every employee's name that may
20   appear in the records.
21           There was no request for their deposition
22   from Mr. Radbil, so they were never deposed.  We
23   listed them as possible only on our pretrial
24   disclosures because we had to do that about a month
25   out from trial, Your Honor.

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER – 214.753.2747**

1          Occasionally, the corporate representative

2    becomes sick or whatever, so we just listed them on

3    the off-chance that he would not be available so we

4    could have a fallback, which would be an employee

5    whose name appeared in the account notes and who had

6    some reference.

7          The thing that you should know about this

8    that's different than those other cases is that

9    these individuals -- it has to do with debt

10   collection, Judge.  They don't remember these calls.

11   They have no recollection of anything.  The only

12   thing they would do would be to read the account

13   notes, which we both offered into evidence and which

14   we have a corporate rep to come in and explain to

15   the jury.

16          THE COURT:  Okay.  Ms. Malone, I

17   understand your position, and I understand what the

18   law is.  Now that I understand what happened, I want

19   to hear from Mr. Radbil on this.

20          MS. MALONE:  Can I address the issue on

21   fees, or are we coming back to that later?

22          THE COURT:  We will talk about that later.

23          Mr. Radbil.

24          MR. RADBIL:  Thank you, Your Honor.  In

25   the pretrial disclosures of the defendant, they

1   identified the same five employees who may have

2   knowledge regarding the efforts in question to

3   collect a debt from the plaintiff.

4          One of the employees in particular, Karen

5   Nelson, is the one who allegedly threatened to strip

6   him of his degrees, his Ph.D., essentially his

7   family's livelihood.  A mere statement that she

8   doesn't remember doesn't replace her testimony on

9   that issue.

10          THE COURT:  Mr. Radbil, let me interrupt

11   you.

12          MR. RADBIL:  Of course.

13          THE COURT:  Because, be that all as it

14   may, the defense is correct.  Again, I said, my

15   presumption, which has been the norm over many

16   years, is that these issues are already hashed out

17   by the time you get to trial.  And with

18   corporations, everyone agrees who is going to bring

19   employees from where.  I assumed that was what the

20   situation was here, and it's not.

21          So the Court has no authority to order

22   these people to come here pursuant to Rule 45 or any

23   other rule under the circumstances as I understand

24   them.  So even if they are key witnesses, it's too

25   little too late as far as I see.  If you have some

1    legal exception, you can tell me, but I am not aware

2    of any of authority that would allow the Court to do

3    what you are asking.

4             MR. RADBIL:  I think the Court issued an

5    order in response to the plaintiff's objections

6    to --

7             THE COURT:  Right, and I issued that order

8    because at the time I understood the situation was

9    likely as I described it, and it is not.  The Court

10   was incorrect about that.

11            MR. RADBIL:  Okay.  That changes things

12   considerably of course.

13            THE COURT:  Mr. Radbil, these are issues

14   that the Court should not have to educate you about

15   at this stage of the proceedings.

16            MR. RADBIL:  They don't.  Your Honor

17   doesn't have to educate me.  The order said for them

18   to agree to accept service or produce the witnesses,

19   and they agreed to accept service, so we served

20   those subpoenas in accordance with the order.  So

21   that's why we didn't take any further action.

22            THE COURT:  What action would you be

23   taking to get them here?  What possible action could

24   you take?

25            MR. RADBIL:  We could have shown a need

1    for their testimony.

2              THE COURT:  There's no legal authority to

3    get them here under these circumstances.  So you

4    can't say that you relied on the Court's order to

5    presume these witnesses would be here.  That's just

6    not good enough, Mr. Radbil.  These are people

7    who -- again, I don't have the authority to order

8    them here.

9              MR. RADBIL:  Then would Your Honor -- can

10   we then stipulate that Dr. White's testimony cannot

11   be contradicted on the issue because nobody, quote,

12   remembers what happened except for Dr. White.

13             THE COURT:  I'm not sure what you are

14   asking me.

15             Let me ask you this:  Are you claiming

16   that these witnesses, that they weren't disclosed

17   properly in the course of discovery?

18             MR. RADBIL:  No.  I'm claiming that I was

19   confused about the Court's order and how it affected

20   our need to take any action.  Here's my concern --

21             THE COURT:  What action would you have

22   taken is my question?

23             MR. RADBIL:  We would have shown the Court

24   the need to have that witness present and that that

25   witness was material.  And I think the Court has

1    discretion --
2              THE COURT:  Under what authority?
3              MR. RADBIL:  Under Rule 45 I think.
4              THE COURT:  Do you have any cases on that?
5              MR. RADBIL:  No, Your Honor, I do not have
6    cases with me.  But the 5th Circuit case that
7    Ms. Malone handed you involved no tender of any
8    travel fees.  Where, in this case, we served them
9    through accepted service and tendered travel fees
10   and appropriate witness fees.
11             But my main concern -- and I understand
12   the Court's position.  My main concern is that
13   Dr. White will testify that Ms. Nelson made certain
14   threats and took certain actions.  And I don't want
15   there to be a negative inference because Ms. Nelson
16   is not here to testify, so. . .
17             THE COURT:  Why didn't you take her
18   deposition?  Why didn't you depose her by a Rule 45
19   subpoena served upon her in the district where she
20   resides?
21             MR. RADBIL:  Frankly, to save costs
22   because I thought the case would settle, and it
23   hasn't.
24             THE COURT:  Mr. Radbil, there is nothing I
25   can do at this point.  If you were to tell me that

 1   these were key witnesses that weren't disclosed on

 2   time that you were surprised by and that perhaps a

 3   continuance to take their depositions would change

 4   things, but that's not what I'm hearing.  I'm not

 5   hearing that you have been surprised by these

 6   witnesses or that they have pulled them out at the

 7   last minute as surprises.

 8          And I mean, the only way to have their

 9   testimony conceivably, as far as I can see, is

10   through a subpoena for a deposition.  But we are way

11   too along in this 2011 case to do that, unless you

12   have some basis that the Court could even consider

13   that option.

14          MR. RADBIL:  I don't on hand.  May I

15   request a leave of court this afternoon to research

16   the issue in depth?  Otherwise, I respect the

17   Court's decision on that issue.  I think we can work

18   through it and Dr. White's testimony would

19   suffice -- pardon me.

20          THE COURT:  No.  Go ahead.

21          MR. RADBIL:  If there is clear authority

22   for what has been done and the order that has been

23   issued and because we have acted in accordance with

24   that order, I would like to submit any such

25   authority for the Court's consideration,

1   notwithstanding that I respect the Court's --

2        THE COURT:  Mr. Radbil, this is something

3   that should have been done by now.  Regardless of

4   the Court's language in directing them to serve

5   subpoenas, it doesn't change anything because you

6   still wouldn't -- even if I gave you another month

7   on this case or longer, you still couldn't get these

8   people here for trial under Rule 45.  You do

9   understand that.

10       MR. RADBIL:  Yes.  Well, I do now.  My

11   understanding was that counsel accepted service.  In

12   fact, I called counsel to confirm, are you going to

13   produce them, or are you accepting service on their

14   behalf?  And counsel said, I am accepting service on

15   their behalf pursuant to the order.  So we tendered

16   the fees and everything.

17       Again, I don't think that it's a make or

18   break issue in terms of this trial, and I'm willing

19   to work through for efficiency sake and let that

20   issue go.  However, if there is some clear

21   authority, I just would request the opportunity this

22   afternoon for leave to submit that authority.  If

23   Your Honor doesn't want to grant that leave, that's

24   okay, too.

25       THE COURT:  The emergency motion to quash

1   was filed on the 20th.  So at least you've been on

2   notice of that at least since the 20th --

3          MR. RADBIL:  But --

4          THE COURT:  -- as I mentioned.  The Court

5   has no legal authority to order these people here

6   under Rule 45.  There are numbers of cases that talk

7   about this issue.

8          As I mentioned, I assumed that this was

9   not a situation like that.  I incorrectly assumed

10  that this was a situation where everyone agreed at

11  this late stage of the case as to who from the

12  corporation, employees or not, would be provided.  I

13  was incorrect about that, but I agree with the

14  defense counsel.

15         And just to cite a couple of cases along

16  those lines, the -- there's a Law Review article on

17  this.  It's an older Law Review article, but it

18  talks about procuring trial testimony from corporate

19  officers and employees.  It's a note about

20  suggestions for reform, but it talks about this very

21  issue and the Court's lack of authority under Rule

22  45, and specifically it takes up this issue in

23  depth.  It's 25 Akron Law Review 571, Spring 1992.

24  It cites to several cases for the proposition that,

25  as they set forth:  It is clear that a court cannot

1    compel an individual who is beyond the Court's Rule

2    45 subpoena power to testify at trial as an

3    individual.

4            Again, it cites several cases along those

5    same lines:  One out of the 5th Circuit many, many

6    years ago, Degelos, D-E-G-E-L-O-S, v. Fidelity and

7    Casualty, 313 F.2d 809 at 814, 5th Circuit 1963.

8    And other cases where this has been addressed more

9    recently, out of the Southern District of New York,

10   Aristocrat Leisure, Limited, v. Deutsche,

11   D-E-U-T-S-C-H-E, Bank and Trust Company, 262 F.R.D.

12   293, Southern District of New York, 2009; another

13   case out of the Southern District of Ohio, Novovic,

14   N-O-V-O-V-I-C, v. Greyhound Lines, Inc, it's a 2012

15   Westlaw case.  Westlaw number is 252124, and that

16   opinion came out January the 26th of this year.  And

17   it goes through and addresses the issue of the

18   Court's lack of authority under Rule 45 to compel

19   corporate employees who aren't directors, officers,

20   or managing agents to appear.

21           And finally, a case out of the Northern

22   District of Iowa, and that would be Ferrell,

23   F-E-R-R-E-L-L, v. IBP, and that is a Westlaw case,

24   as well, a 2000 Westlaw case, 34032907,

25   April 28th of 2000.

```
 1              MR. RADBIL:  Thank you very much, Your

 2    Honor.  May I respond very briefly?

 3              THE COURT:  Go ahead.

 4              MR. RADBIL:  If there are more cases, I

 5    would certainly like --

 6              THE COURT:  Go ahead, I'm listening.

 7              MR. RADBIL:  Then we would stipulate,

 8    hopefully, that these witnesses are unavailable for

 9    the purposes of the hearsay rule.

10              THE COURT:  And what would you be asking

11    in that regard?

12              MR. RADBIL:  That Dr. White would be

13    permitted to testify about conversations between

14    himself and Karen Nelson, in particular, who is one

15    of these unavailable employees.

16              THE COURT:  Okay.  That seems more of a

17    trial objection than it does anything else.  I'm not

18    sure if this is the time to rule on that, but let's

19    go ahead and hear what Ms. Malone has to say.  You

20    want to take a seat?

21              MR. RADBIL:  Certainly.

22              THE COURT:  Thank you.

23              MS. MALONE:  Your Honor, without actually

24    hearing the testimony, I agree with the Court.  I

25    think that's more properly brought up at the time.
```

1    I don't think that that's what unavailable means in

2    terms of the hearsay rule.

3            The records, themselves, are going to be

4    offered in as a business record exception, so

5    certainly that testimony will be there.  I think he

6    is -- I'm not sure what question he's asking that he

7    thinks he's going to get hearsay in.  There are some

8    hearsay exceptions that would allow him to get

9    certain testimony, but without having a context, I

10   don't know -- I'm sorry, Judge.

11           THE COURT:  If I go like this, it just

12   means slow down, for all of us.  Okay?

13           MS. MALONE:  Without a context, I can't be

14   any more specific than that, except that they

15   clearly would fall, the account records would fall

16   under the business record exception, and that's

17   actually one of the exhibits we both agreed to.

18           THE COURT:  Okay.  Mr. Radbil, all I can

19   tell you right now is that I'm not going to rule on

20   that one way or the other.  I think you ought to get

21   some research together to support your position that

22   those kinds of questions are proper and fall within

23   the limits of the Federal Rules of Evidence.  So

24   that's all I can tell you right now on that.

25           MR. RADBIL:  I will certainly be prepared

1    for that.  And I will just add that Dr. White's
2    deposition was taken, and his testimony shouldn't
3    deviate from, you know, his prior statement.  So to
4    the extent -- well, I will prepare that issue for
5    trial, Your Honor.
6            THE COURT:  Were there objections to that
7    testimony about him talking about what people said
8    to him on the phone?
9            MR. RADBIL:  I don't believe so, Your
10   Honor.  I think those questions were asked by
11   defense counsel.
12           THE COURT:  Okay.  All right.  Thank you.
13           So the emergency motion to quash the
14   depositions of the defendant's employees is granted
15   for the reasons I have stated, and that is document
16   99.
17           Okay.  Let's move on, then, to the next
18   area and see where we are with regard to these -- to
19   the evidence and the testimony of this case.  Give
20   me just a minute here.
21           Document 65 is this motion with regard to
22   plaintiff's unnamed experts; and then 75 is the
23   supplement to the motion to exclude unnamed experts.
24           Let me just turn directly to you,
25   Ms. Malone, and tell me if I'm clear where we are on

23

```
 1   these.  Are these still in issue or not?

 2            MS. MALONE:  I don't believe so, Your

 3   Honor.  I think we actually worked that part out,

 4   which is that he has removed the treating healthcare

 5   providers from his possible list.  So I think that

 6   resolves the problem for us.

 7            THE COURT:  Mr. Radbil, do you agree with

 8   that?

 9            MR. RADBIL:  I agree that the problem has

10   been resolved.  And I think to the extent that

11   anybody's testimony crosses the expert threshold,

12   objections at trial would be appropriate.  But I

13   disagree with the fundamental basis of the objection

14   that, just because you possess a Ph.D., you can only

15   testify as an expert.  I think certainly somebody

16   who possesses a Ph.D. in any type of case could

17   testify that the sky was blue or it was raining,

18   certain facts.

19            THE COURT:  Ms. Malone, is that the basis

20   of your objection?

21            MS. MALONE:  No, ma'am, his description of

22   their testimony was damages and causation.  And I

23   believe under RMS v. Elston for his Texas case and

24   just straight up Daubert, Judge, if an expert, a

25   medical provider gets on the stand and offers
```

1   testimony on causation, that's expert testimony.

2          THE COURT:  Okay.  Are we clear on this,

3   Mr. Radbil?

4          MR. RADBIL:  We are.  There is no intent

5   to offer causation testimony from a medical

6   standpoint, and we have withdrawn witnesses that

7   would testify on those grounds.  The problem is

8   resolved.

9          THE COURT:  So document 65 and 75, as well

10  as the response, which is document 90 -- and it

11  seems that there's another document, 96, by the

12  defendants all on the same issue, those are no

13  longer at issue in this case.  Agreed, Mr. Radbil?

14         MR. RADBIL:  I agree.

15         THE COURT:  Ms. Malone?

16         MS. MALONE:  Yes, ma'am.

17         THE COURT:  Okay.  Okay.  I have next

18  document 77, filed by plaintiff objecting to the

19  Regional Adjustment Bureau's first amended pretrial

20  disclosures.

21         Let me ask you, Mr. Radbil, is that still

22  at issue?

23         MR. RADBIL:  The first part, Your Honor,

24  was about the five employees, which has been

25  resolved this afternoon.

1          The second part relates to a request for

2    an in-camera inspection, specifically of the account

3    notes.  That's the only concern that I have, is that

4    there are almost as many pages of the account notes

5    that are redacted as those which are not in there,

6    entire pages.  No privilege log was produced.  So to

7    the extent those five witnesses are not available, I

8    think the account notes take on a significant

9    import.

10          So all I request is that an in-camera

11   inspection of these several pages, that may be nine

12   or ten pages, just to make sure that nothing

13   inappropriate has been redacted.

14          We have requested unredacted copies, and

15   we have been denied.  But I think that it would be

16   fair if the Court would oblige to just take a peek

17   at these few documents to see what was actually --

18          THE COURT:  Have you not had these

19   available to you during the discovery of this case?

20   Is this the first time you have seen this?

21          MR. RADBIL:  I tried to ask about the

22   redactions during depositions, and there was

23   objections on privilege grounds, but there wasn't

24   any substantive information provided.

25          THE COURT:  So you have had these

1    documents that you are objecting to, the redactions,

2    during the pretrial phase of this case before just

3    the disclosures.

4                MR. RADBIL:  I think -- yes, yes.

5                THE COURT:  And did you file a motion to

6    compel or anything of that nature to try to require

7    that the redactions be unredacted?

8                MR. RADBIL:  I don't believe we did, Your

9    Honor.

10               THE COURT:  Okay.  So this particular

11   issue is -- is just now coming up, this issue of you

12   trying to get what happened -- what was underlying

13   the redactions.

14               MR. RADBIL:  I think we had a hearing --

15   there was two depositions.  One was because -- the

16   second deposition was ordered by the Court because

17   parts of the contract under which the collection

18   efforts were performed wasn't produced.  And because

19   it wasn't produced, I couldn't ask questions

20   regarding that.  And I think I objected -- I can't

21   remember whether or not I did -- to the redactions

22   in the account notes during that hearing, as well.

23               But to be fair, I don't think it's much of

24   a burden on any party or the Court to just take a

25   look and see what was redacted.  If everything is

```
 1  redacted --

 2            THE COURT:  Mr. Radbil, let me just say

 3  that there's got to be a legal mechanism for what

 4  you are asking the Court to do.  In-camera

 5  inspections are not something that we do regularly

 6  here or summarily.  So regardless of the burden,

 7  it's just not something that the Court is just going

 8  to do because someone asks.  There's got to be some

 9  legal authority or mechanism to, first of all, lodge

10  this objection at this phase and then for the Court

11  to conduct an in-camera inspection.

12            What I am understanding you to say is that

13  you have had these redacted documents for some

14  time -- that's what I'm understanding -- and did not

15  file a motion to compel to bring the issue to the

16  Court's attention during the pretrial phase.  That's

17  what I'm hearing you say.  Am I correct about that?

18            MR. RADBIL:  Yes, although I'm not

19  100 percent sure whether our motion to compel

20  included the redactions to the account notes.  But

21  the reason that I think it becomes more important

22  now is because these five employees are not going to

23  be here.  So if there's anything concerning these

24  five employees, those redacted portions, I think

25  that it would be fair to just make sure that's
```

28

1    disclosed.  Or if there's not, then, we're certainly
2    ready to proceed on the account notes as they are.
3              THE COURT:  Again, I think you've got to
4    advise the Court of the legal basis for requesting
5    this redaction.  So far I haven't heard one.  I
6    think if you had objected or brought this to the
7    attention -- brought this to the attention of the
8    Court or the magistrate judge through an order of
9    reference and then it was compelled and you still
10   ended up with redacted documents on the pretrial
11   disclosures, then you probably have a reason under
12   Rule 37 to request the Court's intervention, but I
13   haven't heard that.
14             So let me hear from Ms. Malone on this and
15   see if we can't resolve this and move on to the next
16   motion.  Thank you.
17             Ms. Malone.
18             MS. MALONE:  Sure.  Your Honor, the
19   redactions in this particular set start at the point
20   that my client received his law firm's demand letter
21   to RAB, putting them on notice of there being a
22   lawsuit.  At that point, everything after that is
23   anticipation of litigation.
24             In this case, Your Honor, to be honest
25   with you, there are no notes of any of substance.

 1    What occurred is, because this was a Texas

 2    Guaranteed Student Loan debt, they continued to

 3    process interest.  So really, everything after this

 4    page frankly is all interest.  I told Mr. Radbil

 5    that.

 6              I also raised the objection in both our

 7    answers to discovery and in the deposition that, at

 8    the point that they were on notice of the lawsuit,

 9    that's anticipation of litigation, and we redacted

10    everything after that.

11              The truth is, in this case -- sometimes

12    there will be notes about a lawsuit that occurred.

13    In this case, there weren't any.  It's just that the

14    interest on the student loans continued to accrue.

15    But since we always take that position, we try to be

16    consistent across for those clients so they don't

17    waive it in another suit, and that's really it.

18              THE COURT:  And the exhibit is for what

19    purpose?

20              MS. MALONE:  It's the account notes, Your

21    Honor, where the collectors would make entries of

22    attempts to reach Mr. White; their notes that were

23    made simultaneously at the time that they have

24    communications with him; and it is an interface with

25    the Texas Guaranteed Student Loan Corporation.  So

```
 1   the student loan people would send in, through some
 2   electronic interface, any change to the interest
 3   amount that's due, and it's just an ongoing thing.
 4   Student loans are different.
 5              THE COURT:  These are your client's
 6   documents and your exhibits.  Are you planning to
 7   make any issue of the redaction?
 8              MS. MALONE:  No, ma'am.
 9              THE COURT:  Mr. Radbil, anything else on
10   this point?  And let's make sure we are clear on
11   which exhibit that is.
12              MR. RADBIL:  It would be Plaintiff's 6.
13              MS. MALONE:  And Defendant's 1, Your
14   Honor.  It's the same exhibit.
15              THE COURT:  Mr. Radbil, anything else on
16   this?
17              MR. RADBIL:  Briefly, Your Honor.
18              THE COURT:  Okay.
19              MR. RADBIL:  So these documents were
20   originally produced by the defendant, Regional
21   Adjustment Bureau, as Bates label 001 to 041.  And
22   there are -- from page 28 through 41, everything is
23   redacted.  So to the extent that it just has to do
24   with interest, I don't think that that's privileged
25   matter.
```

1          And my other concern is that RAB 0215 is

2   also a one-page version of the account notes that

3   contains slightly different information.

4          THE COURT:  Okay.  Why -- the redactions,

5   are you seeking those because you want to use them

6   as an exhibit?

7          MR. RADBIL:  I want the complete document.

8          THE COURT:  This is clearly a matter that

9   should have been addressed by you pretrial by a

10  motion to compel.  I haven't heard anything where,

11  on this particular point, the defense has violated

12  the Rules of Civil Procedure, the discovery

13  obligations and --

14         MR. RADBIL:  No privilege --

15         THE COURT:  -- so I haven't heard that.

16  And pretrial is usually not the time where those

17  things are raised unless something, in fact,

18  violative of those discovery disclosure provisions

19  has shown up as an exhibit for trial, but I don't

20  see that here.  So I'm going to overrule your

21  objection on that point.

22         Go ahead.  I will let you make one more

23  statement on it, and then we will move on to the

24  next one.

25         MR. RADBIL:  I respect the Court's ruling,

 1   of course.  My only other statement would be that I

 2   don't believe a privilege log was produced.  And in

 3   the absence of the five witnesses, again, I think

 4   there's more importance placed on the account notes,

 5   because Kara Nelson and the others, whose actions

 6   are documented here, and the parts not redacted,

 7   will not be able to testify as to whether

 8   conversations occurred during the periods of

 9   redacted time.

10        THE COURT:  These are all issues that

11   should have been resolved during the pretrial

12   discovery process or long before today.  The

13   five-witness issue, as I mentioned, that's occurring

14   because you didn't -- again, the Court has no

15   authority to do that, and you haven't provided me

16   any authority to allow you to get those witnesses.

17   So I think it's counsel's own actions that are --

18   and the law that are precluding those five witnesses

19   from coming.

20        So, again, there was no motion to compel.

21   You are talking now about a discovery privilege log,

22   and these are all issues that should have been

23   raised before.  So the objection that is contained

24   in document 77 is overruled.

25        Let's move, then, to -- this will be

1  document 76.  And these are objections by the

2  defendants to the plaintiff's first supplemental

3  Rule 26(a) disclosures.

4         Ms. Malone, why don't you come up and tell

5  me where we are in this particular objection.

6         MS. MALONE:  Yes, ma'am.

7         Your Honor, some of it has been resolved,

8  because he's narrowed it down to just the two

9  witnesses.  In the case of both Ms. Cureton and

10  Mr. Wilson, those individuals were never identified

11  to us during the discovery process.  We heard about

12  them for the first time on January 18th of this

13  year.  We obviously had already deposed Mr. White.

14  The discovery cutoff was September of last year.  So

15  these two individuals are named for the very first

16  time.

17         In his response, Mr. Radbil says that,

18  because in an interrogatory Mr. White indicated that

19  he had worked at Texas A&M, that should have put us

20  on notice that potential employees of Texas

21  A&M-Commerce would be witnesses.

22         Frankly, Judge, that makes no sense to me.

23  I don't think that he really wanted us to call up

24  this man's former employer and ask if anybody

25  thought they might be coming as a witness.  So

1    that's our response to Ms. Cureton.  We never knew

2    of her existence.  We did not know -- she was never

3    identified by name in any discovery.

4           Mr. Wilson was also never identified by

5    name until January the 18th, and that is more than

6    four months past the discovery cutoff.

7           We also have objections to some of their

8    exhibits that were produced after the discovery

9    cutoff.  Do you want me to stop?

10           THE COURT:  Let's talk about the witnesses

11    first.  We are talking about a Ms. Cureton and a

12    Mr. Wilson, is that right?

13           MS. MALONE:  Yes, ma'am.

14           THE COURT:  Let's go ahead and let me hear

15    from Mr. Radbil on those witnesses, and then we will

16    talk about exhibits.

17           MR. RADBIL:  Ms. Cureton and Mr. Wilson

18    were disclosed under Rule 23 -- 26(a)(3) with all

19    pretrial disclosures on March 7th or 11th, but --

20           THE COURT:  March 7th or 11th of?

21           MR. RADBIL:  I'm sorry, they were not

22    disclosed in formal responses to written discovery

23    requests, but they were timely disclosed as

24    witnesses in the pretrial disclosures.

25           THE COURT:  Which was filed when?

```
 1              MR. RADBIL:  In January of this year, I
 2   believe.
 3              THE COURT:  So how do you respond to
 4   Ms. Malone's position that they are surprised by
 5   this and they haven't been previously disclosed such
 6   that they could order -- move for a deposition?
 7              MR. RADBIL:  Well, Ms. Malone did depose
 8   Dr. White.  And Dr. White did say in his deposition
 9   that he had talked to friends of his about, I
10   believe, the actual damages in the debt collection
11   activities and the problems that he had suffered as
12   a result.  And she inquired into the medical
13   providers and physicians at length, but she never
14   got back to the friends or asking Dr. White to
15   identify them.
16              We weren't planning on springing these
17   out.  Only in preparing with my client for pretrial
18   did I discover them myself.  So as soon as we did,
19   we disclosed them.  They are listed as possible
20   witnesses and would probably be used as rebuttal
21   witnesses.
22              Again, they are not -- they are not key,
23   and the case certainly doesn't hang on their
24   testimony.  But because they are going to testify
25   about one very narrow thing, which is, you know,
```

1   what type of shape he was in, basically.  And they

2   are not going to testify about what caused that,

3   they are just going to corroborate his testimony as

4   to, you know, his condition.

5           THE COURT:  Ms. Cureton, identify her.

6   What is her occupation?  What is her --

7           MR. RADBIL:  She was a student of

8   Dr. White's when he was teaching while earning his

9   Ph.D.  And she witnessed -- and I believe asked --

10  on several occasions what was wrong with him, what

11  was bothering him and noticed the condition he was

12  in.

13          I don't believe that Dr. White ever

14  explained to her the cause, and that's not why we

15  identified her as a witness.

16          THE COURT:  And then Mr. Wilson, what's

17  his --

18          MR. RADBIL:  He's a next-door neighbor.

19  And Dr. White was having a panic attack in his car

20  one evening, and it was apparently so loud that his

21  neighbor came out to check if he was okay and asked

22  Dr. White, you know, what was going on.

23          THE COURT:  Okay.  And you agree that

24  these weren't disclosed until the pretrial

25  disclosures in January of 2013.

```
 1              MR. RADBIL:  I do, Your Honor.

 2              THE COURT:  Let me hear back from

 3    Ms. Malone on this.  Thank you.

 4              MS. MALONE:  Your Honor, I think Rule 37

 5    is pretty clear.  In this case that you haven't

 6    identified somebody during discovery, you have an

 7    affirmative duty to go out and put those names if

 8    you intend to use them at trial.  He could have

 9    supplemented them any time before September 24th of

10    2012, which was the discovery cutoff, and he did

11    not.  I do think this is a surprise and an issue.

12              I asked him what Mr. Wilson's job was,

13    because if he has a degree of some kind, like, I

14    don't know, a psychologist, then his description of

15    a panic attack may have more weight than if he's a

16    an accountant, for example.  And Mr. Radbil told me

17    he didn't know the answer, which I believe.

18              But Ms. Cureton actually is a graduate

19    assistant in applied psychology.  And I can imagine

20    describing that she saw him in the course of a

21    psychology setting would give the jury the

22    impression that she had some basis of knowledge to

23    describe events that would give it more weight, more

24    than is perhaps appropriate.

25              I would have deposed any experts that I
```

1   thought he was really going to bring to trial if he
2   had named them in June or if he had named them at
3   any point and I thought they fit in that category.
4   I didn't know about them until January of this year,
5   Your Honor, and I do think that's a problem.
6          THE COURT:  Let's just talk about for a
7   minute their ability to testify, just about their
8   lay observations of his physical condition.  You
9   have talked about experts.  Talk about that.
10         MS. MALONE:  Well, Your Honor, this is the
11  thing:  He says that Mr. Wilson is going to testify
12  that Mr. White was in a panic attack.  In the DSM,
13  which is the diagnostic manual, they describe panic
14  attacks in a very specific way and talk about
15  certain symptoms.  I don't know how you get around
16  the hearsay.  Because for someone to understand what
17  a panic attack is, the person has to say something
18  to them to be able to articulate what the fear is or
19  what's going on inside of them to describe the
20  panic.  I don't know how you get around the hearsay
21  rule on that issue.
22         And I think his testimony, what he said
23  Ms. Cureton was going to testify to, was that she
24  asked Dr. White what was going on and kept
25  questioning him about what his condition was.

1     That's all hearsay, Judge.  I mean, I don't see how

2     he gets that in.

3             If they were to testify, oh, I saw him and

4     he was crying, okay, but what's the relevance?

5             THE COURT:  Okay.  But my question is --

6     it's really a lot more basic than your answer.

7             MS. MALONE:  Oh, sorry.

8             THE COURT:  It's just, as I am

9     understanding, you are surprised on the basis of

10    this potential expert testimony as well as if they

11    were simply qualified as fact witnesses; is that

12    correct?

13            MS. MALONE:  A little bit, yeah, Judge.

14    Because of Ms. Cureton's background in psychology

15    and because I don't know who Mr. Wilson is -- and

16    when I Googled that name, it came up with some

17    degreed folks that have the background that could

18    give some weight to that.  So in this case that is

19    true.

20            THE COURT:  If I direct that they make

21    themselves available for you to interview them or

22    even depose them before they testify, what is your

23    position on that?

24            The reason I ask is, when the Court is

25    confronted at pretrial with an issue of an

1    undisclosed witness or exhibit, there is a balancing

2    that what we look at as to, why wasn't it disclosed;

3    what is the effect on each side, generally; can the

4    prejudice, if there is prejudice, be cured by a

5    continuance or some interviews.  I'm not saying how

6    you should answer these questions, but I think the

7    record should be clear on your answers to those

8    questions.

9         MS. MALONE:  Your Honor, at this point in

10   the game, where I would have no real ability to do a

11   real background check on them, just giving me the

12   opportunity to interview them is probably not going

13   to be enough.

14        I also would have a concern that I

15   wouldn't be able to check into Ms. Cureton's

16   psychology degree and what's going on in that

17   situation.  And there are some rules about

18   psychologists not being able to have a dual

19   relationship that I would explore if I thought she

20   was getting into an area of rendering an opinion.

21        If the Court wants me to do an interview,

22   the truth of the matter is, I don't think it will

23   give me enough at this late stage.

24        THE COURT:  I think that answers my

25   question.  Let me see if Mr. Radbil has anything on

1   these witnesses, and then we will talk about the

2   exhibits.

3           MR. RADBIL:  The reason they weren't

4   disclosed is because, as I was preparing my client

5   for pretrial -- and I was somewhat surprised that

6   there were additional people, also.  I asked the

7   client many questions and reviewed the entire case

8   file.

9           Without getting into the subject matter of

10  our discussions, these witnesses came out and we

11  disclosed them as soon as possible.

12          THE COURT:  I'm sorry.  I couldn't hear

13  the last thing you said.

14          MR. RADBIL:  These witnesses came to

15  light, and we disclosed them quickly.  There was a

16  month or so that the defense counsel could have

17  moved to depose them or request additional

18  information.  We provided phone numbers, home

19  addresses and such.

20          But again, I don't think the case is going

21  to turn on them.  So if it's going to be a choice

22  between a continuance versus excluding them, I think

23  Dr. White can testify certainly about whether or not

24  his neighbor saw him in his car at one point doing

25  something or other.  I don't think -- I think the

 1    testimony is going to be very simple, but not

 2    expert.

 3             THE COURT:  Okay.  I think that as far as

 4    your case in chief that the defense has properly

 5    supported the basis under Rule 37 and our federal

 6    discovery provisions for excluding them as

 7    witnesses.  Because they, from what I can see, a

 8    student and a neighbor, are clearly people who the

 9    plaintiff knew about.  This isn't someone he just

10    discovered.  These are people that he has obviously

11    known about for some time.  And when I balance all

12    of the factors, it seems that, looking at the case,

13    their importance to the case, that they should be

14    excluded because they weren't disclosed in

15    compliance with the rules.

16             To the extent something opens up their

17    potential testimony as rebuttal witnesses, that's

18    always still a possibility.  But I wouldn't want you

19    to take this ruling as some indication that I am

20    going to agree that what Dr. White potentially is

21    going to testify about with regard to them is

22    admissible.  But I do think that the defense has

23    supported their motion to exclude them because they

24    weren't disclosed in compliance with the Rule, and a

25    continuance or an interview of them isn't going to

1    cure that.

2           MR. RADBIL:  And we expected, I think,

3    that type of ruling so. . .

4           THE COURT:  Okay.  Let's talk about the

5    exhibits.  And I will go back to Ms. Malone about

6    the exhibits that you had some concerns about, and

7    those are identified in document 76?

8           MS. MALONE:  Yes, ma'am, beginning on page

9    10 --

10          THE COURT:  Okay.

11          MS. MALONE:  -- are my objections.  The

12   first five exhibits offered by Mr. Radbil, I can

13   lump together.

14          Mr. Radbil is attempting to offer the

15   actual, physical depositions and the errata sheets

16   of the parties.  And Your Honor, I don't think

17   that's proper to put the deposition testimony itself

18   to go back to the jury.  Can you use it as a

19   demonstrative tool?  Perhaps.  I mean, obviously

20   there may be an objection.  Our objection is that

21   the actual depositions, themselves, would not be

22   admissible to the jury.

23          THE COURT:  And that's Plaintiff's

24   Exhibits 1 --

25          MS. MALONE:  1 through 5.

1          THE COURT:  Mr. Radbil?

2          MR. RADBIL:  Yes.  Your Honor, Exhibit 1

3   is Dr. White's deposition; Exhibit 2 is RAB's

4   deposition by and through designated representative

5   Robert F. Wyatt; and then there is an errata page,

6   which is Exhibit 3, with no changes; and then there

7   is a second deposition that was compelled by the

8   order of the magistrate of Robert F. Wyatt, which

9   took place on September 6, 2012; and Number 5 is the

10  corresponding errata page.

11          Those will be used for impeachment

12  purposes.  It is my understanding that we are

13  required to list deposition testimony and

14  depositions as exhibits.  If the witness is

15  impeached with a portion, we may attempt to offer

16  that portion as an exhibit, but . . .

17          THE COURT:  Let me clarify this:  All the

18  documents that have been described, 1 through 5, are

19  hearsay.  So they aren't in and of themselves

20  admissible because they are excluded as statements

21  offered for the truth, out of court statements, so

22  you are starting off with that idea.

23          Then the question would be, when are

24  depositions admissible and when are they required to

25  be disclosed?  Well, the Court requires deposition

1    excerpts -- and it's excerpts because nobody wants

2    to have the whole deposition addressed in court --

3    those important parts.  But those are normally

4    offered by question and answer.  If they are offered

5    for substantive proof in your case in chief, an

6    attorney and another attorney might go back and

7    forth with relevant questions.

8             Otherwise, for impeachment, they will

9    never be admitted as a separate document.  If you

10   ask a witness a question and you can thereafter

11   impeach them because of an inconsistent statement in

12   a deposition, then, once you have impeached them,

13   you don't go any further.

14            If they disagree with what's in the

15   deposition testimony, then there is a question as to

16   what substantive proof can come in.  But I am not

17   aware of anything that would allow the paper

18   document to constitute that substantive proof.

19            So if you have deposition excerpts

20   identified as exhibits, then they can be admitted on

21   a question/answer basis, assuming they are relevant

22   to your case, but the paper documents are not

23   admissible at all.

24            So where does that leave you with regard

25   to these depositions?

1          MR. RADBIL:  Using them for impeachment

2     purposes.

3          THE COURT:  So you don't plan to use them

4     by question/answer, another attorney as substantive

5     proof?

6          MR. RADBIL:  No, because defense counsel

7     has said that Mr. Wyatt is here, and he was the one

8     that was deposed as the corporate representative of

9     the defendant.  So his testimony in the deposition

10    would be used solely for impeachment.

11         THE COURT:  I guess I left out the part

12    that you still can't use it if they are available.

13    If you want to use them for impeachment, then they

14    can't be offered as regular exhibits.  I think we

15    are all clear on that.

16         So on that particular portion of their

17    motion, the defendant's motion is granted,

18    essentially it seems to be almost by agreement, but

19    should be clear.

20         Okay.  Ms. Malone, did you have some other

21    exhibits that you were objecting to?

22         MS. MALONE:  Yes, ma'am.

23         THE COURT:  Come on up.

24         MS. MALONE:  Your Honor, we actually agree

25    to 6 and 7.

1              THE COURT:  Okay.

2              MS. MALONE:  So that gets us to

3    Exhibit Number 8.

4              THE COURT:  One moment.  Let's make sure

5    I'm clear -- what pages are 6 and 7 on?

6              MS. MALONE:  I didn't put an objection in

7    it because we didn't object to it.  We only listed

8    the ones we objected to.  I'm sorry.

9              THE COURT:  So you objected to Plaintiff's

10   1 through 5, and we have ruled on that.  But what is

11   left?  You said there were some you agreed to.

12   Where are they in the objections?

13             MS. MALONE:  I see what you are saying.

14   The next one we have an objection to is Number 8.

15             THE COURT:  Okay.

16             MS. MALONE:  And that is on the bottom of

17   page 10, Your Honor.

18             THE COURT:  Okay.

19             MS. MALONE:  The problem with Number 8 is

20   that Mr. Radbil, during the course of discovery,

21   produced a CD to us that -- that has some recordings

22   from a voicemail system.  And before each of these

23   grouped recordings, there is a person who I don't

24   know who it is, it's not Mr. White, a female giving

25   a description and offering her comment on the

1   recordings.  And I think that's pure hearsay, Your

2   Honor.

3            The recordings, themselves, may be

4   admissible, probably are admissible, but not the

5   form that he's provided to us with Exhibit 8, which

6   includes these comments by some unknown person.

7            THE COURT:  Okay.  Mr. Radbil.

8            MR. RADBIL:  I think those objections were

9   addressed in the motion -- in the order on

10  dispositive motions, and I think the objections were

11  overruled on the grounds that the documents were

12  ad- -- the recordings were adequately authenticated

13  by Dr. White's affidavit, which is on file and which

14  is also one of plaintiff's exhibits.

15           The authenticating declaration is

16  Exhibit 9.  It is dated December 13, 2012.  And I

17  think the remaining objections to plaintiff's

18  exhibits pertaining to similar exhibits, which in

19  the dispositive context the Court has already ruled

20  were authenticated.

21           THE COURT:  I can tell you that I don't

22  recollect specifically passing upon this

23  introductory-type comment by some individual outside

24  of the case, so I would have to look at it.

25           I would be surprised if I would have

1    considered that and allowed it in, but it's not

2    admissible.  The Court isn't bound, even if I did

3    rule it admissible at summary judgment, to also

4    allow these things in for trial.  So how otherwise

5    would they be admissible if you are talking about,

6    say, prefatory comments before the recording

7    started?

8            MR. RADBIL:  We can edit the prefatory

9    comments and have Dr. White authenticate the same

10   thing.  I believe that the prefatory comments state

11   voicemail messages received such and such date.  But

12   I would have to go back and look at exactly what

13   they say.

14           THE COURT:  Okay.

15           MR. RADBIL:  I don't think it's . . .

16           THE COURT:  Let me reserve ruling on 22,

17   and let's move on to the next one.  And then we will

18   go back to that, and that will be Exhibit 9, the

19   declaration.

20           MS. MALONE:  Hearsay, Your Honor.  That's

21   Mr. White's declaration that's being offered, and I

22   believe that's a violation of the hearsay rule.

23           THE COURT:  Mr. Radbil.

24           MR. RADBIL:  I think the Court has

25   overruled the same objection in the dispositive

1   context to this exact declaration on the grounds

2   that --

3            THE COURT:  Okay.  He can submit a

4   declaration in support of his motion for summary

5   judgment or response to a motion for summary

6   judgment, but an actual physical declaration at

7   trial is hearsay.  It's an out-of-court statement.

8            Obviously, we don't have Mr. White come in

9   and talk to me during summary judgment.  It's an

10   out-of-court statement.  I'm not aware of any

11   exception.  And when a person tries to offer their

12   own statement, it's, again, hearsay and typically

13   considered self-serving, so it's not admissible at

14   trial.

15            MR. RADBIL:  The reason it was included is

16   to authenticate the recording, which of course he

17   can testify live does authenticate it that way.

18            THE COURT:  I would sustain the objection

19   to Plaintiff's Exhibit Number 9 by the defendants.

20   The declaration, itself, is hearsay, and the Court

21   did not predict or in any way ensure that something

22   like this would be admissible at trial.  It couldn't

23   be, and it isn't.  So let's move on, then, to

24   Exhibit 10 that the defense is objecting to.

25            MR. RADBIL:  May I clarify one point?

1          THE COURT:  Yes.

2          MR. RADBIL:  The ruling does not prohibit

3   Dr. White from testifying to matters also contained

4   in this declaration, it's just the declaration

5   itself.

6          THE COURT:  I don't know what's in the

7   declaration, I don't recall.  But I'm assuming if

8   it's not hearsay and it's firsthand knowledge then

9   he will have a full range of ability to testify.

10         MR. RADBIL:  Thank you.

11         THE COURT:  Okay.

12         MS. MALONE:  Your Honor, Exhibit Number 10

13  is a Web page, an Internet Web page that the

14  plaintiff has produced that's dated October the 12th

15  of 2012, which is some year-and-a-half post any

16  relevant time period here.

17         It was not produced to us in discovery,

18  and we asked specific questions asking them for

19  requests for production, asking them to give us

20  documents that would support their allegations

21  related to this.

22         We saw it for the first time.  I think he

23  did attach it to the summary judgment.  I don't

24  think that changes our position on it.  It is a

25  year-and-a-half past the time period, and it's not

1   relevant, and I think it is hearsay in this setting.

2          THE COURT:  Okay.  Rather than have you

3   all up and down up and down, if you just speak up,

4   as long as Ms. Archuleta can hear you, I will let

5   you do it from the tables.  If she can't hear you,

6   you will have to go back to the lectern.

7          Mr. Radbil, if you will pull the

8   microphone over and give me your response to that.

9          MR. RADBIL:  Our response, Your Honor, is

10  that Exhibit 10 is a page from original Regional

11  Adjustment Bureau's own website.  And it was

12  submitted to the Court and served on defense counsel

13  on September 10th, 2012, and it is their own

14  document.  It's their own marketing materials on the

15  website.

16          The Court ruled again in the

17  dispositive -- in the order on dispositive motions

18  that this was a self-authenticating document.  And

19  it's frankly a key document that admits that the

20  defendant uses a, quote, predictive dialer to

21  contact thousands -- to dial thousands of numbers

22  each day.  And it dovetails with a previous letter,

23  which was also objected to, and that objection was

24  also overruled by this Court from the defendant to

25  the Federal Communications Commission in 2006, which

 1   was in support of the American Collectors

 2   Association petitioning the FCC to exempt debt

 3   collection calls from the telephone consumer

 4   protection act; in other words, rule that if you are

 5   collecting a debt, the TCPA does not apply.

 6              So this document, although it's dated --

 7   the website -- this shows the website was after,

 8   dovetails with the admissions and the statements

 9   against self-interest in the letter to the FCC in --

10   in April 2006.

11              Some of these documents are official

12   documents which bear seals of United States Offices.

13   And this document is, again, their own advertising.

14   And I deposed Mr. Wyatt and confirmed through

15   deposition testimony the correct address of his

16   website, which matches this. And we detailed all of

17   these things in the response to the objections to

18   our motion for summary judgment evidence, and the

19   Court ruled that there's plenty of indications of

20   authenticity. And again, it's -- there's no dispute

21   that they are authentic --

22              THE COURT: Okay. I've heard enough from

23   you. I want to go ahead and reserve ruling on that

24   one, as well. And it looks like this Exhibit 11 is

25   what you've just referred to as a letter to the FCC

1  authored by a vice president of the Regional

2  Adjustment Bureau.  Is that what you were just

3  referring to?

4          MR. RADBIL:  Yes, Your Honor.

5          THE COURT:  Okay.  And how were you

6  planning on authenticating that?

7          MR. RADBIL:  I believe that it's a

8  self-authenticating document.  It's stamped by the

9  FCC.  If also bears the signature of Robert Pugh.

10 And in the -- and the letterhead of RAB,

11 Incorporated.

12         So I believe that it's self-authenticating

13 and, again, in our motion for summary judgment

14 briefing --

15         THE COURT:  The summary judgment

16 rulings -- unless you can show me some authority to

17 the contrary, and I have been doing this a long

18 time -- in no way clears the path for you to get

19 summary judgment exhibits in evidence.

20         Mr. Radbil, you should know that as a

21 practicing attorney.  So what we're talking about

22 here is a letter that you tell me is

23 self-authenticating, but you're going to have to

24 provide me some authority that establishes that,

25 because basically it is a hearsay document.

```
 1          MR. RADBIL:  Well, it's a statement

 2    against their interest in this case because they are

 3    advocating for a position which is directly contrary

 4    to their --

 5          THE COURT:  The question would be, how do

 6    you plan to authenticate that?

 7          MR. RADBIL:  I don't know what the best

 8    and most efficient way to do it is.  I know it can

 9    be done and can we just reserve objections at the

10    time of --

11          THE COURT:  No, we will figure this out

12    this afternoon.  It is hearsay, and we have to

13    figure out a way you can offer it as an exception to

14    the hearsay rule.

15          MR. RADBIL:  It's a public record.  Excuse

16    me.

17          THE COURT:  I don't know if it's an

18    admission.  I don't know if 23 it's a declaration

19    against interest, I don't know, but it's hearsay.

20    So we will talk about that more in a few minutes.

21          Let's go to the last couple of exhibits.

22    Ms. Malone, that would be Plaintiff's Exhibit 12 and

23    Plaintiff's Exhibit 16.  Let's take those up if we

24    could.

25          MS. MALONE:  Your Honor, Plaintiff's
```

1    Exhibit 12 is very similar to the FCC ruling.  It is

2    a Texas document, and I don't think he has properly

3    authenticated it under the hearsay rule.  There are

4    exceptions, but you have to do a seal and a

5    certification for a state agency, and that has not

6    been done in this case.  It is also irrelevant, Your

7    Honor.  It is at a different time period than what

8    was the relevant time period in question.  But my

9    biggest problem is failure to authenticate a hearsay

10   document.

11           THE COURT:  Mr. Radbil, what exactly does

12   this document do?  What is the content?

13           MR. RADBIL:  It's a public record from the

14   Public Utilities Commission of Texas.  It's called

15   an ADAD report.  Texas has a statute that regulates

16   the using of automatic dial announcing devices,

17   which is defined very similarly to the definition of

18   an automatic telephone dialing system under the

19   federal statute at issue.

20           THE COURT:  What does this letter say?

21           MR. RADBIL:  This letter shows that Robert

22   Wyatt applied for a permit and was granted a permit

23   from -- it's not a letter, it's actually a report

24   of -- it's a record of them having a permit to

25   operate this dialer that constitutes an ADAD.

```
 1              And the courts have held and we cited
 2    authority in our dispositive briefing, and in the
 3    Court's order the Court noted that this evidence
 4    does create a question of fact as to whether or not
 5    the device they used qualifies under the TCPA
 6    definition.  Because if you are using something that
 7    you need to be permitted under a very similar or
 8    identical definition, which we have, and it's an
 9    admission, it's a public record, it's a statement
10    against their interest.
11              THE COURT:  What does it admit?
12              MR. RADBIL:  That they -- that Robert F.
13    Wyatt, the corporate representative, applied for and
14    was granted a permit to operate an ADAD in the State
15    of Texas.  It also lists their website as RAB,
16    Incorporated.
17              THE COURT:  Hang on.  Hang on.  How is it
18    relevant. What is it probative to?
19              MR. RADBIL:  The question of whether the
20    device they used to call the plaintiff constitutes
21    an automatic telephone dialing system under the
22    TCPA.
23              THE COURT:  How does that document bear
24    upon that question?
25              MR. RADBIL:  Because this document shows
```

1    that they were granted a permit to operate in ADAD,

2    which is defined under Texas law in a very similar

3    manner to the federal definition of automatic

4    telephone dialing systems.  The courts have held

5    that -- it's almost a state law analog of the TCPA.

6    It regulates slightly different conduct, but the

7    same technology.

8               THE COURT:  So it doesn't bear upon the

9    actual technology that you are complaining about in

10   this case?

11              MR. RADBIL:  Yes, I believe that it does.

12              THE COURT:  I thought you said it was a

13   different --

14              MR. RADBIL:  No.  The Texas statute

15   regulates different conduct.

16              THE COURT:  So what this shows is they had

17   a permit to do what you are complaining about?

18              MR. RADBIL:  No.  It shows they had a

19   permit to operate technology that satisfies the

20   definition under the federal act, and that's one of

21   the questions at issue.

22              THE COURT:  Okay.  But I still don't know

23   how it proves anything in your case.

24              MR. RADBIL:  It proves that the piece of

25   technology they are using was required to be

1    permitted under Texas law under a very similar

2    definition as the definition of the automatic

3    telephone dialing system under the TCPA.

4            So if you are operating a device in one

5    state, in Texas, and you need a permit to do so, if

6    it satisfies the definition, then you get the

7    permit.  He got the permit.  And the -- permit, the

8    definition that requires you to apply for and obtain

9    the permit is nearly identical to the definition.

10           THE COURT:  Nearly identical.

11           MR. RADBIL:  Um-hum.

12           THE COURT:  But it's not identical.

13           MR. RADBIL:  It's not identical.

14           THE COURT:  Let me hear from Ms. Malone

15   again, and we will take a break in a few minutes and

16   get back out.

17           Ms. Malone.

18           MS. MALONE:  Your Honor, I disagree with

19   him, because that would require an attorney to stand

20   up and give a legal interpretation of the statute.

21   But I'm just doing basic Rules of Evidence here.

22   And if you look under the Federal Rules of 803 for a

23   hearsay objection, the exception for public record,

24   these two documents, neither one, meet the

25   definition.  There's no authenticity, and it doesn't

1  set out anything that would be admissible as a

2  hearsay exception.  So even before we get into what

3  it proves, he still has an obligation to lay the

4  predicate to offer a document.  And he hasn't done

5  that for these two.

6          THE COURT:  When you say, these two, we

7  are talking about Plaintiff's Exhibits 11 and 12.

8          MS. MALONE:  Yes, ma'am.

9          THE COURT:  Let's talk about 16 and 17,

10  and then we will take a break.

11          Ms. Malone.

12          MS. MALONE:  17, Your Honor, we solved the

13  problem.  He gave a different document number in his

14  description, but he gave me today his exhibit, and

15  so no problem.

16          THE COURT:  Okay.  So the exhibit --

17          MS. MALONE:  So that one is fixed.

18          THE COURT:  17 is what actually --

19          MS. MALONE:  It actually turned out to be

20  a letter.  The reference he gave to us was not the

21  same thing, so. . .

22          THE COURT:  And the correct reference

23  would be . . .

24          MS. MALONE:  Well --

25          THE COURT:  That's all right.  That's all

1    right.  It's another agreement you agree to.

2              MS. MALONE:  Yes, ma'am.

3              THE COURT:  16.

4              MS. MALONE:  16, we did object to the

5    telephone, Mr. White's cell phone bill.  And I think

6    I could probably continue to object to it as being a

7    hearsay document.  But as a matter of ease, my

8    biggest problem with it is, because we put it as a

9    potential exhibit, is because it has these dark

10   lines that appear every three or four sections, and

11   I can't read it.

12             And Mr. Radbil said he would try to get

13   the original scanned in and see if he could get me a

14   better copy.  If he could get me a better copy,

15   Judge, I will agree to that document.

16             THE COURT:  Mr. Radbil.

17             MR. RADBIL:  I think the copy is

18   sufficiently legible.  I agree it's not perfect.

19             THE COURT:  Did you tell her you would try

20   to get her a better copy?  Will you be able to do

21   that?

22             MR. RADBIL:  I don't know if I can get a

23   copy that will satisfy her standards, but I will do

24   my best to get the best copy that we can.

25             THE COURT:  When will you be able to do

1  that?

2         MR. RADBIL:  This evening.

3         THE COURT:  Let's take about a ten-minute

4  break.

5         (Recess taken from 3:28 to 3:59.)

6         THE COURT:  Sorry to keep you waiting.

7  All right.  Let's go back to the -- you can take a

8  seat, Mr. Radbil, until I need you.  Unless you're

9  standing up to tell me you all have settled the

10 case.  That's not why you were standing up?

11        MR. RADBIL:  No, Your Honor.

12        THE COURT:  Okay.  Let's go back to where

13 we left off, and that was document 76.

14        Let me back up.  With regard to granting

15 the Emergency Motion to Quash, document 99 in the

16 docket, I grant document 100 because I believe, as

17 you mentioned, it was refiled.  Okay.

18        Did you have anything else, Ms. Malone, on

19 the exhibits, if you want to reiterate anything

20 before I go ahead and ask Mr. Radbil a few more

21 questions and we resolve this?

22        MS. MALONE:  Sure, Your Honor.  We were

23 talking about 803.  I just flipped through to the

24 Federal Rule 902, which is the self-authenticating

25 rule, and these documents simply do not meet any of

63

1    the criteria set forth.  I think that you and I are

2    on the same page, but I wanted to make sure that you

3    understood what I was talking about, the 803

4    exception, I was incorporating the lack of indicia

5    that's required under 902.

6         THE COURT:  All right.  Let's go back for

7    a minute, and let's talk about the website.

8    Clearly, if there's any question about it,

9    Mr. Radbil, there should be none, and that is that

10   the Court -- the Court's rulings on summary judgment

11   evidence are in no way binding on the Court as far

12   as trial exhibits.

13        Rule 56 pretty much sets that out, but

14   there are myriad cases on this.  So I just want to

15   be sure that, as you say that, you may bring that up

16   as a factor for the Court to consider, but the

17   Court's ruling on summary judgment in no way

18   predicts what is admissible at trial; many different

19   considerations for trial evidence.

20        So when we are talking about the website,

21   then, the website is something that was brought up

22   on summary judgment.  Looking at it from this

23   context, who was going to be the one to testify

24   about this website?  Who was the sponsoring witness?

25        MR. RADBIL:  Robert F. Wyatt, the

1   corporate representative.

2           THE COURT:  You were going to call him?

3           MR. RADBIL:  Yes.

4           THE COURT:  Okay.  As a witness in your

5   case?

6           MR. RADBIL:  Yes.

7           THE COURT:  And I'm assuming he is going

8   to be here?

9           MS. MALONE:  Yes, ma'am.

10          THE COURT:  I'm going to overrule the

11  objection to the website.  This is something that's

12  been here in the case.  This is -- again, we're not

13  talking about something that's five or ten years

14  removed, it's basically how the corporation is

15  projecting itself out there in the general public.

16          I think as far as authentication, what we

17  are talking about is reliability.  And I think that

18  if a person can testify, either the plaintiff

19  himself or this defendant witness that the plaintiff

20  is planning to call, sufficiently circumstantially

21  to establish that this is exactly how the

22  corporation has been presenting itself, at least in

23  part in regard to the issues underlying this case,

24  that it's admissible as an admission.

25          So I am not going to rule that out.  You

 1    will have to late predicate, Mr. Radbil.  Okay?

 2             MR. RADBIL:  Yes, Your Honor.

 3             THE COURT:  Okay.  All right.  Talking,

 4    then, about Exhibit 11, which is this letter.  It

 5    seems to me that, if anything, this would be

 6    admissible for impeachment.  I don't see how it

 7    comes in in your case in chief, Mr. Radbil.  Maybe

 8    you can offer a few more comments on this, but . . .

 9             MR. RADBIL:  In terms of relevance or in

10    terms of authenticity?

11             THE COURT:  Both.

12             MR. RADBIL:  I think it can be

13    authenticated by the corporate representative

14    because it was a letter that was sent in the normal

15    course and scope of their business containing

16    admissions so that the corporate representative

17    would have knowledge of this correspondence and be

18    able to authenticate it.  Because it was, again,

19    sent in the form in a capacity by Robert Pugh, the

20    vice president.

21             And in terms of relevance, the point of

22    the letter is to prompt the FCC to rule that debt

23    collection calls are excluded and for the reason

24    that they use -- excluded from the TCPA for the

25    reason that it would hurt their profits, et cetera.

1   It shows that they have an interest in using --

2   well, first, it admits that they use predictive

3   dialers, as does their website.

4          If I may raise a side point, Your Honor.

5          THE COURT:  No, don't raise a side point.

6   Here's what we are going to do with this.  Assuming

7   you can authenticate this letter by your corporate

8   representative from the defense that this is, in

9   fact, something that came from them sufficiently

10  circumstantially and assuming the witness is

11  testifying truthfully, as he is required to do so,

12  then I will admit it.

13         I guess what I'm saying here is, it's not

14  admitted, it's just that the objection to preclude

15  it from even being considered or used is overruled.

16  And that would be, then, defendant's objections as

17  to Exhibit 10 are overruled and as to Exhibit 11 are

18  overruled.

19         Now, so far as 12, let me hear your

20  argument on this one again.

21         MR. RADBIL:  So the ADAD report is a

22  public record of a permit that Robert F. Wyatt

23  personally applied for, and he testified about it, I

24  believe.  So this could be authenticated through

25  him.

1          And the ADAD report is relevant to show

2     that the technology qualifies under the

3     definition -- under the federal definition, because

4     the state act contains the similar definition.  And

5     the overlapping portions of the definition, stored

6     and dialed numbers, I think is enough.  I think

7     they have actually admitted in the pretrial order

8     that an automatic telephone dialing system had been

9     used in this case.

10         THE COURT:  The pretrial order hasn't been

11    signed or relied upon yet.  So let's say this:  With

12    regard to this document, as I understand it, this is

13    to show this auto dialing system is part of what you

14    are saying they violated in this case, correct?

15         MR. RADBIL:  Yes.

16         THE COURT:  And this shows that they were

17    at least aware of the laws surrounding the use of

18    the auto dialer system, because it wasn't a letter

19    telling them they couldn't use it or that they -- it

20    just addresses that they had some knowledge of this

21    system.

22         MR. RADBIL:  It shows that they knew their

23    technology qualified under the state definition and

24    that they needed to be permitted.

25         THE COURT:  Okay.  I gotcha.

1             MS. MALONE:  Your Honor, two things:

2    First, this is not a document created by RAB or

3    Mr. Wyatt or anything else.  This is a document that

4    simply says that they had have an ADAD policy.

5             There is a big dispute in the industry

6    about whether or not the ADAD statute even meets the

7    definition of the TCPA.  I know that in the summary

8    judgment we both cited different standards on that,

9    but the definition of the ADAD is not the same as

10   the TCPA.

11            So unfortunately, you can have a dialer

12   that does not meet the definition of an auto dialer

13   under the TCPA.  And for him to say that we have

14   taken something that my client did out of caution,

15   which is what Mr. Wyatt testified to, he said, I

16   decided it was just safer to get it than not, even

17   though I didn't think we meet this definition, so he

18   wouldn't get in trouble with the State of Texas and

19   then somehow convert that into, well, that means you

20   meet the definition of the federal statute.

21            THE COURT:  On Plaintiff's Exhibit 12, I'm

22   not going to say that it's forever ruled out, but

23   I'm going to say this:  That it cannot be discussed,

24   addressed, or even mentioned without approaching the

25   bench, because I think that defense counsel makes a

```
 1    good point on this.  And I'm not sure if it's not
 2    more confusing than it is probative, and I'm not
 3    100 percent sure that there's much probative value
 4    to it at all.  So that's that on that one.  Just
 5    remember you cannot mention it without approaching
 6    the bench.  We are off that topic.
 7              Let's move on to the next one, and that's
 8    Exhibit 16.  Have you resolved it as far as the
 9    banner or the label to --
10              MS. MALONE:  He said he was trying to get
11    it -- I don't think he's had a chance to do that
12    yet.
13              THE COURT:  Other than that point, is
14    there another objection that you had to it?
15              MS. MALONE:  I had one, but I will
16    withdraw it.
17              THE COURT:  Again, none of these are
18    automatically admissible.  They all have to be
19    authenticated.  But I'm going to overrule
20    plaintiff's exhibit objection as -- defense
21    objection to Plaintiff's Exhibit 16 is overruled.
22              It's not automatically admitted.  It still
23    has to have a predicate for its authenticity and
24    admissibility, but you can attempt to do that.
25              Does that take care of document 76, the
```

1   defense objections, then?  And I think they were

2   both to witnesses and exhibits.

3           MS. MALONE:  Yes, ma'am, that also takes

4   care of 105 and 106 --

5           THE COURT:  Great.

6           MS. MALONE:  -- which were just

7   regurgitations.

8           THE COURT:  We have to go back to the

9   issue of the recordings.  And I was looking back at

10  that in the summary judgment order and the -- the --

11  again, we start off with this idea that the fact

12  that the Court considered part of these recordings

13  in finding a genuine fact issue do not in any way

14  render them admissible or even a presumption that

15  they are admissible at trial.

16          I think that the -- to the extent they are

17  prefatory comments, that those comments are going to

18  have to be taken off or out of the recording, I

19  would agree with defense counsel on that.  So far as

20  them being inadmissible hearsay, is that part of the

21  objection as, well?

22          MS. MALONE:  Yes, ma'am.

23          THE COURT:  Here's my position on that.

24  The rule from 801(d) that permits admissions by a

25  party opponent would technically cover recordings

1   and that type of thing that were sponsored by a

2   defendant corporation or phone calls.

3        There has to be some indication that these

4   type of phone calls can be imputed, at least, to

5   have been undertaken by agents of the corporation.

6   And then I think they would probably be admissible

7   at least as admissions.

8        And so I guess the question is -- and

9   Ms. Malone, I don't think he's got to -- he's

10  limited to phone calls by officers and controlling

11  parties.  I think if they're calling on debt

12  collection on behalf of a debt collection defendant,

13  that as long as that can be circumstantially at

14  least qualified and quantified, that it's not ruled

15  out as an admission.

16       MS. MALONE:  That's not my problem.  That

17  is a good objection.  I probably should make it at

18  trial, but let me focus the Court's attention on the

19  part that I really have a problem with.

20       The latter part of the recording, there

21  are some electronic messages that I think are a

22  voicemail envelope for Mr. White's system.  My

23  client does not leave electronic messages.  So I

24  don't think that could be an admission against us

25  when Mr. Wyatt, my client -- their names are very

1  similar, Judge, and I think that's going to be

2  confusing to us.

3          Mr. Wyatt testified that they never leave

4  electronic messages.  Dr. White had a voicemail that

5  he could access from his work.  That envelope says,

6  press 1, press 3, press 7.  And Mr. Radbil is

7  arguing that is a message we left, and we're saying,

8  no, we didn't.  We don't leave messages like that.

9  So I don't know if you want to separate those out so

10 that we can address them in a different way.

11         THE COURT:  Let's make sure Mr. Radbil

12 intends to present those.

13         Mr. Radbil.

14         MR. RADBIL:  Yeah, because liability has

15 been decided under the D6 and the 11 claims under

16 the FDCPA which relate to leaving messages or

17 communications without identifying a meaningful

18 disclosure of caller's identity or stating that the

19 caller --

20         THE COURT:  She's saying they didn't do

21 it, it's not them.

22         MR. RADBIL:  Right.  So one of the fact

23 questions identified in the summary judgment order

24 was whether or not this prerecorded message came

25 from some transition or came from the defendant.

1   Our argument is it clearly came from the defendant,

2   so. . .

3           THE COURT:  I think it's a fact question.

4   It's an interesting fact question.  And perhaps over

5   the next five or ten years these kinds of things

6   will be resolved in these cases because they are

7   relatively new, but I think it's a fact question.

8   So I'm going to overrule the objection to that -- of

9   the defense as to that, and I believe that is

10  Plaintiff's Exhibit 8.

11          Again, these are not automatically

12  admissible, Mr. Radbil.

13          MR. RADBIL:  I understand, Your Honor.

14          THE COURT:  All right.  Does that take

15  care, of then, I think it does, document 76 and as

16  you mentioned 105.

17          MS. MALONE:  Yes, ma'am, and 106.

18          THE COURT:  And 106.  Okay.  All right.

19  The next thing I have is, I believe it's going to be

20  documents 80 and 83.  Let me locate those.  That's

21  motions in limine.  Both sides have submitted

22  motions in limine.

23          Plaintiff's motion in limine is document

24  83.  Defendants have responded to that in Doc 91.

25  And then the defendants have a motion in limine in

74

1   80.  So let's take up the plaintiff's first, and I'm

2   assuming that if some of these are boilerplate then

3   we won't have objections to them.

4           Mr. Radbil.

5           MR. RADBIL:  Thank you.  Number 1 is

6   fairly boilerplate.  I think we all agree that no

7   experts have been designated.  So I think that to

8   the extent that testimony borders on expert, it's

9   proper to make an objection to that testimony at

10  trial.

11          THE COURT:  Ms. Malone.

12          MS. MALONE:  Your Honor, the problem is

13  that I tried to clarify this with Mr. Radbil.  My

14  client is in an industry that talks about computer

15  systems and account notes and dialers and what have

16  you.  I don't think that's expert testimony, but I

17  could not get a clarification from Mr. Radbil if he

18  was going to be objecting to that as expert

19  testimony when they are simply explaining how their

20  business works.

21          THE COURT:  Mr. Radbil.

22          MR. RADBIL:  If he is testifying about

23  what the dialer does and how it operates based on

24  his day-to-day employment and use of it, that is, I

25  think, okay.  If he goes further and tries to

1    qualify it affirmatively or negatively --

2              THE COURT:  Give me an example.

3              MR. RADBIL:  It does not meet the

4    statutory definition because of A, B, C, D.  That

5    would be something that would be expert testimony,

6    and he would need to be designated.

7              If he says, we put the numbers in and it

8    spins around and it dials 1,000 numbers and connects

9    the call to whoever and then re-routes this

10   somewhere else, I know this because I teach people

11   how to use the dialer, that's how it works.  I think

12   he can testify about that.  But when it comes to

13   having him draw a conclusion on the ultimate issue

14   of whether it satisfies the statutory definition,

15   based on things that are beyond the lay person's

16   knowledge or ability to understand, I think that

17   crosses the line.

18             THE COURT:  Ms. Malone.

19             MS. MALONE:  The problem, Judge, is it is

20   Mr. Radbil's obligation to show that that dialer

21   meets the definition.  He's going to be asking

22   Mr. Wyatt those very questions because he has to

23   prove the dialer meets it.  Once he does that, I

24   think he opens the door for him to say anything if

25   he were going to.  It's his duty to show the dialer

 1   meets the TCPA definition.

 2         THE COURT:  So far as I have heard right

 3   now, if that's the problem you are having,

 4   Mr. Radbil, I overrule the objection.  I think in

 5   good faith both sides have addressed this issue of

 6   expert witnesses or lack thereof.  But I agree, from

 7   what I have heard so far, it goes to the very core

 8   of what your client is accusing them of doing.  And

 9   right now I overrule the objection.  Let's move on

10   to the next one.

11         MR. RADBIL:  So can I clarify the

12   overruling?

13         THE COURT:  Mr. Radbil, I have no

14   prediction on exactly what the testimony is going to

15   be.

16         MR. RADBIL:  Okay.

17         THE COURT:  So if you're asking me to

18   predict what exactly specifically is going to be

19   allowed and what is not, I can't do that.  This is

20   what -- I think he -- the people that you have

21   accused in this case and taken through this case

22   since 2011 have a right to defend themselves on the

23   accusations you are accusing them of.

24         I don't know exactly what that will

25   involve, but I would certainly guess that it's

1    beyond the scope of a man on the street of this

2    telerecording equipment.  I don't know how far that

3    goes, so I don't know how to clarify it further.  I

4    think we have covered this topic, and I want to move

5    on to the next one.  And that is excluding attempts,

6    as the plaintiff has described them, by defense to

7    force plaintiff into a self-diagnosis.

8              What exactly are you talking about?

9              MR. RADBIL:  So we had an issue or an

10   episode during the deposition Dr. White where the

11   questions, in our point of view, attempted to elicit

12   a differential self-diagnosis, which Dr. White

13   cannot ethically make of himself.

14             So the DSM was involved, and questions

15   were asked such as:  So you are not saying you fall

16   into the category of this, this, or this.  And of

17   course, because he can't ethically diagnosis

18   himself, we don't want that same type of thing to

19   happen at trial.

20             THE COURT:  He's going to talk a lot about

21   how he suffered emotionally from this; is that

22   correct?

23             MR. RADBIL:  He will.

24             THE COURT:  And what you're trying to

25   avoid is them pigeonholing him into some sort of

1  categorizing him under the DSM?

2          MR. RADBIL:  Or using a differential

3  attempt to say it couldn't be that bad because it

4  doesn't rise to the level of DSM, because he cannot

5  say whether it does or does not because it's

6  unethical for him to do so.

7          MS. MALONE:  Judge, that's not exactly

8  what happened in the deposition.  Mr. Radbil

9  elicited testimony from his client that he met

10  certain particular definitions, including a panic

11  attack.

12          What I did was said:  You're not allowed

13  to give a diagnosis, isn't that right, Doctor?  In

14  fact, I was doing the exact opposite of what he's

15  saying.  I was saying, you can't give a diagnosis.

16          I anticipate, Judge, if he gets on the

17  stand and starts testifying about those issues,

18  that, in the DSM there is a specific section that

19  talks about stressors that you would consider that

20  would cause people's mental anguish, I think that

21  should be fair game to ask him, are these other

22  things that could be a cause of your mental anguish?

23  He has a long-term illness, that certainly is one

24  that is a life-stressor.

25          I think it's fair game for me to talk to

1  him about the fact that -- about the fact that he

2  has what we might not consider lifetime stressors

3  under the DSM, if you move, you get married, you

4  have a child, those are all good things, but those

5  are also stressors that cause people to have mental

6  anguish.

7            THE COURT:  Why are we incorporating the

8  DSM into this at all?

9            MS. MALONE:  He was having his client

10  specify about mental anguish and panic attacks which

11  fall under the DSM, and his client is a licensed

12  professional counselor.  And the problem I have,

13  Judge, he is going to get him on the stand and have

14  him testify he has a Ph.D in psychology and is a

15  licensed professional counselor, and when he says

16  mental anguish, that's different than an accountant

17  saying this.

18            THE COURT:  Mr. Radbil, anything else?

19            MR. RADBIL:  Yes.  This is a very serious

20  issue, because I thought what happened at the

21  deposition was very bad.  It put my client in a very

22  compromising position.  He can testify about the

23  facts of his mental anguish, but I don't want him to

24  be put in a position where he is forced to choose

25  between making an unethical self-diagnosis,

1     differential or otherwise, and conceding implicitly

2     that it may not be that bad.  Because in this case,

3     my client has suffered actual damages, and that's

4     why I think you know we had trouble settling the

5     case because they are legitimate, but he has to

6     testify about them, but he cannot diagnose himself.

7             THE COURT:  Sounds to me like he is enough

8     of an expert and an educated man in this particular

9     area that he can't be surprised or hoodwinked into

10    giving an answer that's negative towards him because

11    he can just answer that he doesn't know the answer.

12    He's not qualified to answer that in the particular

13    context of the way the question is being asked.  So

14    I don't see the problem.

15            I mean, if you're talking about -- what

16    normally happens in this area, objecting to

17    cross-examining on pain and suffering, is of

18    specific instances, inflammatory-type instances,

19    like domestic abuse or something like that are

20    brought up.  And that's the kind of thing that I

21    would say you approach the bench.  But if you are

22    talking about trying not to corner him in an area

23    that he's already somewhat knowledgeable about, I

24    don't see -- I would overrule that objection.

25            MR. RADBIL:  Don't you need an expert to

 1    testify about the DSM in the first instance?

 2             THE COURT:  Mr. Radbil, it depends on what

 3    your client, the accuser here, says about them.

 4    He's brought everybody here, and he can't use his

 5    condition as a sword and a shield.  He's, as far as

 6    I can determine from what I have heard, absolutely

 7    these areas are fair game because you're asking them

 8    to pay for his pain and suffering.  So I don't see

 9    the problem.  I overrule the objection, and I

10    overrule -- I will not grant that motion in limine,

11    that particular one which is number 3, I believe.

12    Yes.

13             MS. MALONE:  Two.

14             THE COURT:  Number 2, sorry.  We're just

15    moving to 3.

16             MR. RADBIL:  So then they would be

17    permitted to attempt to do something unethical?

18             THE COURT:  Mr. Radbil, I really don't

19    understand where you're coming from in much of your

20    strategy here.  I have no idea why you're asking or

21    making that kind of a statement.  It's ridiculous,

22    as far as I can see, as are some of the other things

23    that you have said this afternoon.

24             But the answer is, your client brought

25    everybody here.  He is going to be subject to

 1  cross-examination about his pain and suffering

 2  because he's specifically trying to get money

 3  damages from the defendants for that very reason.

 4  That's it.

 5          If you are talking about specific

 6  instances -- that's not what you have raised, but if

 7  we are, that's a different matter.  We're talking

 8  about him trying to explain his mental condition as

 9  best he can, I deny the motion in limine.

10          Let's move on to the next one.  That's 3.

11          Could you explain this one, please?

12          MR. RADBIL:  This is fairly boilerplate.

13  It deals with general conclusory statements about

14  how things generally are.

15          THE COURT:  I would overrule that, because

16  it's more appropriately the topic of a specific

17  objection.

18          MR. RADBIL:  I agree.

19          THE COURT:  I don't think I could make a

20  specific ruling on that.  Overruled.

21          And the same with number 4.  Personal

22  knowledge is obviously required under the Federal

23  Rules of Evidence.  There are certain exceptions to

24  that, but I'm not going to make a blanket ruling.

25  That really is more appropriate for a specific

1    objection.  So 4 is overruled.

2         Anybody can file a lawsuit.  That

3    obviously would be inappropriate argument, and

4    that's number 5 so I would grant that.

5         The date or circumstances under which the

6    plaintiff employed his attorneys, I don't know why

7    that would be relevant.  Ms. Malone?

8         MS. MALONE:  The problem with that, Your

9    Honor, is twofold:  One is, in his petition, he

10   alleged that we contacted his client when they were

11   retained by counsel.  It's not how he employed them,

12   it's the date that matters to me.

13        The second thing is that we know that he

14   was having communication with his attorney by their

15   cell phone records instead of solving his problem,

16   which I think goes sort of to the mitigation issue

17   on resolving this debt which would have solved some

18   of his concerns, and that's really what it is.  It's

19   the date not so much the manner.

20        THE COURT:  I will grant that motion.

21   Approach the bench if you think it's an appropriate

22   item for discussion.  And I will also grant number 7

23   for basically the same reasons.  Approach the bench

24   if there is something with regard to the underlying

25   lawsuit and the attorney's conduct that is somehow

1    appropriate, and it's not appropriate without

2    approaching the bench.

3                MS. MALONE:  If I could, just so you know,

4    these were related to if he was going to offer

5    expert testimony on attorney's fees.  That was what

6    I was concerned in our response about.  We are not

7    going to bring it up otherwise.

8                THE COURT:  Okay.  Thank you.  Contingency

9    fee basis.  I think I would grant that as well.  And

10   I think that takes care of most of that until we get

11   to page 8, is that right, Mr. Radbil?

12               MR. RADBIL:  Yes, Your Honor, I believe

13   so.

14               THE COURT:  Okay.  Number 9.  I'm not

15   going to permit questions by the individual counsel

16   or voir dire by the individual counsel during the

17   jury selection.  I'm going to go ahead and handle

18   the jury selection myself, ask questions that you

19   have submitted to me, maybe not all of them, but

20   some of them.  So I don't know where that would --

21   that particular point would arise.  So I will

22   certainly question them about it if they have issues

23   with regard to damages.  But otherwise, I would

24   overrule it because it's not going to be pertinent

25   to the jury selection in this case.

 1          Okay.  Number 10 seems a bit general.  Is
 2   there anything else on that one, Mr. Radbil?
 3          MR. RADBIL:  No, so long as 8 was granted,
 4   10 is taken care of.
 5          THE COURT:  I don't really understand what
 6   you are asking for here in number 10.  I don't plan
 7   to submit special issues.  I plan to submit
 8   questions that ask the jury if you have proven your
 9   case by a preponderance of the evidence.  Okay?  All
10   right.
11          MR. RADBIL:  All right.
12          THE COURT:  So that would be overruled;
13   granted in part and denied in part, that would be
14   document 83.  I would now like to hear from the
15   defense on their motion in limine and, again,
16   hopefully we can get through some of this because we
17   have already discussed it or it's been -- it's
18   boilerplate.
19          MS. MALONE:  Judge, actually, it's not
20   boilerplate, but we have actually covered it through
21   the rulings that you have made on the exhibits and
22   witness list.  The only thing in our motion in
23   limine had to do with the admissibility of witnesses
24   or exhibits, so I think you've already covered
25   everything.

           1          THE COURT:  Okay.  Let me look through it
           2   real quick.  Obviously both sides understand not to
           3   bring up anything with regard to attorney's fees.
           4   If the plaintiff prevails in this case, then
           5   attorney's fees are allowed.  The Court will
           6   determine attorney's fees, not the jury.
           7          Mr. Radbil, do you have any questions
           8   about the defense motion in limine based upon what
           9   Ms. Malone has said, that she believes the Court has
          10   resolved it?
          11          MR. RADBIL:  Only to the extent that the
          12   defense is claiming that we have waived any right to
          13   seek attorney's fees under the Texas Act where
          14   liability has also been determined, but because we
          15   elect for Your Honor to decide after trial . . .
          16          THE COURT:  Again, I think the Court will
          17   decide attorney's fees regardless, so I don't know
          18   that that -- Ms. Malone.
          19          MS. MALONE:  Well, Your Honor,
          20   unfortunately the Texas statute is, under Texas
          21   common state law, does require the plaintiff to
          22   prove up attorney's fees and get a jury finding.
          23          I've had federal judges go both ways on
          24   it, in all candor to you.  But the truth of the
          25   matter is, if he doesn't prove actual damages under

 1   the Texas statute, he never gets there anyway
 2   because there is no statutory award.
 3            THE COURT:  Mr. Radbil, you've indicated
 4   that you've elected for the Court to determine
 5   attorney's fees in any event?
 6            MR. RADBIL:  Yes.
 7            THE COURT:  Okay.  All right.  So I don't
 8   think that's an issue.
 9            Okay.  I think that's 83.  80 -- let's
10   see.  I still have document, 99 and 100, let me make
11   sure --
12            MS. MALONE:  That's the motion to quash,
13   Judge.
14            THE COURT:  Yes.  Okay.  Thank you.  I
15   knew 100 sounded familiar.  99 is also the emergency
16   motion to quash.  Okay.  All right.
17            What I normally do is have the lawyers
18   agree to preadmit certain exhibits.  Have you all
19   had any discussion about preadmission of exhibits?
20            MS. MALONE:  I tried before, but I think
21   some of them are the same for us, so I think we
22   probably could do that pretty quickly.
23            THE COURT:  If you all will address that
24   before we start up tomorrow and before we actually
25   begin the testimony before the jury, if we could

1    have -- what I do as a practice is have plaintiff's

2    counsel indicate what, if any, of defense numbered

3    exhibits they agree to preadmit, and I have defense

4    agree on the record as to those of plaintiff's they

5    can agree to preadmit.  No one is forcing you to

6    agree to preadmit.  I normally have agreement to 70

7    to 80 to 90 percent, but it's your choice on that,

8    and it does help move things along.  So that's what

9    we will talk about when you get here tomorrow.

10            I'm not going to actually start the jury

11   selection until 10.  I would like you to be here by

12   9:30 so we can talk about any additional issues that

13   might come up.  As I mentioned, I plan to do the

14   voir dire.  I believe I have questions from both of

15   you.

16            MR. RADBIL:  We did not submit questions,

17   Your Honor.

18            THE COURT:  If you want to bring some

19   tomorrow for the Court to address, I can't promise

20   you I will ask all of them.  Here's what we do:  I

21   will give a general jury selection.  I will ask your

22   questions.  I will go over general issues with the

23   jury.  If anyone has a problem with anything -- and

24   I'm sure we will have people who have issues, we

25   will talk about debt collection practices and that

1   kind of thing, generally -- we will make note of

2   those people that may have to talk to us.

3          In this day and age, there are a lot of

4   people who have issues with that, and we will bring

5   them up separately one by one and you will get a

6   chance to ask them individual questions if you think

7   they are not qualified.  But we won't do it on the

8   general jury panel.

9          So I will do the voir dire.  We will see

10  who has questions.  We will send them out into the

11  hall and bring them back in one by one.  If there is

12  something particular on the jury information sheets

13  that you get and you want to ask some specific

14  questions to, I may permit you to do that as long as

15  we don't go overboard.  So you get a chance to ask,

16  I think, what you want to ask.  All right.

17         Generally it's a formal atmosphere in

18  here.  Please make sure that your clients and anyone

19  associated with you know to stay clear of the jury,

20  no amenities, no hellos, no good mornings, and I

21  will tell them that as well.

22         It will be a jury of seven out of a panel

23  in play, we will probably have about 25 or so people

24  here, but the actual number in play at any given

25  time is 13.  So with three strikes each and a jury

 1   of seven, that's what you're looking at.  It doesn't

 2   mean we won't ask the other people questions, but

 3   just so you know, you each get three strikes and to

 4   land with a jury of seven.

 5            We will go from eight to five.  As I

 6   understand it, there's not anticipation that this

 7   case will last longer than this week.  Is that

 8   correct, Mr. Radbil?

 9            MR. RADBIL:  Correct.

10            MS. MALONE:  It should be finished

11   tomorrow, Judge, but -- no later than Wednesday.

12            THE COURT:  Okay.  All right.  And I will

13   put the liability and damages section -- I mean, I

14   will combine those.  I often bifurcate the cases,

15   but I will not do that in this case.

16            So we will start, other than tomorrow, 9

17   to 5, with a break for lunch an hour and 15 minutes,

18   somewhere between a 15- and 20-minute break in the

19   morning and afternoon.

20            Those are generally the instructions.  We

21   will talk more specifically tomorrow.  I will have

22   you question the witnesses from the lectern.  Please

23   ask to approach the witness if you need to approach

24   them.  Any preadmitted exhibits can be referred to

25   without any kind of predicate obviously.

1          Do you have any specific questions,

2    Mr. Radbil?

3          MR. RADBIL:  Yes.  Regarding procedure for

4    nonpreadmitted exhibits, how would you like those

5    offered?

6          THE COURT:  Just lay your predicate --

7    assuming it's not one that's been ruled out or

8    mentioned, lay your predicate and offer it, and we

9    will find out if there's an objection and I will

10   make a ruling.

11         MR. RADBIL:  As far as publishing exhibits

12   to the jury.

13         THE COURT:  You can publish your exhibits.

14   Here's the problem with publishing.  If you publish

15   them right before you turn the witness over to the

16   other side, I won't make her start nor will I make

17   you start until the jury has looked at them, because

18   it's distracting.  I wouldn't publish it while

19   you're talking because they are looking at the

20   exhibits and not listening to you.  So you can

21   publish them with permission of the Court, but,

22   again, if it's right before the other side gets it,

23   I'm going to let them look at it before she has to

24   ask questions.

25         MR. RADBIL:  The specific concern I had

1   was the account notes.  When I question Mr. Wyatt,

2   the corporate representative, I would like to have

3   those exhibited so we can point to precise entries

4   on those account notes because they are fairly

5   detailed.

6          THE COURT:  Do you have some kind of

7   device to pull the exhibits up?

8          MR. RADBIL:  No, but I can bring in a

9   projector.

10         THE COURT:  Well, if you publish the

11  exhibit, there's only going to be one, so I'm not

12  sure how you will refer specifically.  I usually

13  admonish the jury that, if they can't see a exhibit

14  discussed, that they will get the exhibits back in

15  the jury room.  If you have some ability to use an

16  elmo or something, you can use that to try to

17  explain it to them as you go.

18         MR. RADBIL:  Okay.

19         THE COURT:  All right.  Anything else?

20         MR. RADBIL:  Questioning strictly from the

21  lectern, which will be here?

22         THE COURT:  Yes.

23         MR. RADBIL:  And no wandering?

24         THE COURT:  No wandering.  Any objections

25  should be legal objections, not speaking objections.

1    You both know what that means.

2          MR. RADBIL:  Could you clarify, please?

3          THE COURT:  Don't object:  Your Honor,

4    this witness knows this isn't true because I told --

5    they told me last week during deposition, that kind

6    of thing.  It's just hearsay or --

7          MR. RADBIL:  Foundation.

8          THE COURT:  Yes.  Ms. Malone?

9          MS. MALONE:  The only thing I have, Judge,

10   is a simple housekeeping thing.  When I was going

11   through my exhibit binder for the Court and the

12   extra one for the witness, I noticed that they had

13   inadvertently put the back of a document on page 8.

14   And I'm concerned that maybe they did the same thing

15   with your exhibit binder.  So I was -- just if you

16   want, I could give you this one so you will know

17   which one needs to be removed.

18         THE COURT:  That's fine.  I don't have the

19   binders in front of me.

20         MS. MALONE:  It's the last page on

21   Exhibit 8.  And it may not be on yours.  It was just

22   in the other one.

23         THE COURT:  You want to take a look at it,

24   Mr. Radbil?

25         MR. RADBIL:  I would.  Is it a letter?

```
 1              MS. MALONE:  It was a phone record, and
 2     this was inadvertently copied on the back of it.
 3     It's not intended to be part of the exhibit.
 4              MR. RADBIL:  I think this is plaintiff's
 5     12, right?
 6              MS. MALONE:  Probably, but it's not part
 7     of my Exhibit 8.  I'm trying to fix my exhibit.
 8              MR. RADBIL:  Oh, your binder.
 9              MS. MALONE:  Yes, not your binder.
10              THE COURT:  All right.  Counsel, be sure
11     to address the issue of preadmitted exhibits.
12     Please be here by 9:30.  Anything else?
13              MS. MALONE:  Anything about the charge you
14     would like for us to try to address, Judge?
15              THE COURT:  Not this afternoon.
16              MS. MALONE:  I meant between us.
17              THE COURT:  Yes, if you all can come
18     together on an agreed charge, that's the ultimate
19     result that I would seek.  So if you can get
20     together today and even tomorrow on at least some
21     proposal for an agreement.  And again, I don't
22     submit special issues in federal court.  I don't
23     submit interrogatories to the jury.  It's simply
24     going to be a discussion of the general rules of
25     jury trials, burden of proof.  We will show
```

 1   specifically what the cause of action is here, the
 2   elements of proof, and then a question as to whether
 3   or not the plaintiff has met his burden of proof of
 4   establishing liability as explained in the charge.
 5   That's generally what we are talking about.
 6            MR. RADBIL:  So there really is no room
 7   for negotiation, it's going to be the elements and
 8   then the standard introduction?
 9            THE COURT:  As opposed to?
10            MR. RADBIL:  Anything else.  Seems like
11   there's not much room for negotiation because it's
12   going to be that standard.
13            THE COURT:  There's a lot of room for
14   negotiation.  What I mean by that is, if you can
15   agree to a charge, that's great.  If you can't, you
16   can't, and we will have to go back to the drawing
17   board and figure it out.  I don't know what else to
18   say.  You think you can come to an agreement on the
19   jury instructions?
20            MS. MALONE:  No.
21            MR. RADBIL:  If I understood your format
22   correctly, the only discussion would be about the
23   elements of the cause of action, which are, I think,
24   pretty plainly established, not established by the
25   evidence, but in the law.

```
 1              THE COURT:  That's partially correct, but
 2   I can't speak for you as a lawyer because I don't
 3   know.  Lawyers always find issues in jury charges.
 4   What I understand you to be asking me is probably
 5   correct, yeah.
 6              MR. RADBIL:  Okay.  Would you please, Your
 7   Honor, just one time tell me the format so I can be
 8   absolutely clear?
 9              THE COURT:  The proposed jury
10   instructions?
11              MR. RADBIL:  Yes.
12              THE COURT:  Do you have a copy of the
13   Federal 5th Circuit --
14              MR. RADBIL:  Of course.
15              THE COURT:  -- instructions.  Well, they
16   are generally like that.  And I don't know if I have
17   anything I could give you to look at.  Let me see.
18   If you will wait a minute, I will see if I have any
19   instructions.  I don't have any Fair Debt Collection
20   Practices jury instructions, but it would help to
21   come to an agreement.  Let me see if I can find
22   something to give you, generally speaking.
23              MR. RADBIL:  Sure.
24              MS. MALONE:  Your Honor, in Mr. Radbil's
25   proposed charge, he has these whole long sections
```

1    about the purpose of the FDCPA, that Congress set

2    out these individuals to be private attorney

3    generals.  And it goes on and on about how evil debt

4    collectors are, literally.  That kind of comment is

5    what I typically have concerns about with regard to

6    him.

7              We have done a similar charge that was

8    submitted to Judge Furgeson.  We actually didn't go

9    to trial, but we had worked out a similar charge.

10   And also I did one with Judge Hoyt that I think is

11   consistent in the Southern District.  But I don't

12   think that Mr. Radbil necessarily agrees that the

13   Texas one is much more streamlined than what -- he

14   does a national practice; apparently they can do

15   other things in other states.

16             THE COURT:  Okay.

17             MR. RADBIL:  And I will respond by saying,

18   I don't agree normally with the legal elements of

19   the claims that are stated in jury instructions

20   proposed by Ms. Malone.

21             And I agree that under Your Honor's format

22   none of the -- well, it seems like none of the

23   policy stuff would come in, it would just be basic,

24   here are the elements of the cause of action after

25   the 5th Circuit Pattern Jury Charge and then simple

1    questions.

2          THE COURT:  Right.  There would be no

3    policy discussion in there.  And if Ms. Malone has

4    done them before for Judge Furgeson and Judge Hoyt

5    on these particular areas of law, that's probably

6    going to be a lot more helpful to you than anything

7    I have done on another area.  So I would rather not

8    confuse you by giving you something that would not

9    be related to the underlying cause of action here.

10          Anything else, Counsel?  We will see you

11    tomorrow at 9:30.

12          (Court in recess at 4:44 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2             I, Shawnie Archuleta, CCR/CRR, certify

3    that the foregoing is a transcript from the record

4    of the proceedings in the foregoing entitled matter.

5             I further certify that the transcript fees

6    format comply with those prescribed by the Court and

7    the Judicial Conference of the United States.

8             This 21st day of March 2013.

9

10

11                        s/Shawnie Archuleta
                          Shawnie Archuleta CCR No. 7533
12                        Official Court Reporter
                          The Northern District of Texas
13                        Dallas Division

14

15

16   My CSR license expires:  December 31, 2013

17   Business address:  1100 Commerce Street
                        Dallas, TX  75242
18   Telephone Number:  214.753.2747

19

20

21

22

23

24

25