UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIMOTHY WHITE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-1817-B |
| | § | |
| REGIONAL ADJUSTMENT | § | |
| BUREAU, INC., d/b/a RAB, INC., | § | |
| | § | |
| Defendant. | § | |

# APPENDIX A
(Opinion on Summary Judgment in 4-10-cv-4865)

| United States District Court | Southern District of Texas |
|---|---|

| April Scarlott, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-10-4865 |
| | § | |
| Nissan North America, Inc. et al., | § | |
| | § | |
| Defendants. | § | |

# Opinion on Summary Judgment

1. *Introduction.*

Six years ago, a woman bought a Nissan. She had an third-party mirror installed by an independent mechanic. It caused problems with the car's electrical system. She sued the manufacturer, mirror installer, lender, and dealership. Her claims with the dealership and lender settled. The manufacturer and installer moved for summary judgment. They will prevail.

2. *Background.*

On December 26, 2006, April Scarlott bought a Nissan Murano from Clear Lake Nissan. She asked the dealership for a rearview mirror that would open her garage door. The day after she bought the car, she returned to the dealership because it had a factory mirror. The dealership said it would pay for her to have Hurricane Auto Care – a mechanic not affiliated with Nissan – install the aftermarket mirror. Later that day, Scarlott drove the car to Hurricane where she chose the mirror she wanted. Hurricane installed it that day.

During the next three years, she took the car to Clear Lake Nissan, and it repaired the car many times. In early 2007, it repaired a broken rear wiper, broken cup holders, and missing cargo-net pieces. On September 4, 2007, Scarlott's car began having electrical problems. Nissan replaced the car's dome light fuse, battery, and air-flow sensor. In 2008, it twice replaced the battery. In September of 2009, it replaced the body control module and the battery.

In November of 2009, the dealership discovered that the aftermarket mirror was the cause of the drained battery. The dealership asked Hurricane to re-install the mirror. Since

Hurricane adjudicated the installation, she has had no problems with the car. Despite all of her claims in this suit, she continues to drive it.

On October 19, 2009, Scarlott sued (a) Nissan North America, the manufacturer; (b) Hurricane Auto Care, the mirror installer; (c) Nissan Motor Acceptance Corporation, the lender; and (d) Clear Lake Nissan, an independently-owned dealership. She did not successfully serve Hurricane until March 4, 2011 – more than a year after she started this suit. Scarlott settled with the dealership and the lender. Her claims against the manufacturer for breach of warranty and the installer for negligence remain.

3.   *Hurricane Auto Care.*

A person generally has two years to sue from the time her property is damaged.[1] If the damage was inherently undiscoverable – like those in cases with a deliberate concealment of the injury or cause – a person has two years to sue from when she reasonably discovers her injury.[2]

| Events | Dates | Elapsed Time |
| --- | --- | --- |
| Scarlott bought her Nissan. | December 26, 2006 | None. |
| Hurricane installed mirror. | December 27, 2006 | One day. |
| Electrical problems began. | September 4, 2007 | Nine months. |
| Scarlott sues. | October 19, 2009 | Two years and ten months. |
| Cause discovered. | December of 2009 | Three years. |
| Scarlott serves Hurricane. | March 4, 2011 | Four years and four months. |

Scarlott's car was damaged when Hurricane installed the aftermarket mirror in 2006. Beginning on September 4, 2007, she knew that her car had a problem. She says her suit – which began more than two years later – is not untimely because it was impossible to determine her injury before the dealership discovered the improper installation.

---

[1] Tex. Civ. Prac. & Rem. §16.003 (2010); Childs v. Haussecker, 974 S.W.2d 31, 36 (Tex. 1998).

[2] Williams v. Khalaf, 802 S.W.2d 651, 657 (Tex. 1990).

Her injury was manifest at the first drained battery. When the car stopped in September of 2007, she knew she had a problem. She had time to find a technician who could discover the cause. She chose to take her car only to the dealership. No one concealed anything from her. Despite her suspicion that the problem was the mirror, she did not take the car to Hurricane or another mechanic.

Scarlott's claim was brought too late; she had two years to discover that the mirror was incorrectly installed. She discovered the problem nine months later, leaving fifteen months to explore possible causes. She chose to remain ignorant. When she did sue, she did it indiscriminately, naming the wrong Hurricane. She did not properly notify Hurricane of her claims until three and one-half years after her car first had electrical problems.

4.  Liability.

A. *The Express Warranty*.

A manufacturer breaches its warranty if it sells a defective product and does not respond to its other obligations. Nissan expressly warrantied that it would repair "defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan."

Scarlott says that the car was defective because of the broken wiper, cup holder, and cargo-net. Nissan repaired these problems. A product is not defective simply because it requires repair.[3] Additionally, one or ten minor problems do not make a car defective.

The only significant problem with the car was the electrical system. That was not covered by the warranty because it was caused by aftermarket parts. Nissan has exhaustively showed that her problems were caused by Hurricane's installation. Nissan's technicians noticed that a wire from the mirror was draining the battery. When they unplugged it, the drain stopped. The dealership had Hurricane reinstall the mirror. The electrical system has worked since the rewiring. Scarlott chose to alter the car, and only she is responsible for the consequences.

Scarlott says Nissan admitted the car was defective by paying for the repairs. This claim is illustrative of this case. The car company works with Scarlott to solve her problems. It keeps trying; eventually, it solves her problem by finding the source – Hurricane's installation. She sues Nissan anyway, saying it is responsible for all of her unhappiness under the tort of a

---

[3] *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 807 (Tex. 2006).

-3-

vendor's helping others. Nissan never assumed responsibility for the mirror or confessed it was responsible. It simply paid for repairs that it thought the warranty might have covered. Once Scarlott told it about the mirror, Nissan said that the warranty did not cover aftermarket parts. It did not ask for the warranty payments back. Nissan's payments and fixes demonstrate compliance with and performance beyond the express warranty – not liability.

### B. *The Implied Warranty.*

In Texas, a seller automatically warrants its goods to be fit for their ordinary purposes.[4] Scarlott says Nissan North America breached this warranty because her vehicle had an electrical problem that left her stranded. Nissan did not breach the implied warranty because the vehicle it sold her was fit for its ordinary purpose at the time it left Nissan's possession.[5] The cause of the vehicle's defect was a mirror installed at Scarlott's demand by a third party after it left Nissan.

### C. *Deceptive Trade Practices.*

Nissan did not violate the Texas Deceptive Trade Practices Act because it did not breach the express or implied warranties.[6] It also did not lie about the quality of repairs and services offered under the warranty. Scarlott even admits that she did not read the warranty that her lawyers said is deceptive.

### D. *Breach of Contract.*

Scarlott says Nissan North America breached two maintenance agreements – the Security+Plus and Maintenance+Plus Vehicle Protection – by refusing to repair her car. She has sued the wrong company. Nissan Extended Services North America is the obligor – not Nissan North America – on both contracts. Moreover, these contracts do not require Nissan to fix aftermarket parts, so it was not obliged to repair problems created by another company's mirror.

---

[4] Tex. Bus. & Com. § 3.314(b)(3) (2006).

[5] Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 444 (Tex. 1989).

[6] Tex. Bus. & Com. § 17.50(a)(2) (2006).

E. *Negligence, Unjust Enrichment, and Promissory Estoppel.*

Scarlott voluntarily – after interrogation of her counsel by the court – abandoned her claims against Nissan North America for negligence, unjust enrichment, and promissory estoppel. They are mentioned to illustrate that she claimed eight legal theories against four parties without legal or factual support.

5.  *Experts.*

The testimony of Scarlott's technician – Stephen Weaver – is struck because it is unverifiable, biased, subjective, and unscientific.[7] He writes approximately 100 opinions for Scarlott's lawyer per year – plus more than 200 for other plaintiffs. In evaluating the damage to the vehicle, for instance, Weaver uses a determination he invented. His approach is not peer reviewed, verifiable, or consistent with mainstream economics or physics. It is an arbitrary assignment of value thinly masked with jargon. Weaver admitted he did not consider alternative causes in formulating his theory that voltage spikes, not the mirror, caused the car's electrical problems. He has no basis for his imagined spikes.

6.  *Remand.*

Thirty months after this case was removed to federal court, Scarlott moved to remand. Under the Magnuson-Moss Warranty Act, this court has jurisdiction if the amount in controversy is greater than or equal to $50,000.[8] She says her claims only amount to $39,289 because this court cannot consider her claim for attorneys' fees, costs, punitive damages, or pendent state claims.

A determination of the amount in controversy is made based on case at the time of removal, not thirty months into the litigation.[9] Otherwise litigants like Scarlott could extort settlements by raising the cost to defend against their claims by starting their case over at the eleventh hour.

---

[7] Fed. R. Evid. 702; Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

[8] 15 U.S.C. § 2310(d)(3)(B) (2012).

[9] Allen v. R & H Oil and Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995).

At the time of removal, Scarlott's first amended petition prayed for "monetary relief totaling $50,000 or less . . . excluding court costs, prejudgment interest and attorney fees." Because she pleaded damages of $50,000, she expressly invoked this court's jurisdiction. Counsel for Scarlott recently attempted to remand a similar case in the Eastern District of Texas at the last minute. That court also concluded that the language "$50,000 or less" conferred jurisdiction.[10]

7.  Conclusion.

April Scarlott will take nothing by her claim against Hurricane Auto Care because she sued too late. April Scarlott will take nothing from Nissan North America because her claims are not supported by facts or law.

As a post-judgment matter, the defendants may request fees, sanctions, or both.

Signed on August 28, 2013, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[10] Standish v. Nissan N. Am., Inc., 2011 WL 4916526, at *1 (E.D. Tex. Oct. 17, 2011).